# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL C. ANTONELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1932 (CKK) |
| | ) |
| UNITED STATES | ) |
| PAROLE COMMISSION, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, United States Parole Commission ("USPC"), by and through undersigned counsel, respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b) (1), and (6), to dismiss this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, or, in the alternative, to enter summary judgment in favor of Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law. In support of this motion, Defendant respectfully refers the Court to the accompanying memorandum of points and authorities and statement of materials facts as to which there is no genuine issue.[1] A proposed Order consistent with this motion is attached hereto.

Plaintiff should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or

---

[1] The USPC has conducted a reasonable search of its records, has disclosed responsive non-exempt records, and no records have been improperly withheld from Plaintiff. In addition, the USPC referred documents to six originating agencies. Those documents were reviewed by the originating agencies, and non-exempt records have been disclosed to plaintiff. This action should therefore be dismissed or summary judgment granted in favor of the USPC.

other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963

F.2d 453, 456-57 (D.C. Cir. 1992), LCvR 7(h), and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

2

July 3, 2008                          Respectfully submitted,


                                      ___/s/_____
                                      JEFFREY A. TAYLOR, D.C. Bar # 498610
                                      United States Attorney


                                      ___/s/_____
                                      RUDOLPH CONTRERAS, D.C. Bar # 434122
                                      Assistant United States Attorney


                                      ___/s/_____
                                      CINDY OWENS, D.C. BAR # 491465
                                      Special Assistant United States Attorney
                                      Civil Division
                                      555 4th Street, N.W.
                                      Washington, D.C. 20530
                                      (202) 514-2257
                                      (202) 514-8780 (fax)
                                      cindy.owens@usdoj.gov


OF COUNSEL:
Rockne Chickinell
U.S. Parole Commission

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
MICHAEL C. ANTONELLI,                    )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        Civil Action No. 07-1932 (CKK)
                                         )
UNITED STATES                            )
PAROLE COMMISSION,                       )
                                         )
                    Defendant.           )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as

amended, and pertains to the request of pro se Plaintiff, Michael C. Antonelli, who is

incarcerated, for records allegedly maintained by Defendant, United States Parole Commission

("USPC"). As set forth in the accompanying declarations in support of defendant's motion to

dismiss or for summary judgment, the USPC has conducted a reasonable search of its records,

has disclosed responsive non-exempt records, and no records have been improperly withheld

from Plaintiff. In addition, the USPC referred documents to six originating agencies. Those

documents were reviewed by the originating agencies, and non-exempt records have been

disclosed to plaintiff. This action should therefore be dismissed or summary judgment granted

in favor of the USPC and plaintiff's motion for partial summary judgment should be denied.

## BACKGROUND

### I.  Statement of Facts

The factual and procedural background is fully set forth in Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("SFNGD"), and the following declarations, which are attached and incorporated herein by reference: the Declaration of Anissa Hunter, Paralegal Specialist, United States Parole Commission (herinafter referrd to as "Hunter Declaration"); the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Federal Bureau of Investigation ("FBI') (hereineafter referred to as "Hardy Declaration"); the Declaration of Ron Hill, Administrator for the Federal Bureau of Prisons, Freedom of Information Act/Privacy Act Section, in the BOP's Central office (hereinafter referred to as "Hill Decl."**),** and the Declaration of Melanie Ann Pustay**,** Director of the Office of Information and Privacy ("OIP") (hereinafter referred to as "Pustay Decl.").  The FBI, BOP and OIP declarations relate to referral documents.  USPC also referred documents to three other  U.S. Department of Justice components -- the Executive Office of United States Attorneys ("EOUSA") and the United States Marshals Service ("USMS") -- and to the Court Services and Offender Supervision Agency of the District of Columbia ("CSOSA").  The responses to those referrals are discussed in the Hunter Declaration.

## LEGAL STANDARD

### I.  Standard for a Motion to Dismiss, 12(b)(1) and 12(b)(6)

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  <u>Warth v. Seldin</u>, 422 U.S. 490, 501

2

(1975). Where a motion to dismiss, however, presents a dispute over the factual basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting, Inc. v. Rep. of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C.1998).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Aktieselskabet v. Fame Jeans, Inc., -- F.3d ---, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. Kowal, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." Id.

3

## II.    Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).  In Anderson, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff."  Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

4

designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The FOIA provides that a federal court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  The Supreme Court has held that a court's authority to ensure private access to requested materials "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records'." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980); see also Forsham v. Harris, 445 U.S. 169, 177 (1980). Acknowledging that "[t]he FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment," the Court held that federal judicial authority to "devise remedies and enjoin agencies" is limited to those situations where the "agency has contravened all three components of this obligation." Kissinger, 445 U.S. at 151; accord Kuffel v. U.S. Bureau of Prisons, 882 F.Supp. 1116, 1120 (D.D.C. 1995).

Accordingly,"it is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'" Trueblood v. U.S. Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996) (quoting Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980)); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).  FOIA, however, does not allow the public to have unfettered access to government files.  McCutchen v. U.S. Dep't of Health and Human Services, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  Department of

5

Defense v. FLRA, 510 U.S. 487, 494 (1994). To protect materials from disclosure, the agency

must show that they come within one of the FOIA exemptions. Public Citizen Health Research

Group v. FDA, 185 F.3d 898, 904 (D.C. Cir. 1999).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S.

Customs Service, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are

properly identified, FOIA cases should be handled on motions for summary judgment") (citing

Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). Summary judgment is appropriate in a

FOIA action, such as the instant case, where the pleadings, together with the declaration,

demonstrate that there are no material facts in dispute and the requested information has been

produced or is exempted from disclosure, and the agency, as the moving party, is entitled to

judgment as a matter of law. Fed. R Civ. P. 56(c); Students Against Genocide v. Dep't of State,

257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C.

Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing

the Court and the Plaintiff with affidavits or declarations and other evidence which show that the

documents in question were produced or are exempt from disclosure. Hayden v. NSA, 608 F.2d

1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v.

U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980); Trans Union LLC v. FTC, 141 F. Supp.

2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis

of agency affidavits "when the affidavits describe 'the documents and the justifications for non-

disclosure with reasonably specific detail, demonstrate that the information withheld logically

6

falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)). See also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), aff'd in part, rev'd in part, 276 F.3d 634 (D.C. Cir. 2002).

Typically, the agency's declarations or affidavits are referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption." NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977), and Vaughn, 484 F.2d at 828). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." NTEU, 802 F.2d at 527 n.9.

The Vaughn index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Com'n on Human Rights v. Food and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

7

A court exercises <u>de novo</u> review over a FOIA matter, and the burden is on the agency to justify all non-disclosures.  5 U.S.C. § 552(a)(4)(B); <u>U.S. Dep't of Justice v. Reporters Committee For Freedom of Press</u>, 489 U.S. 749, 755 (1989).  The agency, however, may carry its burden by relying on the declaration of a government official because courts normally accord a presumption of expertise in FOIA as long as the declaration is sufficiently clear and detailed and submitted in good faith.  <u>See</u>, <u>e.g.</u>, <u>Oglesby</u>, 920 F.2d at 68; <u>Hayden v. National Security Agency</u>, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  A court may therefore award summary judgment in a FOIA case solely on the basis of information provided by the department or agency affidavits or declarations.  <u>See</u> <u>Hayden</u>, 608 F.2d at 1387; <u>Key v. Dep't of Homeland Security</u>, 510 F.Supp.2d 121, 126-27 (D.D.C. 2007).[2]

## <u>ARGUMENT</u>

### 1.        Adequacy of the Search

In <u>Western Center for Journalism v. I.R.S.</u>, this Court clearly outlined Defendant's responsibility in searching for responsive records under the FOIA.  116 F. Supp.2d 1, 7-8 (D.D.C. 2000) (Kollar-Kotelly, J.).  The Court explained that,

> [i]n FOIA cases, summary judgment may be granted solely on the basis of agency affidavits provided that they are clear, specific and reasonably detailed, and there is no contradictory evidence on the record or evidence of agency bad faith. <u>See</u> <u>Hayden v. Nat'l Sec. Agency</u>, 608 F.2d 1381, 1387 (D.C.Cir.1979). Where the adequacy of a FOIA search is at issue, for an agency to prevail on summary

---

[2]USPC's Declaration of Anissa Hunter and the FBI's Declaration of David Hardy meet the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  Defendant is also providing additional detailed information in the Declaration of Ron Hill, Administrator for the Federal Bureau of Prisons, Freedom of Information Act/Privacy Act Section, in the BOP's Central office**,** and the Declaration of Melanie Ann Pustay**,** Director of the Office of Information and Privacy ("OIP").

judgment, it "must establish beyond a material doubt that its search was reasonably calculated to uncover all relevant documents." <u>Nation Magazine v. United States Customs Serv.,</u> 71 F.3d 885, 890 (D.C.Cir.1995). Courts have interpreted this responsibility to mean that agencies must make "a good faith effort to conduct a search for the requested records, using methods which *8 can be reasonably expected to produce the information requested." <u>Oglesby v. United States Dep't of Army,</u> 920 F.2d 57, 68 (D.C.Cir.1990) (citing <u>Weisberg v. United States Dep't of Justice,</u> 745 F.2d 1476, 1485 (D.C.Cir.1984)). While a search is not rendered unreasonable if it fails actually to "uncover[ ] every document extant," <u>SafeCard Servs., Inc. v. S.E.C.,</u> 926 F.2d 1197, 1201 (D.C.Cir.1991), it will be deemed inadequate if the "affidavit does not show, with reasonable detail, that the search method ... was reasonably calculated to uncover all relevant documents." <u>Oglesby,</u> 920 F.2d at 68.

Plaintiff sent a request for "all records that your agency has or had in its possession that are in any way connected to my name" on August 17, 2006. (Hunter Decl. ¶ 7, Ex. 1). The USPC responded by providing Antonelli with copies of all releasable records found in his file since the last disclosure that was made to him on May 6, 2002. (Hunter Decl. ¶ 8). Then, on February 17, 2007, plaintiff made a request for the same records alleging that the Bureau of Prisons ("BOP") lost his records and that he urgently needed the materials for a hearing in April, 2007.[3] (Hunter Decl. ¶ 10, Ex. 11).

In this case, all materials pertaining to the Parole Commission's decision to grant, deny, rescind and/or revoke parole of an inmate under the jurisdiction of the USPC are placed in a parole file retrievable by that inmate's name and register number. (Hunter Decl. ¶ 4). A parole file is established for an inmate following his first parole determination hearing and initially contains those materials considered at the inmate's first parole hearing. <u>Id</u>. Any materials concerning the inmate, received subsequent to the initial hearing, are placed in the file in

---

[3]Plaintiff made additional requests, all of them relating to records found in his parole file. (Hunter Decl. ¶¶ 7-22).

chronological order.  These parole files are maintained at the USPC's Records Center.  <u>Id</u>.  In

responding to FOIA requests, USPC uses an electronic program, "TRAK," to request inmate

records from the USPC's Record Center.  (<u>See</u> Hunter Decl. ¶ 4).  In this instance, the TRAK

records show that the FOIA unit of USPC's General Counsel's office received the parole file of

Michael Antonelli, Register Number 04053-164, on June 12, 2007.  Further, Ms. Hunter

conducted extensive searches of the Washington Records Center to locate plaintiff's parole

hearing tapes.  (Hunter Decl. ¶¶ 26, 30, 31).

        USPC's search was reasonable in this case because USPC used the TRAK program to

locate and find plaintiff's entire parole file.  The TRAK program used in conjunction with the

USPC's Records Center are the only places likely to have the parole file requested by plaintiff.

(<u>See</u> Hunter Decl. ¶ 4).  Therefore, USPC met its obligation under the FOIA and conducted a

reasonable and adequate search to find the thousands of pages located in plaintiff's entire parole

file.


        **2.**        **FOIA Exemptions Asserted by USPC[4]**

                **a.**        **Exemption (b)(2)**

        Exemption 2 of the FOIA exempts from disclosure matters that are "related solely to

the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption (b)(2)

encompasses two distinct categories of information: (a) internal matters of a relatively trivial

nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters

---

[4]Because no records or information were withheld by CSOSA, BOP, EOUSA and OIP defendant
does not need to address the withholding of information by these agencies.  (Hunter Decl. ¶¶ 25,
27; Hill Decl. ¶¶ 3-4; Pustay Decl. ¶¶ 6-7).

the disclosure of which would risk circumvention of agency regulations or statutes, sometimes referred to as "high 2" information. <u>See</u> <u>Long v. U.S. Dept. Of Justice</u>, 450 F. Supp.2d 42, 54 (D.D.C. 2006).

Predominately internal records that deal with trivial administrative matters fall under the "low 2" exemption. <u>Id</u>.; <u>Judicial Watch, Inc. v. U.S. Dept. Of Commerce</u>, 337 F. Supp.2d 146, 165 (D.D.C. 2004) (noting that Exemption 2 applies to trivial internal matters, which is often referred to as "low 2" information).

In the instant case, USPC has asserted FOIA Exemption 2 (low) to withhold the telephone and facsimile numbers of the Parole Commission and the U.S. Marshals Office in the Northern District of Illinois and the business phone numbers of two state law enforcement officials. (Hunter Decl. ¶ 23(c)). These numbers are related solely to the internal personnel and practices of the agency and there is not a substantial or legitimate public interest in the disclosure of these numbers. <u>Id</u>. <u>See</u> <u>also</u> <u>Ray v. FBI</u>, 441 F. Supp. 2d 27, 33 (D.D.C. 2006) (withholding internal FBI telephone number). Therefore, defendant properly withheld the numbers under Exemption 2.

b.    Exemption (b)(6)

Exemption (b)(6) allows USPC to withhold information in personnel and medical files and similar files because releasing this type of information would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6) provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be exempted from disclosure under the FOIA. <u>See</u> 5 U.S.C. § 552(b)(6). With regard to the meaning of the term "similar files," the Supreme Court has stated

11

that Exemption (b)(6) was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982).

To properly invoke Exemption (b)(6), the agency must show that the information applies to a particular individual and is thus personal in nature. N.Y. Times Co. v. NASA, 852 F.2d 602, 606 (D.C. Cir.1988). The Court must strike a proper "balance between the protection of an individual's right to privacy and the preservation of the public's right to Government information ...." Wash. Post Co., 456 U.S. at 599; Hornbostel v. Dep't of the Interior, 305 F.Supp.2d 21, 34 (D.D.C.2003) (quoting Wash. Post Co., 456 U.S. at 599). The analysis of the "public interest" necessarily focuses on the core purpose for which the FOIA was enacted, that is, to "shed[ ] light on an agency's performance of its statutory duties ...." Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773(1989). Accordingly, if a document invades a third party's privacy and does not contain "official information" shedding light on government functions, it may be withheld under Exemption (b)(6); Id. at 774.

As fully described in the Hunter Declaration, USPC withheld addresses, zip codes, social security numbers, phone numbers, dates of birth, telephone and fascimile numbers, names of surviving spouse, means of injury and cause of death under Exemption (b)(6). (Hunter Decl. ¶ 23). The information relates to either witnesses (third parties) or law enforcement personnel. (Hunter Decl. ¶ 23(c)). This information does not shed light on government functions and is withheld because the individuals have a strong privacy interest in non-disclosure. The privacy consideration here is to protect the identities of federal personnel and third parties, as individuals, from unnecessary, unofficial questioning, harassment and stigmatization. Further, plaintiff has

12

provided no public interest that would be served by the information's release.  If no public

interest exists, the information should be protected; as the D.C. Circuit has observed,

"something, even a modest privacy interest, outweighs nothing every time."  Nat'l Ass'n of

Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).

             c.        Exemption (b)(7)(C)

Exemption (b)(7)(C) protects records compiled for law enforcement purposes[5] when

disclosure "could reasonably be expected to constitute an unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(7)(C); see also Manchester v. F.B.I., 2005 WL 3275802, *4 (D.D.C.

Aug. 9, 2005).

In Western Center For Journalism v. I.R.S, the Court explained the requirement for

applying Exemption (b)(7)(C):

> [t]o evaluate the propriety of an Exemption 7(C) withholding, the Court must
> balance the privacy interests involved against the public interest in disclosure. See
> SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C.Cir.1991); United
> States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S.

---

[5]In determining the applicability of Exemption 7, courts have held that "foremost among the
purposes of Exemption 7 is to protect investigatory files in order to prevent harm to the
government's case in court." Putman v. U.S. Department of Justice, 873 F.Supp. 705, 713
(D.D.C.1995) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 235 (1978)). When
a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do
like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C.Cir.1987).
A criminal law enforcement agency must simply show that "the nexus between the agency's
activity ... and its law enforcement duties" is "based on information sufficient to support at least a
colorable claim of its rationality." Id. USPC is a law enforcement agency whose principal
function is the enforcement of criminal laws.  (Hunter Decl. ¶ 2).  The records of the USPC are
records compiled for law enforcement purposes within the meaning of 5 U.S.C. § 552(b)(7).
(Hunter Decl. ¶ 3).  Additionally the FBI records at issue (See p.18, infra) were also compiled for
law enforcement purposes during the course of the FBI's performance of its law enforcement
activities, that in the case, was the investigation of plaintiff's involvement with illegal drugs.
(Hardy Decl. ¶¶ 20-21).

13

749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Under this calculus, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " <u>Davis v. Dep't of Justice</u>, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting <u>U.S. Dept. Of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 773).

116 F.Supp.2d 1, 12 (D.D.C. March 31, 2000) (Kollar-Kotelly, J.).

The "'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity'" has been repeatedly recognized. <u>Fitzgibbon v. C.I.A.</u>, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting <u>Stern v. F.B.I.</u>, 737 F.2d 84, 91-92 (D.C. Cir. 1984)). Further the Fourth Circuit has articulated the particular privacy interests of those individuals serving in a law enforcement capacity and stated that:

> [o]ne who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

<u>Nix v. United States</u>, 572 F.2d 998, 1006 (4th Cir. 1978).

Here, in each instance where USPC asserted Exemption (b)(6), it also asserted Exemption (b)(7)(C).[6] USPC withheld addresses, zip codes, social security numbers, phone numbers, dates of birth, telephone and fascimile numbers, the name of a surviving spouse, the means of injury and cause of death of under Exemption (b)(7)(C). (Hunter Decl. ¶ 23). And, as

---

[6]Because Exemption (b)(7)(C) establishes a lower threshold for non-disclosure than Exemption (b)(6) (i.e. "unwarranted invasion of personal privacy" vs. "clearly unwarranted invasion of personal privacy") a withholding that satisfies the (b)(6) standard perforce satisfies the (b)(7)(C) standard.

previously discussed, the information relates to either witnesses (third parties) or law enforcement personnel. (Hunter Decl. ¶ 23(c)). This information does not shed light on government functions and is withheld because the individuals have a strong privacy interest in non-disclosure. Again, the privacy interest here is to protect the identities of federal personnel and third parties, as individuals, from unnecessary, unofficial questioning, harassment and stigmatization. And as previously stated, plaintiff has provided no public interest that would be served by the information's release. See Lopez v. U.S. Dep't of Justice, No. 99-1722, slip op. At 10-12 (D.D.C. Jan. 21, 2003) (protecting names of government employees absent evidence of misconduct), summary affirmance granted in pertinent part, No. 03-5192, 2004 WL 62726 (D.C. Cir. Mar. 29, 2004); See also Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) (stating "something, even a modest privacy interest, outweighs nothing every time.").

In addition, USPC referred 23 pages of responsive records to the U.S. Marshals Service, of which the U.S. Marshals Service released 21 pages with the names and information concerning government employees and the names of third parties withheld under Exemption (b)(7)(C). (Hunter Decl. ¶ 25, Ex. 52).[7] Again, the names and the information concerning government employees does not shed light on government functions. These individuals have a right to be protected from unnecessary, unofficial questions, harassment and stigmatization. For these reasons, defendant properly invoked Exemption (b)(7)(C).

---

[7]The remaining two pages were originated with BOP. (Hunter Decl. ¶ 25, Ex. 52).

15

3.        **FOIA Exemptions Asserted by FBI**

a.        Exemption (b)(6)[8]

As fully set forth in the Hardy Declaration, the FBI asserted Exemption (b)(6) to protect names and/or identifying information of FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning plaintiff; names and/or identifying information of third parties who provided information to the FBI; names and/or identifying information concerning third parties who came into contact with plaintiff during the course of his criminal activities; and names and/or identifying information of local law enforcement personnel, specifically personnel of the Oak Lawn, Illinois Police Department.  (Hardy Decl. ¶¶ 15-19, Ex. D).  In each instance, FBI scrutinized each piece of information to determine the nature and strength of the privacy interest of any individual. (Hardy Decl. ¶ 14).  The public interest in disclosure was based on whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission.  Id.  In each instance, the privacy interest outweighed the public interest.  Id.  And, as previously mentioned plaintiff has provided no public interest that would be served by the disclosure of this information.

b.        Exemption (b)(7)(C)[9]

Similar to the withholding under Exemption (b)(6), FBI withheld the names and/or identifying information of FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents

---

[8]The legal standard for FOIA Exemption 6 is set forth in Section 2(b) *supra*.

[9]The legal standard for FOIA Exemption 7(C) is set forth in Section 2(c) *supra*.

concerning plaintiff; names and/or identifying information of third parties who provided

information to the FBI; names and/or identifying information concerning third parties who came

into contact with plaintiff during the course of his criminal activities; and names and/or

identifying information of local law enforcement personnel, specifically personnel of the Oak

Lawn, Illinois Police Department pursuant to Exemption (b)(7)(C). (Hardy Decl. ¶¶ 22-28).  See

Lopez v. U.S. Dep't of Justice, No. 99-1722, slip op. At 10-12 (D.D.C. Jan. 21, 2003) (protecting

names of government employees absent evidence of misconduct), summary affirmance granted in

pertinent part, No. 03-5192, 2004 WL 62726 (D.C. Cir. Mar. 29, 2004); See also Nat'l Ass'n of

Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) (stating "something, even

a modest privacy interest, outweighs nothing every time.").

    As with the application of Exemption (b)(6), the FBI determined that all the individuals

whose personal information was withheld had a substantial privacy interest.  Id.  And, as

previously stated, the public interest in disclosure was also determined based on whether the

information in question would inform plaintiff or the general public about the FBI's performance

of its mission.  Id.  In each instance, the privacy interest outweighed the public interest.  Id.  And,

as previously mentioned plaintiff has provided no public interest that would be served by the

disclosure of this information.  Therefore defendant's application of Exemption (b)(6) and

(b)(7)(C) is appropriate.

        c.        Exemption (b)(7)(D)

    Exemption 7(D) provides protection for:

        records or information compiled for law enforcement purposes [which] could
        reasonably be expected to disclose the identity of a confidential source, including
        a State, local, or foreign agency or authority or any private institution which

17

furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

It has long been recognized that Exemption 7(D) affords the most comprehensive protection of all the FOIA's law enforcement exemptions. Billington v. U.S. Dept. of Justice, 301 F. Supp. 2d 15, 21 (D.D.C. 2004). To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. See U.S. Dep't of Justice v. Landano, 508 U.S. 165, 179-81 (1993). When determining the latter, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." Id. at 172. The government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources. An implied grant of confidentiality may be inferred, however, from the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. See id.; Computer Professionals for Social Responsibility v. U.S. Secret Serv., 72 F.3d at 897, 905-06 (D.C. Cir. 1996); Farrugia v. Executive Office for U.S. Attorneys, No. 04-0298, 2006 WL 335771, at *8 (D.D.C. Feb. 14, 2006) (reasoning that "based on the nature of crime for which plaintiff was convicted and circumstances surrounding his arrest . . . it [was] reasonable to infer existence of an implicit grant of confidentiality") (Friedman, J.).

Here the FBI applied Exemption (b)(7)(D) to the names, identifying data and the information provided by individuals under an "implied" assurance of confidentiality. (Hardy

18

Decl. ¶ 31).  Plaintiff has been investigated for various criminal activities.  (Hardy Decl. ¶ 33, <u>See</u> <u>also</u> Ex. Antonelli 90, 167-180). The investigation has shown that plaintiff has the means and inclination to seek revenge on anyone who has helped law enforcement in this investigation. <u>Id</u>.  Many of the individuals who provided information to the FBI while being interviewed, noted that plaintiff has a reputation for his violent behavior.  <u>Id</u>. Given these circumstances (i.e. multiple criminal activities and a reputation for violent behavior), it is reasonable to infer the existence of an implicit grant of confidentiality to the individuals interviewed regarding plaintiff's activities.  For these reasons defendant properly invoked Exemption (b)(7)(D).

        d.        Exemption (b)(7)(F)

Exemption 7(F) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).

Here, as previously stated, plaintiff has the means and inclination to seek revenge on anyone who has helped law enforcement in this investigation.  (Hardy Decl. ¶ 33).  The individuals who provided information to the FBI while being interviewed, noted that plaintiff has a reputation for his violent behavior and those interviewed during the investigation have stated a genuine concern for themselves and their families' safety as a result of their cooperation with the FBI.  <u>Id</u>.  For these reasons, disclosing these individuals' names and other identifying information could reasonably be expected to endanger their lives or physical safety.  Therefore, defendant has properly invoked Exemption 7(F).

####      4.          Segregability

The D.C. Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S. C. 552(b); Mead Data Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. However, the agency is not required "to provide such a detailed justification" that the exempt material would effectively' be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

Here, FBI withheld six pages in their entirety and released all segregable information to plaintiff. (Hardy Decl. ¶ 34). Each document was individually reviewed to determine if any portions were segregable. Id. It was determined that the information withheld by FBI cannot be further segregated without revealing the protected information itself, thus FBI properly withheld the six pages in their entirety. Id.

As articulated in the Hunter Declaration, USPC released all segregable portions of records to plaintiff.  (Hunter Decl. ¶ 33).  Each document was individually reviewed for segregability of non-exempt information and it was determined that all reasonably segregable information was released to plaintiff.  Id.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment should be granted, and Plaintiff's Motion for Partial Summary Judgment should be denied.

July 3, 2008                                            Respectfully submitted,


                                                           /s/
                                                       JEFFREY A. TAYLOR, D.C. Bar #498610
                                                       United States Attorney


                                                           /s/
                                                       RUDOLPH CONTRERAS, D.C. Bar #434122
                                                       Assistant United States Attorney


                                                           /s/
                                                       CINDY OWENS, D.C. Bar #61373
                                                       Special Assistant United States Attorney
                                                       Civil Division, E-4806
                                                       555 4th Street, N.W.
                                                       Washington, D.C. 20530
                                                       (202) 616-2257
                                                       (202) 514-8780 (fax)
                                                       cindy.owens@usdoj.gov

OF COUNSEL:
Rockne Chickinell
U.S. Parole Commission

21

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL C. ANTONELLI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 07-1932 (CKK)** |
| | ) |
| **UNITED STATES** | ) |
| **PAROLE COMMISSION,** | ) |
| | ) |
| **Defendant.** | ) |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Federal rule of Civil Procedure 56 and Local Civil Rules 7(h) and 56.1, Defendant respectfully submits this response to Plaintiff's Amended Statement of Material Facts Not in Genuine Dispute (Plaintiff's Statement"), filed December 4, 2007. Defendant responds to the numbered paragraphs in Plaintiff's Statement as follows:

1.      Defendant does not dispute the facts set forth in paragraph 1.

2.      Defendant does not dispute the facts set forth in paragraph 2.

3.      Defendant does not dispute the facts set forth in paragraph 3.

4.      Defendant does not dispute the facts set forth in paragraph 4.

5.      Defendant does not dispute the facts set forth in paragraph 5.

6.      Paragraph 6 states that "[b]y letter to the Chairman of the USPC dated December 145, 2006, the plaintiff appealed the December 5, 2006 release of certain records to him and the arbitrary and capricious use of certain exemptions cited by the USPC to withhold records." Defendant does not dispute the facts except that the allegation that the use of certain exemptions

is arbitrary and capricious is a legal conclusion.  "Legal conclusions cloaked as facts are not sufficient to create a genuine issue of material fact."  <u>Colbert v. Chao</u>, 2001 WL 710114, * 7 (D.D.C. June 19, 2001).

7.      Defendant does not dispute the facts set forth in paragraph 7.

8.      Defendant does not dispute the facts set forth in paragraph 8.

9.      Defendant does not dispute the facts set forth in paragraph 9.

10.     Defendant does not dispute the facts set forth in paragraph 10.

11.     Defendant does not dispute the facts set forth in paragraph 11.

12.     Defendant does not dispute the facts set forth in paragraph 12.

13.     Defendant does not dispute the facts set forth in paragraph 13.

14.     Defendant does not dispute the facts set forth in paragraph 14.

15.     Defendant does not dispute the facts set forth in paragraph 15.

16.     Defendant does not dispute the facts set forth in paragraph 16.

17.     Paragraph 17 of Plaintiff's Statement states "[t]he USPC has not sent plaintiff even one page of the material requested back in August, 2007."  This statement is not a material fact in that it does not "affect the outcome of the case under governing law,"  <u>Nails v. England</u>, 311 F. Supp.2d 116, 121 (D.D.C. 2004), because it is contradicted by Plaintiff's statement set forth in paragraph 30.  Furthermore, on December 20, 2007, Defendant released 2712 pages of records to Plaintiff (after Plaintiff filed his Motion for Summary Judgment) so the statement is also moot. (<u>See</u> Hunter Decl. ¶ 19).

18.     Defendant does not dispute the facts set forth in paragraph 18.

19.      Defendant does not dispute the facts set forth in paragraph 19.

20.      Defendant does not dispute the facts set forth in paragraph 20.

21.      Defendant does not dispute the facts set forth in paragraph 21.

22.      Defendant does not dispute the facts set forth in paragraph 22.

23.      Defendant does not dispute the facts set forth in paragraph 23.

24.      Paragraph 24 of Plaintiff's Statement states "[t]o date, plaintiff is yet to receive even one page of the requested material from USPC." This statement is not a material fact in that it does not "affect the outcome of the case under governing law," Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004), because it is contradicted by Plaintiff's statement set forth in paragraph 30. Furthermore, on December 20, 2007, Defendant released 2712 pages of records to Plaintiff (after Plaintiff filed his Motion for Summary Judgment) so the statement is also moot. (See Hunter Decl. ¶ 19).

25.      Defendant does not dispute the facts set forth in paragraph 25.

26.      Defendant does not dispute the facts set forth in paragraph 26.

27.      Defendant does not dispute the facts set forth in paragraph 27.

28.      Defendant does not dispute the facts set forth in paragraph 28.

29.      Paragraph 29 of Plaintiff's Statement states "[t]he initial request of plaintiff of August 17, 2006 has never been responded to by the USPC." This statement is now moot because on December 20, 2007, Defendant released 2712 pages of records to Plaintiff (after Plaintiff filed his Motion for Summary Judgment). Defendant also released additional pages of records to Plaintiff on February 8, 2008. (See Hunter Decl. ¶¶ 19, 22).

30.    Paragraph 30 of Plaintiff's Statement states "[t]he only request responded to was the request for parole revocation packet and/or mini file of August 24, 2006, and the request to supply plaintiff's counsel with certain parole revocation records was ultimately superficially addressed just days before the final supplement to his parole appeal was due, ultimately filed on November 15, 2007." This statement is now moot, because on December 20, 2007, Defendant released 2712 pages of records to Plaintiff (after Plaintiff filed his Motion for Summary Judgment). Defendant also released additional pages of records to Plaintiff on February 8, 2008. (See Hunter Decl. ¶¶ 19, 22)

31.    Paragraph 31 of Plaintiff's Statement states "[t]he plaintiff has yet to see any of it." This statement is not a material fact in that it does not "affect the outcome of the case under governing law," Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004).

32.    Paragraph 32 of Plaintiff's Statement states "[t]he USPC is in gross, blatant and flagrant violation of the FOIA time limits within which to respond to his request." This statement is a legal conclusion. "Legal conclusions cloaked as facts are not sufficient to create a genuine issue of material fact." Colbert v. Chao, 2001 WL 710114, * 7 (D.D.C. June 19, 2001).

July 3, 2008                          Respectfully submitted,


                                      ___/s/_____
                                      JEFFREY A. TAYLOR, D.C. Bar #498610
                                      United States Attorney


                                      ___/s/_____
                                      RUDOLPH CONTRERAS, D.C. Bar #434122
                                      Assistant United States Attorney


                                      ____/s/_____
                                      CINDY OWENS, D.C. Bar #61373
                                      Special Assistant United States Attorney
                                      Civil Division, E-4806
                                      555 4th Street, N.W.
                                      Washington, D.C. 20530
                                      (202) 616-2257
                                      (202) 514-8780 (fax)
                                      cindy.owens@usdoj.gov


OF COUNSEL:
Rockne Chickinell
U.S. Parole Commission




                                        5

## CERTIFICATE OF SERVICE

I hereby certify that, on this ___ day of _____, 2008, a copy of the foregoing was

served by First-Class mail, postage prepaid to:

MICHAEL ANTONELLI
No. 04053-164
FCI Memphis, Box 34550
Memphis, Tennessee 31884


_____/s/_____
CINDY OWENS
Special Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL C. ANTONELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1932 (CKK) |
| | ) |
| UNITED STATES | ) |
| PAROLE COMMISSION, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h), Defendant United States Parole Commission ("USPC" or "the Commission") hereby submits the following Statement of Material Facts Not in Genuine Dispute ("SFNGD") in support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment:

1.    The United States Parole Commission, a component of the U.S. Department of Justice, is a law enforcement agency whose principal function is the enforcement of criminal laws. (Declaration of Anissa N. Hunter, Freedom of Information Act Specialist for the United States Parole Commission, Office of the General Counsel, 5550 Friendship Blvd., Chevy Chase, Maryland 20815 (hereinafter referred to as "Hunter Decl."), ¶ 2).  The USPC, therefore, pursuant to the general exemptions of the Privacy Act, is exempt from the disclosure provisions of the Privacy Act.  See 5 U.S.C. § 552a(j)(2) and 28 C.F.R. § 16.85; (Id.).  All disclosure requests submitted by requesters for copies of their own records under the Privacy Act ("first party" requests) are processed under the FOIA. (Id.).  Requests for copies of records of other persons

("third party" requests) are also processed under the FOIA. (Id.).

      2.    Records of USPC are records compiled for law enforcement purposes within the meaning of 5 U.S.C. § 552(b)(7). (Hunter Decl. ¶ 3).

      3.    Files are maintained in USPC's central office for inmates and parolees. (Hunter Decl. ¶ 4).  All materials pertaining to the Commission's decision to grant, deny, rescind and/or revoke parole of an inmate under the jurisdiction of USPC are placed in a parole file retrievable by that inmate's name and register number. (Id.).  A parole file is established for an inmate following his first parole determination hearing and initially contains those materials considered at the inmate's first parole hearing. (Id.).  Any materials concerning the inmate, received subsequent to the initial hearing, are placed in the file in chronological order. (Id.).

      4.    Ms. Anissa N. Hunter, Freedom of Information Act Specialist for the United States Parole Commission, Office of the General Counsel, is responsible for: (a) processing requests from inmates and parolees for prehearing disclosure of records from their files under 18 U.S.C. § 4208 and 28 C.F.R. §. 2.55; (b) processing first-party FOIA requests from inmates and parolees requesting disclosure of records from their own files under 28 C.F.R. § 2.56; (c) processing third-party FOIA requests from inmates and parolees requesting disclosure of records from another person's file;  and (d) performing other administrative duties.  (Hunter Decl. ¶ 5).

## PLAINTIFF'S FOIA REQUESTS

First FOIA Request (August 17, 2006 and August 24, 2006)
(Request for First-Party Records in Antonelli's Parole File)

5.      By letter dated August 17, 2006, Michael C. Antonelli, Register Number 04053-

164, requested that USPC provide under FOIA "a copy of all records that your agency has or had

in its possession that are in any way connected to my name." (Hunter Decl. ¶¶ 6, 7, and Ex. 1).

This request for all records and hearing tapes was received by the FOIA section on August 30,

2006 and was assigned FOIA No. 06-647. (Id.).  By letter dated September 14, 2006, USPC

acknowledged receipt of the August 17, 2006 request, and responded that because the

Commission was acting under exceptional circumstances, USPC might not be able to process the

request within the statutory time period. (Hunter Decl. ¶ 7, and Ex. 3).

6.      By letter dated August 24, 2006, Michael C. Antonelli sent a second "FOIA"

request to USPC and asked for a copy of his "parole revocation packet and/or parole mini file."

(Hunter Decl. ¶ 7, and Ex. 2) (original in capital letters).  On November 16, 2006, the

Commission responded to the August 24, 2006 request by informing Antonelli that his parole

revocation packet would be sent to his institution before his hearing and there was no need to

submit a FOIA request for the packet; Antonelli was also informed that his pre-hearing

assessment had yet to be prepared. (Hunter Decl. ¶ 7, and Ex. 5).  Hence, no further response to

this "FOIA" request was required. (see Id.).

7.      By letter dated November 6, 2006, Antonelli sent an appeal to the Commission's

Chairman, complaining of the delay in responding to his August, 2006 requests (Hunter Decl., ¶

7, and Ex. 4).  Antonelli asked that a response to his appeal and requests be expedited (Id.).

8.      By letter dated December 5, 2006, USPC responded to Antonelli's August 17,

2006, FOIA request (No. 06-647), and provided copies of all documents (122 pages) found in his

parole file since the last disclosure made to the prisoner on May 6, 2002. (Hunter Decl. ¶ 8, and

Ex.6).  USPC withheld a portion of the October 30, 2001 report from the Burbank Police

Department based on 5 U.S.C. §552(b)(6) and (7)(C). (Id.).  The information withheld from

disclosure was personal information relating to witnesses, including addresses and birth dates.

(Id.).  USPC advised Antonelli that his parole file contained duplicate copies of documents that

were originated by the Bureau of Prisons ("BOP") and were available through his case manager.

(Id.).  Antonelli was further advised that he would have to request that the documents be

processed by USPC before any further action would be taken, and that, under applicable

Departmental regulations, if such a request were made, the documents would be referred to the

BOP for processing. (Id.).

9.      By letter dated December 15, 2006, Antonelli appealed the December 5, 2006,

decision to Commission Chairman Edward F. Reilly, Jr. (Hunter Decl. ¶ 8, and Ex. 7).  Antonelli

acknowledged that "the Commission provided me copies of the records requested" (Id.).

Antonelli challenged the assertion of Exemptions 6 and 7(C) "as arbitrary and capricious," and

appealed the non-disclosure of the duplicate BOP documents because he "want[ed] those records

from the Commission, not the BOP." (Id.).

10.     By letter dated  January 29, 2007, Chairman Reilly of USPC denied the appeal

and affirmed the assertion of Exemptions 6 and 7(C). (Hunter Decl. ¶ 8, and Ex.  8).  The

Chairman also denied the appeal as to the BOP documents because Antonelli had not notified

USPC's FOIA processor as instructed. (Id.).

4

11.     By letter dated February 13, 2007, USPC referred 14 pages of BOP documents to the Bureau for processing and preparation of a direct response. (Hunter Decl. ¶ 9, and Ex.  9).  By letter dated February 13, 2007, USPC informed Antonelli of the BOP referral. (Hunter Decl. ¶ 9, and Ex.10).

Second FOIA Request, No. 07-143 (Request for First-Party Records<br>in Antonelli's Parole File – Duplicated First FOIA Request)

12.     On or about February 17, 2007,[1] Michael C. Antonelli requested that USPC provide "a copy of everything you have in connection to my name including all parole hearing tapes; everything I submitted; and everything you already have sent me." (Hunter Decl. ¶ 10, and Ex. 11) (emphasis in original).  Antonelli alleged that the BOP lost his records and that he urgently needed the materials for a hearing on April 26, 2007. (Id.).  This request was received by the FOIA section on March 1, 2007 and assigned FOIA No. 07-143 (Id.).  This request sought all records relating to Antonelli "dating back to 1978" when "he was first incarcerated by the federal government," and therefore included the records sought in Antonelli's "first" FOIA request (No. 06-647), supra (see Hunter Decl.  ¶ 10, and Exs. 11, 28).

13.     By letter dated March 6, 2007, USPC acknowledged receipt of the February 17, 2007, request, and responded that because the Commission was acting under exceptional circumstances, USPC might not be able to process the request within the statutory time period. (Hunter Decl. ¶ 10, and Ex. 12).

14.     By letter dated March 10, 2007, Antonelli submitted an appeal complaining about

---

[1]The February, 2007 FOIA Request, No. 07-143 is dated twice, February 17, 2007 and December 15, 2007.  To be consistent and clear Defendant refers to this request as the "February 17, 2007 request."  (Hunter Decl., ¶ 10, and Ex. 11).

an unreasonable delay in processing his February 17, 2007, request. (Hunter Decl. ¶ 10, and Ex. 13). By letter dated March 11, 2007, Antonelli requested an expedited response to his FOIA request. (Hunter Decl. ¶ 10, and Ex.14). Antonelli stated in this request that he would pay all fees incurred by the Commission in processing the request. (Id.).

15.    By letter dated April 23, 2007, USPC wrote Antonelli that he would have to pay a deposit of $250.00 for processing of FOIA No. 07-143. ((Hunter Decl. ¶ 12, and Ex. 19). By letter dated April 26, 2007, Antonelli sent a check for $250 to USPC, and asked that the response to his FOIA request be expedited. (Hunter Decl. ¶ 12 and Ex. 20) . The Commission's FOIA section received Antonelli's $250.00 deposit on May 9, 2007. (Id.). By letter dated May 16, 2007, USPC acknowledged receipt of the deposit and informed Antonelli that his request for an expedited response was denied. (Hunter Decl. ¶ 12 and Ex. 21).

16.    By letter dated October 9, 2007, USPC advised Antonelli in a letter that his request for copies of all records (FOIA No. 07-143) had been processed and that Department of Justice rules required payment of all applicable fees before the copies could be released. (Hunter Decl. ¶ 14, and Ex. 29). USPC also informed Antonelli that the total number of pages in the response was 2,703 pages, that his $250.00 check had been deposited, and that he owed $10.30 for the balance of the processing fee. (Id.). By letter dated October 30, 2007, Antonelli responded that he had "caused the $10.30 to be sent to the Commission off my books" and asked why the Commission had not responded to Mr. McCall's request for records from the last revocation hearing. (see Hunter Decl. ¶ 14, and Ex. 30).

17.    By letter dated November 30, 2007, USPC advised Antonelli that it would forwarded the requested records after the Commission receives the $10.30. (Hunter Decl. ¶ 17,

and Ex. 33). Although it appears that a check for $10.30 was issued from Antonelli's prison

account on or about November 5, 2007, USPC did not receive the check, and it was later

canceled. (see Hunter Decl. ¶¶ 16-17 , and Exs. 32-37).

18.    By letter dated December 20, 2007, USPC responded to Antonelli's February 17,

2007, request (FOIA No. 07-143) by providing 2,712 (as opposed to original estimate of 2,703)

pages of documents. (Hunter Decl. ¶ 19, and Ex. 38). USPC further advised Antonelli that his

parole file contained a number of documents originated by other agencies, and those documents

(and the estimated number of originated records) were referred to the following originating

agencies for a direct reply to Antonelli:

(a)    Executive Office for United States Attorneys ("EOUSA") (2 pages);
(b)    Federal Bureau of Investigation ("FBI") (180 pages);
(c)    Bureau of Prisons ("BOP") (529 pages) ;
(d)    U.S. Marshals Service ("USMS") (23 pages);
(e)    U.S. Department of Justice, Office of Information and Privacy ("OIP") (2 pages); and
(f)    District of Columbia Court Services and Offender Supervision Agency ("CSOSA") (68 pages)

(Id.). USPC did not charge Antonelli for the 804 pages of referral records (Hunter Decl. ¶ 19).

19.    By letter dated December 26, 2007, Antonelli appealed the December 20, 2007,

decision to the Chairman and challenged "the withholdings as arbitrary and capricious action;"

the letter was received by the FOIA unit on January 7, 2008. (Hunter Decl. ¶ 20, and Ex. 39).

20.    USPC received a check dated January 2, 2008, from Antonelli's attorney in the

amount of $10.30. (Hunter Decl. ¶ 21, and Ex. 40).

21.    On January 17, 2008, USPC sought to locate the following tape recordings of

hearings held for Antonelli by contacting the Washington Records Center:  tape NC 60013

(October 1987); tape NC 67715 (November 1989); tape NC 73292 (December 1991);  tape

91312 (December 1994); and tape 75072 (May 1997, hearing date erroneously identified as June

1996), (Hunter Decl. ¶ 24). USPC received the following responses from the Washington

Records Center:  tape NC 60013 (missing); tape NC 67715 (charged out on January 5, 1995 to

"Cage" [former FOIA Specialist Jean Cage from the now-closed Kansas City, Missouri regional

office]; and tape 75072 (missing). (Hunter Decl. ¶ 24, Exs. 42-44).

  22. By letter dated February 8, 2008, Chairman Reilly responded to the appeal in

FOIA No. 07-143. (Hunter Decl. ¶ 22, and Ex. 41).  The Chairman released to Antonelli some

previously-withheld information contained in a few documents as part of the appeal: (1) a copy

of a letter dated March 1, 1979; (2) two pages appended to a fax cover sheet dated February 3,

1997 (telephone and fax numbers on the fax cover sheet were not disclosed on appeal, and found

to also be protected under FOIA Exemptions 2, 6, 7(C), 5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C));

and (3) information that had been withheld from a Burbank, Illinois Police Department report

dated October 18, 2001, i.e., available times for reaching the complainant and entries regarding

the sex/race of witnesses (other personal information in the report was not disclosed on appeal).

(Id.).

  23. In the same letter dated February 8, 2008, the Chairman also provided Antonelli

with 68 pages of documents previously referred to CSOSA, and advised Antonelli that the

Commission was seeking his hearing tapes for duplication and that the tape disclosure would be

the subject of a supplemental response. (see Id.).  The December 20, 2007 response was

otherwise affirmed. (Id.).

  24. On February 28, 2008, USPC conducted a search for records regarding the

transfer of hearing tapes to the Washington Records Center. (Hunter Decl. ¶ 26). The disposal

schedule of hearing tapes is that tapes are moved from the Parole Commission to the Washington

Records Center one year after the date of the hearing and destroyed ten years after the date of the

hearing. (Id.) Ms. Hunter searched transmittal sheets for tape recordings of hearings held for

Antonelli. (Id.) In her search she did not find records for the following tapes: tape NC 26162

(February 1981); tape NC 42588 (February 1983); tape 48734 (November 1984); and tape 78532

(September 1998). Ms. Hunter did find a record of transmittal for tape 88677 (September 1993)

and ordered that tape from the Washington Record Center. (Hunter Decl. ¶ 26, Ex. 55).

25.     By letter dated March 28, 2008, USPC disclosed a one-page email dated

December 19, 2006 from a case analyst, but withheld office telephone numbers under FOIA

Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C). (Hunter Decl. ¶ 28, Ex. 58). This

disclosure was the result of FBI's response to USPC's referral of 180 pages of responsive

documents. (Id.) After releasing 97 pages of documents with redactions to Plaintiff, FBI

referred back to USPC 76 pages of documents. (Id.) USPC determined that the 75 pages were

duplicates of pages that it had already referred to BOP. Id. USPC determined that one of the 76

pages was a USPC-originated document and released it in redacted form as mentioned above on

March 28, 2008. (Id.)

26.     By letter dated March 28, 2008, USPC also sent Antonelli tapes for the September

29, 1993 (tape 88677) and December 13, 1994 (tape 91312) hearings (Hunter Decl. ¶ 30, Ex. 58).

Tape 75072 (May 1997) was provided to Plaintiff on April 3, 2008. (Hunter Decl. ¶ 30, Ex. 60).

USPC advised Antonelli that it had determined that the remaining hearing tapes "are not

available for copying and disclosure. In some cases, records of the transfer of the tapes to the

9

Washington Records Center could not be found.  In others, the Center reported that the tapes were missing or sent to a Commission office that is now closed." (Hunter Decl. ¶¶ 30-31, Ex. 58).  The hearing tape for December 1991 (tape NC 73292) was not received.  (Hunter Decl. ¶ 30).

Duplicate "McCall" FOIA Request, No. 07-181

27.    By letter dated March 13, 2007, Cecil C. McCall wrote to USPC and requested copies of all Commission records on Antonelli and included a Privacy Act waiver from the prisoner. (Hunter Decl. ¶ 11, and Ex. 15). This request sought information previously requested in FOIA No. 07-143, supra.  By letter dated March 21, 2007, USPC acknowledged receipt of the March 13, 2007, request, which was assigned FOIA No. 07-181; USPC responded that because the Commission was acting under exceptional circumstances, USPC might not be able to process the request within the statutory time period. (Hunter Decl. ¶ 11, and Ex. 16).  By letter dated March 27, 2007, USPC wrote Mr. McCall and advised that the requester would have to agree to payment of a fee before the request would be processed. (Hunter Decl. ¶ 11, and Ex. 17). Antonelli sent a letter, dated March 29, 2007, in which he agreed to pay a fee exceeding $25.00 for processing his FOIA request. (Hunter Decl. ¶ 11, and Ex. 18).  Antonelli paid a $250 fee for processing FOIA No. 07-143 (see SFNGD, ¶ 15, supra), which requested the same information, but did not pay the fee for FOIA No. 07-181.

28.    By letter dated August 6, 2007, USPC informed Mr. McCall that the Commission had received duplicate requests for the same records and that the Commission would send the materials to Antonelli unless otherwise notified by the prisoner (Hunter Decl. ¶ 13, and Ex. 27). By letter dated August 16, 2007, Antonelli notified USPC that the response to the request for

records regarding the last revocation hearing should be sent to Mr. McCall, (see infra), and the records responsive to FOIA No. 07-143 should be sent to Antonelli (Hunter Decl. ¶ 13, and Ex. 28).

Duplicate FOIA Requests for Revocation Hearing Records, Nos. 07-467, 07-483

29.    On or about July 13, 2007, Antonelli submitted a FOIA request for records connected to his revocation hearing dated May 21, 2007, and a notice of action dated June 12, 2007 (Hunter Decl. ¶ 13, and Ex. 22). This request was received by USPC FOIA section on July 19, 2007 and was assigned FOIA No. 07-467; Antonelli again asked for an expedited response (See id.). By letter dated July 19, 2007, USPC acknowledged receipt of the July 13, 2007 request, and responded that because the Commission was acting under exceptional circumstances, the Commission might not be able to process the request within the statutory time period (Hunter Decl. ¶ 13, and Ex. 24).

30.    By letter dated  July 19, 2007, Cecil C. McCall sent an "up-date request for all disclosable documents, letters, tapes and other materials in the file of [Michael C. Antonelli] since the date of your last disclosure" and provided  a Privacy Act waiver from Antonelli. (Hunter Decl. ¶ 13, and Ex. 23). By letter dated July 25, 2007, USPC acknowledged receipt of the July 19, 2007, request, which was assigned FOIA No. 07-483; USPC further stated that the requester would have to agree to pay a fee for processing the request before the Commission would take further action. (Hunter Decl. ¶ 13, and Ex. 25). By letter dated August 6, 2007, USPC received a note from Mr. McCall that he wanted only copies of the materials from Antonelli's last revocation hearing. (Hunter Decl. ¶ 13, and Ex. 26).

31.    By letter dated November 5, 2007, USPC responded to the request for records on

the last revocation hearing (FOIA No. 07-467) by sending copies of all documents pertaining to the May 21, 2007, revocation hearing (18 pages) to Mr. McCall. (Hunter Decl. ¶ 15, and Ex. 31). USPC did not withhold any records or assert any exemptions; however, USPC inadvertently failed to include a copy of the hearing tape with the response. (Hunter Decl. ¶ 15). USPC advised Mr. McCall that he had 30 days from the date of receipt of the response to appeal to the Commission's Chairman. (Id., and Ex. 31).

32.    By letter dated November 30, 2007, Ms. Hunter, USPC, attempted to make a copy of the hearing tape for Antonelli's May 21, 2007 revocation hearing.  Ms. Hunter discovered at that time the tape only contained the  hearing examiner's statement of Antonelli's name at the beginning of the tape, and no recording of the hearing with Antonelli. (Hunter Decl. ¶ 17).   By letter dated March 28, 2008, USPC advised Antonelli that "[a]n examination of the tape of your hearing dated May 21, 2007 showed no recording of the proceeding, with the exception of the hearing examiner's statement of your name." (Hunter Decl. ¶ 30, and Ex. 58).  In May, 2008, Ms. Hunter again listened to the May 21, 2007 tape and did not hear a recording of any voice. (Hunter Decl. ¶ 31).

33.    The Commission has not received an appeal from Antonelli or Mr. McCall regarding the response letter dated November 5, 2007 in FOIA 07-467. (Hunter Decl. ¶ 18).

## REFERRAL DOCUMENTS FOR FOIA REQUEST NO. 07-143

34.    On January 30, 2008, USPC sent a letter to each of the six (6) components and agencies that had originated documents in Antonelli's parole file, requesting an expected response date to the December 20, 2007, referral in FOIA No. 07-143 and a copy of the response to Antonelli.  (Hunter Dec. ¶ 25, and Exs. 45-50).

12

EOUSA

35.    USPC referred a two-page memorandum to EOUSA, which was entitled "Government's Version of the Offense" dated July 9, 1998, from Assistant United States Attorney Gillum Ferguson to Lisa Lewis, U.S. Probation Office (Hunter Decl. ¶¶ 25, 27).  It was subsequently discovered that the referral of the two (2) pages was unnecessary.  (Hunter Decl. ¶ 27).  The document is an attachment to Plaintiff's presentence report in the case and access to the document is governed by BOP policy on inmate access to presentence reports.  (Id.).

FBI

36.    USPC referred 180 pages of documents to FBI, which responded  to Antonelli by letter dated March 11, 2008, and disclosed 97 pages of documents with certain information withheld under FOIA Exemption 6, 7(C), 7(D), 7(F) 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F) and 5 U.S.C. § 552a(j)(2) (Hunter Decl. ¶ 28, and Ex. 57; Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. (hereinafter "Hardy Declaration"), ¶ 5 (64 pages were disclosed in their entirety and 33 parts were disclosed in part based on assertion of Exemptions 6, 7(C), and 7(D)).

37.    Of the remaining 180 pages of referral documents, the FBI withheld 7 pages in their entirety, and returned 76 pages to USPC because the documents were not originated by the FBI (see Hunter Decl., ¶ 28, and Exs. 57-58; Hardy Decl., ¶¶ 4, 5 (six (6) pages were withheld based on assertion of FOIA Exemptions 6, 7(C), and 7(D), and one (1) page was withheld as a duplicate; the remaining 76 pages were returned to USPC).  By memorandum dated March 11, 2008, the FBI returned 76 of the 180 pages to the USPC because that material originated with the

13

USPC although it contained FBI equities.  (Hardy Decl. ¶ 4).  Accordingly, the FBI

recommended that the USPC withhold the FBI information pursuant to Exemptions (b)(2),

(b)(6), and (b)(7)(C).  (Id.).  USPC reviewed the 76 pages of documents returned by the FBI,

determined that 75 pages of the records were originated by BOP, and identified the pages as the

same records already referred to the BOP, which the BOP is prepared to release in their entirety

or make available at Antonelli's institution (Hunter Decl. ¶ 28).  USPC determined that the

remaining one (1) page was a USPC-originated document; by letter dated March 28, 2008, USPC

disclosed the one-page email dated December 19, 2006, from a case analyst with office telephone

numbers withheld under FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C).

(Hunter Decl. ¶ 28, Ex 58).

BOP

38.     USPC referred 529 pages of documents to BOP, which responded to Antonelli by

letter dated March 3, 2008.   Declaration of Ron Hill, Administrator for the BOP Freedom of

Information Act/Privacy Act Section, in BOP's Central Office (hereinafter referred to as "Hill

Declaration"), ¶ 3.   BOP agreed to disclose 320 pages in their entirety and advised Antonelli that

the remaining 209 were copies of pre-sentence reports that could be reviewed at Antonelli's

institution (Hill Decl., ¶ 4; Hunter Decl. ¶ 29, and Ex. 59).  BOP also advised Antonelli that he

must pay a fee of $22.00 before the 320 pages could be released to him (Hill Decl. ¶ 3, Hunter

Decl. ¶ 29, and Ex. 59).

USMS

39.     USPC referred 23 pages of documents to USMS, which responded to Antonelli by

14

letter dated February 4, 2008, and disclosed 21 pages of documents with certain information

withheld under FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), to protect the names and

information concerning government employees, and the names of third-party individuals. (Hunter

Decl. ¶ 25, and Ex. 52).  USMS also stated that it forwarded two pages of documents to the BOP,

as the originating agency. (Id.).

OIP

40.    USPC referred two pages of documents to OIP, which responded to Antonelli by

letter dated February 7, 2008, and disclosed one page in its entirety and withheld the other page

as a third-party record because it was not a record identifiable to Michael C. Antonelli, Register

Number 04053-164 (Declaration of Melanie Ann Putsay, Director of the Office of Information

Privacy, U.S. Department of Justice ("Putsay Decl.") ¶ 7 and Ex. B; Hunter Decl. ¶ 25, and Ex.

51).  The one (1) page third-party record was not found to be identifiable to plaintiff but rather,

related to an inmate with a different register number than that provided by plaintiff in his request.

(Putsay Decl.  ¶ 5-6).  After conducting a search of the BOP "inmate locator" OIP's FOIA

Specialist was unable to link the document to the plaintiff.  (Putsay Decl. ¶ 6).

CSOSA

41.    USPC referred 68 pages of documents to CSOSA, which returned all of the

referred documents; the Commission disclosed all 68 pages to plaintiff in their entirety by the

Chairman's letter dated February 8, 2008  (Hunter Decl. ¶¶ 22, 25, and Ex. 41).  No information

was withheld under any FOIA exemption (Id.).

## JUSTIFICATION FOR NON-DISCLOSURE BY USPC UNDER FOIA EXEMPTIONS 2, 6, AND 7(C)

42.    By letter dated February 8, 2008, Chairman Reilly responded to the appeal in

FOIA No. 07-143 (Hunter Decl. ¶ 22, and Ex. 41).  The Chairman released to Antonelli some

previously-withheld information contained in a few documents as part of the appeal: (1) a copy

of a letter dated March 1, 1979; (2) two pages appended to a fax cover sheet dated February 3,

1997 (telephone and fax numbers on the fax cover sheet were not disclosed on appeal, and found

to also be protected under FOIA Exemptions 2, 6, 7(C), 5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C));

and (3) information that had been withheld from a Burbank, Illinois Police Department report

dated October 18, 2001, i.e., available times for reaching the complainant and entries regarding

the sex/race of witnesses, (other personal information in the report was not disclosed on appeal).

Id.  The Chairman affirmed the withholding of portions of the documents from disclosure to

Antonelli, based on Exemptions 2, 6 and 7(C).  (Hunter Decl. ¶ 23).

43.    By letter dated March 28, 2008, USPC disclosed a one-page email dated

December 19, 2006, from a case analyst, but withheld office telephone numbers under FOIA

Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C).  (Hunter Decl. ¶ 30).

44.    In sum, the following two (2) tables reflect all records that were found as a result

of the multiple searches conducted by USPC and were either released in full, released with

redactions or withheld in full:

16

**Table 1: Documents Released by USPC**

| Date of Response/ Request Number | Terms of Request | Total Number of Pages Released/ Withheld | Exemptions Asserted | Citation |
|---|---|---|---|---|
| 12-5-2006/ 06-647 | All documents contained in the Commission's file since the Commission's last disclosure of May 6, 2002 | 122/ 0 withheld | (b)(6) and (b)(7)(C) | Hunter Decl. ¶ 8, Ex. 6 |
| 10-9-2007/ 07-467 | Copies of all documents contained in the U.S. Parole Commission's file pertaining to the parole hearing dated May 21, 2007 | 18 (released to Cecil C. McCall) (hearing tape was released on June 9, 2008)/ 0 withheld | None | Hunter Decl. ¶¶ 15, 32; Ex. 31, 63 |
| 12-20-2007/ 07-143 | Copies of all documents contained in the U.S. Parole Commission's file | 2,712 (in addition, 804 pages of records were referred to other agencies) | (b)(2), (b)(6) and (b)(7)(C) | Hunter Decl. ¶ 19, 22 Exs. 38, 41 |
| 2-8-2008/ 07-143 appeal | Same as above | 72 (including 68 referred back to USPC from CSOSA)/ 0 withheld | (b)(2), (b)(6) and (b)(7)(C) | Hunter Decl. ¶ 22, 24; Ex. 41 |

| Date of Response/ Request Number | Terms of Request | Total Number of Pages Released/ Withheld | Exemptions Asserted | Citation |
|---|---|---|---|---|
| 3-28-2008, 4-3-2008/ Supplemental Response for 07-143 | Same as above | 1 (this page was referred back to USPC from FBI); tape 88677 (September 1993, tape NCRO 91312 (December 1994), and tape 75072 (May 1997) | (b)(6), (b)(7)(C) | Hunter Decl. ¶¶ 28, 30, Exs. 58, 60 |

**Table 2: Documents Referred to Other Agencies and Released to Antonelli
(EOUSA, FBI, BOP, USMS, OIP)**

| Date of Response/ Request Number | Agency | Total Number of Pages referred from USPC | Total Number of Pages Released/ Withheld | Exemptions Asserted | Citation |
|---|---|---|---|---|---|
| USPC provided the response on 2-8-2008/ 07-143 | CSOSA | 68 | The 68 pages were referred back to USPC from CSOSA. | None | Hunter Decl. ¶¶ 22, 25; Ex. 41 |
| No response provided/ 07-143 | EOUSA | 2 | None, it was determined that these were duplicates of records referred to BOP | None | Hunter Decl. ¶ 27 |
| 3-11-2008/ 07-143 | FBI | 180 | 97/76 referred back to USPC/6 pages withheld in full, one (1) page was a duplicate | (b)(6), (b)(7)(C), (b)(7)(D) and 552a(j)(2) | Hunter Decl. ¶ 28, Ex. 56; Hardy Decl. ¶¶ 4-5 |
| 3-3-3008/ 07-143 | BOP | 529 | 320/209 available at institution | None | Hunter Decl. ¶ 29, Ex. 59; Hill Decl. ¶¶ 3,4. |
| 2-4-2008/ 07-143 | USMS | 23 | 21/0 withheld (2 pages referred to BOP) | (b)(7)(C) | Hunter Decl. ¶ 25; Ex.38 |

| 2-7-2008/ 07-143 | OIP | 2 | 1/1 document non-responsive | None | Hunter Decl. ¶ 25, Ex. 51; Putsay Decl. ¶ 7, and Ex. B |
|---|---|---|---|---|---|

45.    FOIA Exemptions asserted by USPC are set forth in the Hunter Declaration and FOIA Exemptions asserted by FBI are set forth in the Hardy Declaration.  (Hunter Decl. ¶ 23; Hardy Decl. ¶¶ 9-33).

### Reasonable Segregability

46.    All agencies have released all reasonably segregable portions of documents to Plaintiff in response to his FOIA requests. (Hunter Decl. ¶ 33; Hardy Decl. ¶ 34).

July 3, 2008                    Respectfully submitted,


                               /s/
                               JEFFREY A. TAYLOR, D.C. Bar #498610
                               United States Attorney


                                /s/
                               RUDOLPH CONTRERAS, D.C. Bar #434122
                               Assistant United States Attorney


                                /s/
                               CINDY S. OWENS, D.C. Bar #491465
                               Special Assistant United States Attorney
                               Civil Division, E-4806
                               555 4th Street, N.W.
                               Washington, D.C. 20530
                               (202) 616-2257
                               (202) 514-8780 (fax)
                               cindy.owens@usdoj.gov

OF COUNSEL:
Rockne Chickinell
U.S. Parole Commission

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael C. Antonelli, | ) Civil Action No.: 07-1932 (CKK) |
| | ) |
| Plaintiff, | ) DECLARATION OF ANISSA N. HUNTER |
| | ) |
| vs. | ) |
| | ) |
| United States Parole Commission, | ) |
| | ) |
| Defendant | ) |

I, Anissa N. Hunter, declare as follows:

1. I am the Freedom of Information Act Specialist for the United States Parole Commission, Office of the General Counsel, 5550 Friendship Blvd., Chevy Chase, Maryland 20815. I have held this position since November 2006. My duties in this position include responding to requests for records submitted under the Freedom of Information Act (hereinafter FOIA), 5 U.S.C. §552.

2. The United States Parole Commission, a component of the U.S. Department of Justice, is a law enforcement agency whose principal function is the enforcement of criminal laws. The Commission, therefore, pursuant to the general exemptions of the Privacy Act, is exempt from the disclosure provisions of the Privacy Act. See 5 U.S.C. §552a(j)(2) and 28 C.F.R. §16.85. All disclosure requests submitted by requesters for copies of their own records under the Privacy Act ("first party" requests) are processed under the FOIA. Requests for copies of records of other persons ("third party" requests) are also processed under the FOIA.

3. Records of the U.S. Parole Commission are records compiled for law enforcement purposes within the meaning of 5 U.S.C. §552(b)(7).

4. Files containing paper documents are maintained in the U.S. Parole Commission's central office for inmates and parolees. All materials pertaining to the Parole Commission's decision to grant, deny, rescind and/or revoke parole of an inmate under the jurisdiction of the Commission are placed in a parole file retrievable by that inmate's name and register number. A parole file is established for an inmate following his first parole determination hearing and initially contains those materials considered at the inmate's first parole hearing. Any materials concerning the inmate, received subsequent to the initial hearing, are placed in the file in chronological order. Parole files are maintained in the Commission's Records Center. In answering a FOIA request, I use the Commission's electronic TRAK program to request the inmate parole file from the Commission's Records Center, in accordance with standard Commission policy and practice. I make the request either by inmate name or register number. The Records Center then delivers the file to the Office of the General Counsel for my review and action. If the file is with another section of the Commission, that section makes the appropriate transfer via TRAK when that section no longer needs the file. TRAK records show that a former employee of the FOIA unit received the file of Michael Antonelli, Register Number 04053-164 on June 12, 2007 from another section of the Commission.

5. I am responsible for: (a) processing requests from inmates and parolees for prehearing disclosure of records from their files under 18 U.S.C. §4208 and 28 C.F.R. §. 2.55; (b) processing first-party FOIA requests from inmates and parolees requesting disclosure of records from their own files under 28 C.F.R. §2.56; (c) processing third-party FOIA requests from inmates and parolees requesting disclosure of records from another person's file; and (d) performing other administrative duties.

6. I have reviewed the parole file of Michael C. Antonelli, Register Number 04053-164, and find as follows:

7.  On August 17, 2006, Antonelli submitted a request for all records and hearing tapes to the Parole Commission (FOIA No. 06-647).  (See Exhibit 1).  The request was received by the FOIA section on August 30, 2006.  (Id.).  On August 24, 2006 Antonelli sent a request to the Commission for a copy of his "parole revocation packet" and/or "parole mini file."  (See Exhibit 2).  The Commission acknowledged receipt of the August 17 request on September 14, 2006 and responded that because the Commission was acting under exceptional circumstances, the Commission might not be able to process the request within the statutory time period.  (See Exhibit 3).  On November 6, 2006, Antonelli sent an appeal to the Commission's Chairman, complaining of the delay in responding to his two requests and demanding that the Commission also provide him with copies of Bureau of Prisons's documents in his parole file.  (See Exhibit 4).  He also asked that a response to his appeal and requests be expedited.  (Id.).  On November 16, 2006, the Commission responded to the August 24 request by informing Antonelli that his parole revocation packet would be sent to his institution before his hearing and there was no need to submit a FOIA request for the packet.  (See Exhibit 5).  He was also informed that his prehearing assessment had yet to be prepared.  (Id.).

8.  On December 5, 2006, I responded to Antonelli's August 17 request in FOIA No. 06-647.  (See Exhibit 6).  I provided Antonelli with copies of all documents found in his file since the last disclosure made to the prisoner on May 6, 2002, with the exceptions I noted in the response.  (Id.).  I withheld a portion of a October 30, 2001 report from the Burbank Police Department based on 5 U.S.C. §552(b)(6) and (7)(C).  The information I withheld from disclosure was personal  information on witnesses, including addresses and birthdates for the witnesses.  Antonelli appealed to Commission Chairman Edward F. Reilly, Jr. on December 15, 2006, asserting that the FOIA exemptions were improperly applied and asking for BOP documents from the Commission, not the Bureau of Prisons.  (See Exhibit 7).  Chairman Reilly denied the appeal on January 29, 2007.  (See Exhibit 8).

9. On February 13, 2007, I responded to the complaint in Antonelli's December 15 appeal about failure to disclose BOP documents by referring 14 pages of BOP documents to the Bureau for review and their reply and then informing Antonelli of the referral. (See Exhibits 9 and 10).

10. On February 17, 2007, Antonelli requested copies of all documents and tapes in his parole file, stating that the BOP lost his records and that he urgently needed the materials for a hearing in April 2007 (FOIA No. 07-143). (See Exhibit 11). The request was received by the FOIA section on March 1, 2007. (Id.). I acknowledged receipt of the February 17 request on March 6, 2007 and responded that because the Commission was acting under exceptional circumstances, the Commission might not be able to process the request within the statutory time period. (See Exhibit 12). Antonelli submitted an appeal dated March 10, 2007, complaining about an unreasonable delay in processing his February 15 [sic] request. (See Exhibit 13). On March 11, 2007, Antonelli requested an expedited response to his FOIA request. (See Exhibit 14). He stated in this request that he would pay all fees incurred by the Commission in processing the request. (Id.).

11. On March 13, 2007, Cecil C. McCall requested copies of all Commission records on Antonelli and included a Privacy Act waiver from the prisoner (FOIA No. 07-181). (See Exhibit 15). FOIA Technician Tarnisha Jackson acknowledged receipt of the March 13 request on March 21, 2007 and responded that because the Commission was acting under exceptional circumstances, the Commission might not be able to process the request within the statutory time period. (See Exhibit 16). On March 27, 2007 I responded to Mr. McCall's March 13 request by stating that the requester would have to agree to payment of a fee before the request would be processed. (See Exhibit 17). Antonelli then sent a letter dated March 29, 2007 in which he agreed to pay a fee exceeding $25.00 for processing his FOIA request. (See Exhibit 18).

12. I responded on April 23, 2007 to Antonelli's February 17 request in FOIA No. 07-143, stating that Antonelli would have to pay a deposit of $250.00 for processing of his request. (See Exhibit 19). The Commission's FOIA section received his $250.00 deposit on May 9, 2007. (See Exhibit 20). Antonelli asked that the response to his FOIA request be expedited. (Id.). By a letter dated May 16, 2007, I acknowledged receipt of the deposit and informed Antonelli that his request for an expedited response was denied. (See Exhibit 21).

13. On July 13, 2007, Antonelli submitted a FOIA request for records connected to his revocation hearing dated May 21, 2007 and a notice of action dated June 12, 2007 (FOIA No. 07-467). (See Exhibit 22). This request was received by the FOIA section on July 19, 2007. (Id.). He again asked for an expedited response. (Id.). Mr. McCall made an "updated" FOIA request on July 19, 2007, with a Privacy Act waiver from Antonelli (FOIA No. 07-483). (See Exhibit 23). I acknowledged receipt of Antonelli's July 13 request on July 19, 2007 and responded that because the Commission was acting under exceptional circumstances, the Commission might not be able to process the request within the statutory time period. (See Exhibit 24). On July 25, 2007, I acknowledged Mr. McCall's July 19 request and stated that the requester would have to agree to pay a fee for processing before the Commission would act on the request. (See Exhibit 25). On August 6, 2007, I received a note from Mr. McCall that he wanted only copies of the materials from Antonelli's last revocation hearing. (See Exhibit 26). I responded on the same day, informing Mr. McCall that the Commission had received duplicate requests for the same records and that the Commission would send the materials to Antonelli unless otherwise notified by the prisoner. (See Exhibit 27). In a letter dated August 16, 2007, Antonelli notified me that he wanted the response to the request for records regarding the last revocation hearing (FOIA No. 07-467) to be sent to Mr. McCall. (See Exhibit 28).

14. On October 9, 2007, I advised Antonelli in a letter that his request for copies of all records (FOIA No. 07-143) had been processed and that Department of Justice rules required

payment of all applicable fees before the copies could be released.  (See Exhibit 29).  I informed

him that the total number of pages in the response was 2,703 pages, that his $250.00 check had

been deposited and that he owed $10.30 for the balance of the processing fee.  (Id.).  On October

30, 2007, Antonelli responded that he had "caused the $10.30 to be sent to the Commission off

my books" and asked why the Commission had not responded to Mr. McCall's request for

records from the last revocation hearing.  (See Exhibit 30).

    15.  On November 5, 2007, I responded to the request in FOIA No. 07-467 for records

on the last revocation hearing by sending copies of all documents pertaining to the May 21, 2007

revocation hearing (18 pages) to Mr. McCall.  (See Exhibit 31).  No records were withheld from

disclosure and I did not exempt any material from disclosure.  However, I did not include a copy

of the hearing tape to the request due to an oversight.  In my response I advised Mr. McCall that

he had 30 days from the date of receipt of the response to appeal to the Commission's Chairman.

(Id.).

    16.  On November 29, 2007 I called Antonelli's case manager at FCI Manchester to have

her check the prisoner's accounting records so I could determine if a payment had been made for

the balance of the processing fee.  (See Exhibit 32).  The case manager informed me that

Antonelli had not made the payment and then telefaxed to me a copy of the prisoner's

withdrawals for the last four months.  (Id.).  The telefaxed document did show that a withdrawal

of $10.30 had been made for "bills" on November 1, 2007, but this entry was missed in the

review by myself and my supervisor.

    17.  On November 30, 2007, I attempted to make a copy of the hearing tape for

Antonelli's May 21, 2007 revocation hearing.  I discovered at that time the tape only contained

the  hearing examiner's statement of Antonelli's name at the beginning of the tape, and no

recording of the hearing with Antonelli.  On the same date I sent a letter to Antonelli informing

him that he still owed $10.30 for the remainder of the processing fee.  (See Exhibit 33).

Antonelli replied on December 5, 2007 that the $10.30 had been forwarded. (See Exhibit 34). On December 12, 2007 I checked with Antonelli's case manager and confirmed that the $10.30 payment had been sent to the Parole Commission. (See Exhibit 35). On that same date I received via telefax a copy of an "inmate withdrawal details report" that showed the November 1, 2007 payment had been issued to the U.S. Treasury and the Parole Commission. (See Exhibit 36). Finally, on December 12, 2007 I was informed by electronic mail that a trace on the check showed that it had been returned to the Austin Financial Center and that the withdrawal would be returned to the inmate's account. (See Exhibit 37).

18. The Commission has not received an appeal from Antonelli or Mr. McCall regarding the response of November 5, 2007 in FOIA 07-467.

19. On December 20, 2007, after examining all available parole files on Antonelli, I forwarded to Antonelli a response to his February 17, 2007 request in FOIA No. 07-143, including 2,712 pages of documents for his review. (See Exhibit 38). I informed Antonelli that he had 30 days from the date of the response to appeal to the Commission's Chairman. I released the records to Antonelli even though his payment of $260.30 did not entirely cover the number of pages I released (2,712 vs. the original number of 2,703). Moreover, I did not charge Antonelli for the 804 pages of records I copied and referred to other agencies that had originated the documents found in the Commission's file on Antonelli. I made referrals to the following agencies for a reply to Antonelli: Executive Office of the United States Attorneys; Federal Bureau of Investigation; Federal Bureau of Prisons; U.S. Marshals Service; Department of Justice, Office of Information and Privacy; and the Court Services and Offender Supervision Agency of the District of Columbia (CSOSA).

20. Antonelli appealed the December 20, 2007 response (in FOIA No. 07-143) to the Chairman by a letter dated December 26, 2007 and received by the FOIA unit on January 7, 2008. (See Exhibit 39).

21.  The Commission subsequently received a check dated January 2, 2008 from
Antonelli's attorney in the amount of $10.30.  (See Exhibit 40).

22.  Chairman Reilly responded to the appeal in FOIA No. 07-143 on February 8, 2008.
(See Exhibit 41).  The Chairman provided Antonelli with a copy of a letter dated March 1, 1979
that had been withheld from disclosure.  He also gave Antonelli two pages appended to a fax
cover sheet dated February 3, 1997, but withheld telephone and fax numbers on the fax cover
sheet (see below).  He disclosed information that had been withheld from a Burbank, Illinois
Police Department report dated October 18, 2001 (i.e., available times for reaching the
complainant and entries regarding the sex/race of witnesses), but affirmed the withholding of
other personal information in the report (see below).  The Chairman also stated he was providing
Antonelli with 71 pages of documents previously referred to CSOSA.  (I have since determined
that there were 68 pages of documents disclosed to Antonelli, the same number that I had
previously referred to CSOSA.  The reference to 71 pages was a mistake.)  The Chairman also
advised Antonelli that the Commission was seeking his hearing tapes for duplication and that the
tape disclosure would be the subject of a supplemental response.  The December 20 response
was otherwise affirmed.

23.  After considering Antonelli's appeal, the Commission has continued to withhold
portions of the following documents from disclosure to Antonelli:

(a)  Certification of Identity from James Jeffrey Valona dated May 3, 1999 (1 page).  The
withheld information is Mr. Valona's current address, zip code, and social security
number.  The information is exempt from disclosure under 5 U.S.C. §552(b)(6)
(disclosure would constitute a clearly unwarranted invasion of personal privacy) and
(b)(7)(C) (disclosure could reasonably be expected to constitute an unwarranted invasion
of personal privacy).  Though Antonelli provided this certification to the Commission,
Mr. Valona has a substantial privacy interest in not having this personal information

disclosed again, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(b)  Evergreen Park Police Report dated September 28, 1996 (3 pages).  The withheld information are the address and phone numbers for Kevin P. Ballard, the address and phone number for Otto Fowle, the address, date of birth, driver's license number, and phone number for Warren Young, and the date of birth and phone number for Michael W. Moiej.  The information is being withheld under 5 U.S.C. §552(b)(6) and (b)(7)(C).  These four persons each have a substantial privacy interest in not having their personal information disclosed and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(c)  Facsimile cover sheet dated February 3, 1997 (1 page).  The Commission is withholding the telephone and fax numbers of the Parole Commission and the U.S. Marshal's Office in the Northern District of Illinois and the business phone numbers of two state law enforcement officials, a Sergeant Grider and State's Attorney Annette Collins.  The numbers are withheld under 5 U.S.C. §§552(b)(2) (information related solely to the internal personnel and practices of an agency),  552(b)(6) and (b)(7)(C).  Disclosure of the numbers may lead to harassment of law enforcement personnel and a violation of their privacy interest.  Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(d)  Palos Heights Police Department Report dated July 27, 1994 (1 page).  The Commission withheld the full address and phone number of the victim of the offense described in the report,  Philip Bock, pursuant to 5 U.S.C. §552(b)(6) and (b)(7)(C).

Mr. Bock has a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(e) Letter from U.S. Probation Officer Phyllis Blanton dated December 16, 1996 (3 pages). The Commission is withholding the address of Kevin Ballard, a person named in the narrative of an incident in Evergreen Park, IL in December 1996. The information is being withheld under 5 U.S.C. §552(b)(6) and (b)(7)(C). Mr. Ballard has a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(f) Letter dated June 17, 1998 from Sheila Sporl, with an attachment (a subpoena for Kevin Ballard) (2 pages total). The Commission is withholding the address of Kevin Ballard, a person named in the narrative of an incident in Evergreen Park, IL in December 1996. The information is being withheld under 5 U.S.C. §552(b)(6) and (b)(7)(C). Mr. Ballard has a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(g) Chicago Police Arrest Report dated October 11, 1990 (2 pages). The Commission withheld the address and phone number of Andrea Mitchell, the complainant in the arrest report, and the address and phone number of Ellen Mitchell. The information is being withheld under 5 U.S.C. §552(b)(6) and (b)(7)(C). Both persons have a substantial privacy interest in not having this personal information disclosed, and

Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(h) Certificate of Death for James R. Hall filed October 20, 1989 (1 page). The Commission is withholding the social security number, date of birth, name of surviving spouse, street address, means of injury and cause of death for Mr. Hall, and the name and address of the person listed as the "informant" in that document. The information is being withheld under 5 U.S.C. §552(b)(6) and (b)(7)(C). Mr. Hall's family has a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(i) Authorization for Release of Records dated January 26, 2004 (1 page). Pursuant to 5 U.S.C. §552(b)(6) and (b)(7)(C), the Commission is withholding the home address of Nancy Antonelli, Michael Antonelli's ex-wife and the victim of a misdemeanor assault offense committed by Michael Antonelli in 1996. Though Michael Antonelli submitted this authorization form to the Commission, Nancy Antonelli has a substantial privacy interest in not having this personal information disclosed again, and the plaintiff has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(j) Burbank, Illinois Police Department Report dated October 18, 2001 (1 page). The Commission is withholding the address, date of birth, age, and phone numbers for a Ms. Zawistowska. The Commission is also withholding the addresses, dates of birth, and phone numbers for witnesses Harrison, Connolly, DeBenedictis, and Solis. The information is being withheld pursuant to 5 U.S.C. §552(b)(6) and (b)(7)(C). These persons have a substantial privacy interest in not having this personal information

disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(k)  Parole Commission memo pad sheet (1 page, handwritten, and undated) containing information on adverse witnesses for a revocation hearing. The Commission is withholding the address of Andrea Mitchell under 5 U.S.C. §552(b)(6) and (b)(7)(C). Ms. Mitchell has a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

(l)  Revocation Hearing Summary dated October 14, 1987 (10 pages). The Commission is withholding the addresses of two witnesses – Lou Powers and Roberta Cory – who testified for Antonelli at his hearing. The information is withheld pursuant to 5 U.S.C. §552(b)(6) and (b)(7)(C). These persons have a substantial privacy interest in not having this personal information disclosed, and Antonelli has not identified a reason why disclosure of the information would serve the purpose of the FOIA, i.e., shedding light on the operations of government.

24.  On January 17, 2008, I telefaxed a request to the Washington Records Center for the following tape recordings of hearings held for Antonelli: tape NC 60013 (October 1987); tape NC 67715 (November 1989); tape NC 73292 (December 1991); tape 91312 (December 1994); and tape 75072 (May 1997, hearing date erroneously identified as June 1996). I received the following responses from the Washington Records Center: tape NC 60013 (missing); tape NC 67715 (charged out on January 5, 1995 to "Cage" [former FOIA Specialist Jean Cage from the now-closed Kansas City, Missouri regional office]; and tape 75072 (missing). (See Exhibits 42-44). My request for tape NC 73292 was not answered. Tape 91312 was retrieved and copied.

25. On January 30, 2008, I sent letters to the agencies to whom I referred records regarding the December 20 response in FOIA No. 07-143, asking for an expected response date to the referral and for a copy of the agency's response to Antonelli. (See Exhibits 45-50). I received information from three agencies: CSOSA, the Justice Department's Office of Information and Privacy, and the U.S. Marshals Service. CSOSA returned the referred documents to the Commission and these documents were disclosed by the Chairman in his February 8, 2008 answer to Antonelli's appeal. The Office of Information and Privacy responded to Antonelli on February 7, 2008 by giving him one of the two pages referred to that office and determining that the other page was not a record identifiable to Antonelli. (See Exhibit 51). On February 25, 2008, the Marshals Service sent me a copy of a response to Antonelli dated February 4, 2008. (See Exhibit 52). In this response, the Marshals Service stated that two documents were referred to the Bureau of Prisons and that 21 documents were disclosed with the following information excised pursuant to exemption 7(C): names and information concerning government employees, and the names of third-party individuals. On February 25, 2008, I was advised by the Executive Office of the U.S. Attorneys that they were still working on the referred documents. (See Exhibit 53). I left a voice mail message with the Federal Bureau of Investigation about my inquiry. (Id.) On February 26, 2008, I was informed by the Bureau of Prisons that the referred documents had been assigned for processing and that the staff member assigned to the case had 40 requests to handle before working on Antonelli's documents. (See Exhibit 54).

26. On February 28, 2008, I conducted a search for records regarding the transfer of hearing tapes to the Washington Records Center. The disposal schedule for hearing tapes provides that the tapes are moved from the Commission to the Washington Records Center one year after the date of the hearing and destroyed ten years after the date of the hearing. I examined a binder of records transmittal sheets looking for tape recordings of hearings held for

Antonelli. As a result of my search, I did not find records for the following tapes: tape NC 26162 (February 1981); tape NC 42588 (February 1983); tape 48734 (November 1984); and tape 78532 (September 1998). I found a record of transmittal for tape 88677 (September 1993) and ordered that tape from the Washington Records Center. (See Exhibit 55).

27. With regard to the referral of 2 pages of documents to the EOUSA, I have since determined that this referral was unnecessary. The document in question is a memorandum dated July 9, 1998 from Assistant U.S. Attorney Gillum Ferguson and directed to a U.S. probation officer. The document outlines the government's version of the offense for use in the presentence report in United States v. Antonelli, No. 97 CR 194. The document is an attachment to Antonelli's presentence report in that case. Because the document is an attachment to the presentence report and the requester is a BOP inmate, access to the document is governed by the BOP policy on inmate access to presentence reports.

28. On March 18, 2008 I received a copy of the March 11, 2008 response made by the FBI regarding my referral. (See Exhibit 56). The FBI stated that it had reviewed 180 pages and was releasing 97 pages with deletions made under exemptions (b)(6), (b)(7)(C), (b)(7)(D) and 5 U.S.C. §552a (j)(2). The FBI also referred 76 pages of materials back to the Commission for review and possible disclosure. (See Exhibit 57). The FBI recommended the application of several FOIA exemptions to passages in the 76 pages; however, no information was deleted from the pages referred back to the Commission. I reviewed the 76 pages and determined that these pages are records I already referred to the BOP as BOP-originated records or as documents retained in Antonelli's inmate file. Included in the 76 pages, are 52 pages from the presentence report in United States v. Antonelli, No. 01 CR 867-1 (N.D.Ill.) (there is some duplication in the pages from the report) and a 3-page memorandum from Assistant U.S. Attorney Madeleine S. Murphy dated March 14, 2002. The Murphy memorandum is an attachment to the presentence report and describes the government's official version of the offense. Access to the presentence

report, the attached memorandum, and the other BOP-originated documents will be determined by the BOP. Of the 76 pages, I decided that Antonelli should receive one page as a Commission-originated document, a copy of an e-mail message dated December 19, 2006 from Commission Case Analyst Lynne Jenkins. By a supplemental response dated March 28, 2008, I provided a copy of this record to Antonelli after deleting Ms. Jenkins's office phone numbers pursuant to 5 U.S.C. §552(b)(6) and (7)(C) . (See Exhibit 58).

29. On March 27, 2008, the Commission received a copy of a response dated March 3, 2008 regarding my referral to the BOP. The BOP determined that of the 529 pages referred, 320 pages were releasable in their entirety, and that the other 209 pages were copies of presentence reports that could be reviewed at Antonelli's institution. (See Exhibit 59). The BOP stated that Antonelli must pay a fee of $22.00 before the 320 pages could be released to him.

30. Regarding disclosure of the hearing tape recordings that may still be available, I requested the following tapes from the Washington Records Center: tape 73292 (December 1991), tape 88677 (September 1993), tape NCRO 91312 (December 1994), and tape 75072 (May 1997). The Records Center sent me the tapes for the hearings in September 1993, December 1994, and May 1997. I sent copies of these tapes to Antonelli under the supplemental response of March 28, 2008 and a response dated April 3, 2008. (See Exhibits 58 and 60). I have not received the tape for the hearing in December 1991 and I have ended further efforts to obtain that tape.

31. With regard to the tapes of other hearings held for Antonelli, these tapes are not available for copying and disclosure. In some cases, records of the transfer of the tapes to the Washington Records Center could not be found. In others, the Center reported that the tapes were missing or sent to a Commission office that is now closed. In May 2008 I listened again to the tape of the hearing dated May 21, 2007 and I did not hear a recording of any voice. When I previously listened to this tape in November 2007, I had heard the hearing examiner's statement

of Antonelli's name, and nothing more.  See ¶17, above.  I did not intentionally erase the examiner's statement in my review of the tape, and I have no information that any Commission staff member intentionally erased this statement in their review of the tape.

32.  Antonelli submitted appeals dated April 8 and 18, 2008 regarding the disclosure of the Jenkins's e-mail and the disclosure of his hearing tapes.  (See Exhibits 61 and 62).  By a letter dated June 9, 2008, the Commission's Chairman responded to the appeal.  (See Exhibit 63).  The Chairman affirmed the withholding of Ms. Jenkins's office phone numbers, provided Antonelli with a copy of the now-blank recording dated May 21, 2007, and informed Antonelli that the Commission had satisfied the FOIA by its reasonable effort to locate all the hearing tapes in his case.  (Id).

33.  Antonelli has been provided with all records responsive to his FOIA requests.  Each document was individually reviewed for segregability of non-exempt information and it was determined that all reasonably segregable information has been released to Antonelli.  Information withheld by the Commission consists of information that, if released, would clearly be an unwarranted invasion of personal privacy, and is information related solely to the internal personnel and practices of an agency.

34.  Under penalty of perjury I declare that the above statements are true and that the exhibits attached to this declaration are true copies of documents found in Antonelli's parole file.

Signed and dated this 2nd day of July, 2008.

- 16 -

Chairman                                                      August 17, 2006
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland   20815

                       RE:  All records and tapes

Dear Sir:

        This is a request under the Freedom of Information Act.

        I request a copy of all records that your agency has or had
in its possession that are in any way connected to my name.   That
means all parole hearing tapes, confidential witness tapes, all
appeals and all National Appeals records, including all records
that you have already given to me beforehand, and any and all
records that I may have submitted or anyone submitted in connection
to my name, including court records and litigation records.   This
means all records that originate all the way back in time to the
initial incarceration of my person on September 15, 1978.

FULL NAME:  MICHAEL CARMIE ANTONELLI
DOB: December 4, 1946
POB: Chicago, Illinois   USA
SS No. 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

        I declare under the penalty of perjury that the above is my
biographical data, and that the signature below is my signature.

Executed this  17TH day of August, 2006.

                       By  _____
                            Michael Antonelli, Affiant

(28 USC Section 1746)


                            Sincerely,


                            Michael Antonelli 04053-164
                            USP Big Sandy; Box 2068
                            INEZ, KY  41224


cc : file


                                              Exhibit ____1____

c. 4/30/04

SEP 11 2006

FY06-0804

Chairman                                          August 24, 2006
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815



US PAROLE

AUG 2 8 2006

COMMISSION

                          RE:  Parole Revocation Packet
                                  and
                          Parole MINI FILE

Dear Sir:

        This is a request under the Freedom of Information Act in
conjunction with the Privacy Act.

        I request a copy of the PAROLE REVOCATION PACKET and/or the
PAROLE MINI FILE, in connection to the upcoming parole violator
warrant/hearing that I unequivocally will be subjected to in
January, 2007 upon execution of the pending parole violator
warrant lodged as a detainer against me.

        I request to know everything that is going to be used in
the determination to either violate my parole and to determine
how much time in custody I must serve.

        This includes the SALIENT FACTOR SCORE that will be used and
the corresponding guidelines range that will be used including
the severity of this new offense behavior.

        I also want to know exactly what prior convictions will
be used to determine my new outdate.

FULL NAME:  MICHAEL CARMIE ANTONELLI
DOB: December 4, 1946
POB : Chicago, Illinois USA
SS No. 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

        I declare under the penalty of perjury that the above data is
my biographical data and the signature below is my signature.

Executed this        day of August, 2006.

                          By        Michael Antonelli

                          MICHAEL C ANTONELLI, Affiant

(28 USC Section 1746)

                                    Sincerely,

                                    Michael Antonelli
                                    Michael Antonelli
                                    04053-164
                                    USP Big Sandy
cc: file                            Box 2068    **Exhibit** _____ 2
                                    INEZ, KY 41224



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

September 14, 2006

Mr. Michael C. Antonelli
Reg. No. 04053-164
USP Big Sandy
P.O. Box 2068
Inez, KY 41224

Dear Mr. Antonelli:

This office acknowledges the receipt of your letter dated August 17, 2006, which was received on August 30, 2006, requesting copies of records from the U.S. Parole Commission.

This office has a backlog of unfilled requests and limited personnel resources with which to process a large volume of FOIA requests. The National Capital Revitalization Act of 1997 has more than doubled the Commission's caseload as of August 5, 2000. However, Congress has continued the Commission's status as an abolished agency, and has not given the Commission the funding it expected to implement the Act in all respects. Moreover, since August 5, 2000, the Commission's FOIA caseload has significantly increased because of the unprecedented use of the FOIA, in District of Columbia Code cases, as a substitute for prehearing discovery at parole and parole revocation hearings, which is not required by the applicable parole laws and rules of the District of Columbia. The Commission has not previously experienced such an unusual volume of FOIA requests in its federal cases.

For the above reasons, the agency is now operating under exceptional circumstances as defined in 5 U.S.C. 552(a)(6)(C), and will exercise due diligence in responding to your request. Disclosure requests are processed in turn as soon as reasonably possible. We may be unable, however, to process your request within the statutory time requirement.

Exhibit ___3___

In accordance with applicable fee schedules, you will be required to reimburse the United States if billable search and reproduction costs exceed $14.00. The Commission will inform you if reimbursement is required and will determine any fee waiver request at that time. In the absence of a fee waiver, you must make payment before the copies of the records you requested will be sent to you.

Any material submitted by you or your representative to the Parole Commission will not be reproduced with our response, unless you specifically request the same. Additionally, your file may contain documents that originated with the Bureau of Prisons. We do not interpret your request to include these documents as you may already have obtained them from the Bureau. If you wish to have the Bureau of Prisons documents in your parole file processed, please advise the undersigned. The Commission will then refer these documents to the Bureau of Prisons for processing and a direct response to you.

We regret any delay but assure you that your request will be processed as soon as possible. You may wish to modify the scope of your request to limit your request to only a few documents which may result in priority processing. See 28 C.F.R. 2.56(a)(1).

Sincerely,

Tamisha Jackson
FOIA Technician

TNJ

Edward F. Reilly, Jr. Chairman    11/06/06

United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland 20815-7201

RE: FOIA Requests of 8/17/06 and
8/24/06

Dear Sir:

This is an Appeal under the FOIA/PA.

I sent you two (2) requests on above date.
~~You answered on 9/14/06 mentioning only 8/17/06~~
You are in violation of the Statutory Time
Limits in each case. I Appeal this Delay.

I further demand all material submitted by
me, my representative, or anyone, to be
reproduced and sent to me, and request
that you interpret my request to include
all Bureau of Prisons documents in my file
processed also.

I also ask you to order my appeal and
requests to be expedited because I need
all these records for the upcoming Parole
Revocation hearing after 1/27/06 because
you refuse to lift the detainer lodged.

*Michael Antonelli*

**Exhibit    4**

Michael Antonelli 04053-16
USP Big Sandy; Box 2068
1197 Airport Road
Inez, KY 41224

This letter was
responded to on
Nov. 16, 2006.
cc: file

F9

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_5550 Friendship Boulevard_
_Chevy Chase, Maryland 20815-7201_
_Telephone: (301)492-5821_
_Facsimile: (301)492-5525_

November 16, 2006

Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

Dear Mr. Antonelli:

This is in response to your request of August 24, 2006, which was received on August 28, 2006. Specifically, you request a copy of the parole revocation packet and any pre-hearing assessment that contains a tentative calculation of your parole guidelines and salient factor score.

Please be advised that the parole packet will be sent to your institution prior to your hearing. There is no need to submit a Freedom of Information Act request. Further, a pre-hearing assessment has not yet been prepared in your case.

Sincerely,

Bartholomew D. Allen
FOIA Specialist

Exhibit ___5___



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

December 5, 2006

Mr. Michael C. Antonelli
Reg. No. 04053-164
USP Big Sandy
P.O. Box 2068
Inez, KY 41224

Re: Your Disclosure Request

Dear Mr. Antonelli:

This is in response to your request of August 17, 2006 received on August 30, 2006 for copies of documents from your parole file. The terms of your request cover:

All documents contained in the Commission's file since the Commission's last disclosure of May 6, 2002.

The Commission is disclosing all of the documents you requested which are in your active file as of the date of this response, except those documents or portions of documents listed below.

Because of safety and security reasons, Bureau of Prisons policy prohibits inmates from obtaining or possessing copies of pre-sentence reports or any document that states reasons for a sentencing decision. Therefore, this disclosure does not include such documents. You may obtain access to these documents through your institutional unit staff.

Because the Parole Commission is exempt from the access provisions of the Privacy Act, this disclosure is made under the Freedom of Information Act (FOIA).

**Any copies of documents provided in previous FOIA responses are not included in this response.**

Under the FOIA, a document or portion thereof, may be withheld if protected by any of the FOIA exemptions. These exemptions can be found at 5 U.S.C. Section 552(b)(1)-(9).

Portions of the following documents have been withheld on the basis of the FOIA exemptions cited below:

1. Burbank Police Department dated October 30, 2001 (2 pages) – excised victim/witness info
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

**Exhibit ___6___**

There are documents in your file that are duplicates of documents that originated with the Bureau of Prisons (BOP). These documents are available through your case manager. We have not interpreted your request to include these documents as you may already have obtained them from the BOP. Please advise the undersigned if you wish the Parole Commission to process these documents. Under departmental regulations, the Commission will then refer these documents to the BOP for processing and a direct response to you.

If you are dissatisfied with my action on this request, you have thirty (30) days from the receipt of this letter to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

Anissa N. Hunter
FOIA Specialist

Enclosures - 122 pages

ANH

# BURBANK POLICE DEPARTMENT

Page

| 1. OFFENSE OR INCIDENT | 2. ADDRESS OF OCCURRENCE | APT. NO. | BURBANK, IL 60459 | 3. BEAT OF OCCU. |
|---|---|---|---|---|
| Armed Robbery | 5440 W 87th St | | | 4 |

4. TYPE OF LOCATION OR PREMISES WHERE OFFENSE OCCURRED (Give Name of Location if Applicable)
First Star Bank

5. BEAT OR UNIT ASS. 814

| 6. DATE OCC. (Day/Mo/Yr) | 7. TIME OCC. | 8. DATE/TIME REPORTED | 9. TYPE ☐ ARREST ☐ JUVENILE ☐ RECLA |
| 12 Oct 01 | 1800 | 12 Oct 01 1801 | ☑ INITIAL REPORT ☐ SUPPLEMENT |

**COMP.**

| 10. COMP. NAME | VICTIM☐ | SEX F | RACE ☐ BLACK ☐ AMER. INDIAN/ALASK NAT | ☐ BLACK-HISPANIC ☐ ASIAN/PACIF ISL | ☑ WHITE ☐ UNK | ☐ WHITE-HISPANIC | DATE OF BIRTH |
| ZAWISTOWSKA EWA | | | | | | | |

| HOME PHONE | TIME AVAIL. | 12. EMPLOYER | BUSINESS PHONE | TIME. |
| | EVEN | First Star Bank | | |

**DNA**

| 13. Victim's Name (Firm Name if Business) | SEX | RACE ☐ BLACK ☐ AMER. INDIAN/ALASK NAT | ☐ BLACK-HISPANIC ☐ ASIAN/PACIF ISL | ☐ WHITE ☐ UNK | ☐ WHITE-HISPANIC | DATE OF BIRTH |
| First Star Bank | D/N/A | | | | | |

| 14. ADDRESS - APT. NO. | HOME PHONE | TIME AVAIL. | 15. EMPLOYER | BUSINESS PHONE | TIME. |
| 5440 W 87th St | | N/A | | | |

| 16. PARENT/GUARDIAN, IF JUV. ☐ CONTACT ☐ DNA | SEX | AGE | HOME ADDRESS | APT. NO. | HOME PHONE | BUSINESS PHO |

**VICTIM #**

17. TYPE OF VICTIM (Check Only One)
F ☑ FINANCIAL INSTITUTION  R ☐ RELIGIOUS  S ☐ SOCIETY/PUBLIC
B ☐ BUSINESS  I ☐ INDIVIDUAL  O ☐ OTHER
G ☐ GOVERNMENT  P ☐ POLICE OFFICER  U ☐ UNKNOWN

18. FOR BURGLARY OR HOME INVASION
NUMBER OF PREMISES ENTERED ___
FORCED ENTRY  ☐ YES  ☐ NO

19. BIAS CODE
☐ RACIAL  ☐ ETHNIC
☐ RELIGIOUS  ☐ SEXUAL
☐ OTHER  ☐ NONE

20. RESIDENT
Y ☐ YES
N ☐ NO
U ☐ UNKN

21. CIRCUMSTANCES (Crimes Against Persons. Check Up To Three)
☐ ARGUMENT  ☐ LOVERS QUARREL
☐ ASSAULT ON LAW OFFICER  ☐ MERCY KILLING
☐ DRUG DEALING  ☐ OTHER FELONY INVOLVED
☐ GANGLAND  ☐ OTHER CIRCUMSTANCES
☐ JUVENILE GANG

22. INJURY TYPE (Check Up To Three)
☐ KILLED  ☐ SHOT
☑ NONE  ☐ MINOR INJURY
☐ BROKEN BONES  ☐ OTHER MAJOR INJURY
☐ POSS INT INJURIES  ☐ LOSS OF TOOTH
☐ SEVERE LACERATION  ☐ UNCONSCIOUS

23. VICTIM CONNECTED TO OFFENSE NUMBER
A. ☐
B. ☐
C. ☐

24. EMPLOYMENT
Y ☐ EMPLOYED
N ☐ UNEMPL
S ☐ STUDENT
M ☐ MILITARY
U ☐ UNKNOW

25. RELATIONSHIP OF VICTIM TO OFFENDER (For Multiple Relationships Enter Offender Number(s) In Space)
SE SPOUSE  GP GRANDPARENT  SS STEPSIBLING  BE BABYSITTEE (BABY)  EE EMPLOYEE
CS COMMON-LAW SPOUSE  GS GRANDCHILD  OF OTHER FAMILY  BG BOYFRIEND/GIRLFRIEND  ER EMPLOYER
PA PARENT  IL IN-LAW  AQ ACQUAINTANCE  CF CHILD OF BOYFRIEND/GIRLFRIEND  OK OTHERWISE KNOWN
SB SIBLING  SP STEPPARENT  FR FRIEND  HR HOMOSEXUAL RELATIONSHIP  ST STRANGER
CH CHILD  SC STEPCHILD  NE NEIGHBOR  XS EX-SPOUSE  RU RELATIONSHIP UN

26. D.O.A. ☐   INJURY TREATED AT SCENE ☐   TAKEN TO HOSPITAL/TREATMENT ☐   REFUSED TREATMENT ☐

27. TYPE OF WEAPON/FORCE INVOLVED (Check Up To Three)
01 ☐ UNARMED  17 ☐ CLUB/BLACKJACK  40 ☐ PERSONAL WEAPON
11 ☐ FIREARM  18 ☐ HAND TOOL  60 ☐ EXPLOSIVES
12 ☐ HANDGUN  30 ☐ BLUNT OBJECT  65 ☐ FIRE/INCENDIARY
16 ☐ KNIFE  35 ☐ MOTOR VEHICLE  ☐ OTHER

28. OFFENDER(S) SUSPECTED OF USING
A ☐ ALCOHOL
D ☐ DRUGS
C ☐ COMPUTER EQUIPMENT
N ☑ NOT APPLICABLE

CHECK ALL THAT APPLY

29. COMPLAINT SIGNED
☐ YES  ☐ NO
30. CAN IDENTIFY OFF.
☐ YES  ☐ NO

31. ISPERN MESSAGE ☐
☐ YES

ISPERN #

**TYPE 32.**

| 33. NAME (Last, First, Middle) | 34. ADDRESS (Street, City, State, Zip) | 35. SEX/RACE | 36. DOB | 37. HOME TX | 38. WORK T |
| #1) HARRISON KRISTIN L | | | | | |
| W #2) CONNOLLY RITA A | | | | | |
| W #3) DEBENEDICTIS JOSEPH | | | | | |
| W #4) SOLIS OFELIA | | | | | |

TYPES: WITNESS = W   VEHICLE OCCUPANT = O   POLICE OFFICER = P   OTHER (Named in Narrative) = N

39. GANG V ☐   A ☐   TYPE HATE ☐   STREET ☐   MOTORCYCLE ☐   OTHER ☐   LINK ☐   NAME:

**PROPERTY**

| | 40. TYPE PROPERTY LOSS/ETC. | 41. CODE | 42. QUANTITY | 43. PROPERTY DESCRIPTION (Include Make, Model, Size, Type, Serial #, Plate # and Expiration Date, Etc.) | INV. # | 44. DOLLAR VALUE | 45. RECOV |
|---|---|---|---|---|---|---|---|
| | 0 LOST | 1 | 7 | various U.S.C. | — | approx $740.00 | |
| | 1 HOME | 2 | | | | | |
| | 2 BURNED | | | | | | |
| | 3 COUNTERFEITED/FORGED | 3 | | | | | |
| | 4 DAMAGED/DESTROYED | | | | | | |
| | 5 RECOVERED | 4 | | | | | |
| | 6 SEIZED | | | | | | |
| | 7 STOLEN | 5 | | | | | |
| | 8 UNKNOWN | | | | | | |
| | 9 RECOVERED OTHER AGENCY | 6 | | | | | |
| | 10 OTHER | | | | | | |
| | 11 TOW | 7 | | | | | |
| | 12 CITIZEN TURN IN | | PROPERTY RETAINED BY VICTIM/COMPLAINANT: YES ☐  NO ☐ | LINE(S) #: | | | |

46. PROPERTY COVERED BY INS.  YES ☐  NO ☑   47. INS. COMPANY   TX   48. POLICY NO.   49. MESS

ITEM(S):

**VEHICLE**

50. ☐ VICTIM  ☐ OFF/ARR  ☐ OTHER  ☐ DNA

| 51. VEHICLE TYPE | 52. MAKE & MODEL | 53. VEHICLE YEAR | 54. VEHICLE COLOR (Top/Bottom) | 55. INSURANCE COMPANY |
| 4DR PASS | CHEVY CAPRICE | 1989 | WHT | |
| | | | | POLICY # |

| 56. VEHICLE REGISTRATION/STATE | 57. EXPIRATION | 58. VEHICLE IDENTIFICATION NUMBER (V.I.N.) | 59. LIEN HOLDER |
| W402686 (ILLILES) | 12-29-01 | 1G1BL5173KA0283 | |

| 60. LOCATION OF RECOVERY | 61. EVIDENCE OF STRIPPING (Check One Or More) ☐ NONE ☐ OTHER (Specify) ☐ ONE TIRE ☐ TWO TIRES ☐ MORE TIRES |
| IF RECOVERED VEHICLE | ☐ RADIO ☐ ENGINE ☐ TRANS. ☐ ENGINE ACCESSORIES ☐ IGN./STEERING COLUMN DAMAGE ☐ BATTERY |

| 62. FOREIGN STEAL NO. | 63. DISPOSITION ☐ RETURNED TO OWNER ☐ TOWED | 64. VEH. INVENTORY NO. | 65. TIME EVID. TECH. NOTIFIED |

| 66. NUMBER OF OFFENDERS THIS INCIDENT | 67. NUMBER OF ARRESTEES: | 68. TOTAL ARREST CHARGED | | ORDINANCE/ TRAFFIC |
|---|---|---|---|---|
| A | | | FELONY ☐ | MISD. ☐ |

DNA ☐

A ☐
O ☐
☒

| 70. ARRESTEE / OFFENDER (Last, First, Middle) | UNK ☐ | 71. ADDRESS (Street, City, State, Zip) | 72. HOME TX: | WORK TX: |
|---|---|---|---|---|
| ANTONELLI RICHARD LEE | | 13011 GRANT RD  LEMONT 60437 | | NONE |

| 73. DOB | 74. AGE | 75. SEX | 76. RACE | 77. HEIGHT | 78. WEIGHT | 79. HAIR | 80. EYES | 81. SKIN | 82. SCARS, DEFORMITIES, |
|---|---|---|---|---|---|---|---|---|---|
| 29 MAR 48 | 53 | ☒ MALE  ☐ FEMALE | W ☐ WHITE  I ☐ INDIAN  B ☐ BLACK  A ☐ ASIAN  H ☐ HISPANIC  U ☐ UNKNOWN | 508 | 180 | BRO | BRO | MED | |

| 83. AB# IF ARRESTED | 84. EMPLOYER/ADDRESS (Street, City, State, Zip) | 85. OCCUPATION | 86. BUILD | 87. HOW DRESSED |
|---|---|---|---|---|
| 01-1035 | CAL-SAG JUNK YARD  13011 GRANT RD  LEMONT | LABORER | LG | BLK JACKET  BLK SHIRT  BLU PANTS  BLK HAT |

| 88. ARRESTEE / OFFENDER ARMED WITH | 89. TYPE OF ARREST | 90. DRIVERS LIC. NUMBER | 91. STATE |
|---|---|---|---|
| 01 ☒ UNARMED  15 ☐ OTHER FIREARM  12 ☐ HANDGUN  16 ☐ KNIFE, SWITCHBLADE, ETC.  13 ☐ RIFLE  17 ☐ CLUB, BLACKJACK  14 ☐ SHOTGUN  18 ☐ OTHER | O ☒ ON VIEW  S ☐ SUMMONED/CITED (NO CUSTODY)  T ☐ TAKEN INTO CUSTODY (OUR WARRANT)  W ☐ WARRANT (OTHER AGENCY) | A535 7521-5091  92. SOCIAL-SECURITY NUMBER  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 | IL  93. PLACE OF BIRTH  IL  UNK ☐ |

**TO BE COMPLETED IF JUVENILE**

| 94. PARENT CONTACTED  YES ☐  NO ☐ | 95. NAME OF PARENTS/GUARDIAN | 96. ADDRESS (Street, City, State, Zip) Telephone # | 97. OCCUPATION |
|---|---|---|---|
| 98. STATUS  ☐ RELEASED TO PARENT  ☐ YOUTH OFF. CALLED  ☐ OTHER | 99. LAST SCHOOL ATTENDED | 100. GRADE | 101. ADULTS ARRESTED  YES ☐  NO ☐ |

102. NARRATIVE: UPON ARRIVAL I/O SPOKE TO THE TELLERS AND WITNESSES WHO ADVISED THAT ON THE ABOVE DATE AND TIME THE ABOVE OFFENDER ENTERED THE BANK AND STOOD AT THE LOBBY PAYPHONE A FEW MOMENTS. THE OFFENDER THEN CAME TO MS ZBWISTOWSKI WINDOW AND HANDED HER A NOTE. THE NOTE READ "GIVE ME WHAT IS IN THE TILL, NO RED DIE, NO PROBLEMS, THANKS RIGOR MORTIS." THE OFFENDER STOOD WITH HIS RIGHT HAND INSIDE HIS UNZIPPED JACKET. THE TELLER AT THIS TIME OPENED HER CASH DRAWER AND PLACED APPROX 2000 DOLLARS IN VARIOUS CASH DENOMINATIONS ONTO THE COUNTER. THE OFFENDER PICKED UP THE CASH AND PLACED IT INTO HIS JACKET POCKET. THE OFFENDER THEN RAN OUT THE BANK. EMERGENCY 911 WAS CONTACTED AND THE POLICE WERE ADVISED OF THE ROBBERY. AT THE SAME TIME THE WITNESS MR DEBENEDICTIS FOLLOWED THE OFFENDER S/B ACROSS 57TH ST TO THE BACKYARD AREA OF 5407 W 57TH ST. THE WITNESS WAS ABLE TO GRAB HOLD OF THE OFFENDERS JACKET AND PULL IT OFF. THE OFFENDER BROKE FREE AND RAN W/B BEHIND THE RESIDENCES UNTIL HE REACHED 55TH AVE. THE OFFENDER AT THIS TIME ENTERED A VEHICLE (80 OLD) DRIVE APPROX FOUR BLOCKS SOUTH INTO THE DRIVEWAY OF 5505 W ALEXANDER. THE OFFENDER THEN FLED FROM THE AUTO ON FOOT AND WAS LOCATED BY OFFICERS MILLER KNEPPER #287, RIZZUTO #289 OF THE OAKLAWN P.D. HIDING IN THE YARD AT 5421 W ALEXANDER INSIDE A GARBAGE CAN. THE WITNESSES/TELLERS MS ZBWISTO

| 102A. CHARGES: | | 102B. APPROVAL #: | 102C. DENIAL #: | 102D. AKA: |
|---|---|---|---|---|

| FELONY REVIEW: ☐ YES  ☐ NO  ☐ DNA | | |
|---|---|---|

| ARRESTEE DISPOSITION: | COURT INFORMATION: | 103. INCIDENT STATUS | CLEARED EXCEPTIONALLY |
|---|---|---|---|
| ☐ IN CUSTODY, AWAITING BOND  ☐ RELEASED ON BOND #  ☐ HELD FOR BOND HEARING | LOCATION: ☐ 5TH DISTRICT COURT  ☐ OTHER  ROOM #:  DATE/TIME: | 00 ☐ UNFOUNDED  01 ☒ REFER TO OTHER JURISDICTION  02 ☐ PENDING  03 ☐ CLEARED BY ARREST  04 ☐ CLEARED BY JUVENILE  STATUS DATE 12 OCT 01 | 05 ☐ DEATH OF OFFENDER  06 ☐ DENIED EXTRADITION  07 ☐ REFUSED TO COOPERAT  08 ☐ PROSECUTION DECLINE  09 ☐ ADMINISTRATIVELY CLO  10 ☐ JUVENILE NO CUSTODY |

| T.O.T. DEPT. ___ OFFICER: ___ | 104. DAY OF WEEK | 105. TIME ARRIVED | 106. TIME COMPLETED | 107. MAN HOUR |
|---|---|---|---|---|
| I do solemnly, sincerely and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge. | FRI | 1801 | 2130 | 3½ |

| 108. REPORTING OFFICER/PRINT NAME | STAR | 109. ASSISTING OFFICER/PRINT NAME | STAR | 110. SUPERVISOR APPROVAL/DEPUTY CLERK |
|---|---|---|---|---|
| GAFFNEY D J | 126 | | | SGT J. O'Succein |
| 111. REPORTING OFFICER SIGNATURE | | 112. DATE REVIEWED/TIME  12 OCT 01 / 2 hrs | INITIALS  SOS20 | 113. DET/YOUTH NOTIFIED  YES ☐  NO ☐ | 114. COPY FRWD.  YES ☐  NO ☐ |

SUPPLEMENTARY / CONTINUATION REPORT / BURBANK POLICE

| 1. Offense/Classification on Last Previous Report | 2. Offense/Classification as of this Date (if same as No. 1 write Same) | 3. Beat or Unit Assigned | 4. Beat of Occurrence |
|---|---|---|---|
| ARMED ROBBERY | Same | 4 | 81-1 |

| 5. Victim's Name as shown on Case Report | Corrected? No ☑ Yes ☐ | Correct Name | 6. Victim's Address 5440 W 87TH ST | 7. Phone No. 857.75 |
|---|---|---|---|---|
| FIRST STAR BANK | | | | |

| 8. Date of this report Day 12 Mo. OCT Yr. 01 | 9. Date Invest. Unit Assigned Day 12 Mo. OCT Yr. 01 | Time 1800 | 10. Address of Occurrence 5440 W 87TH ST BURBANK |
|---|---|---|---|

The description of offenders, possible weapons and possible vehicles used by offenders, contained within this report are approximations of estimates unless otherwise indicated. The sobriety of victims, witnesses and offenders is their apparent condition when reported. Witnesses location at time of crime and distance from scene the best approximation obtainable. All statements of victims, witnesses and offenders are summarizations unless otherwise indicated. Record all developments in case since the last report was filed. If the classification is changed, explain why.

NARRATIVE  MS HARRISON AND MR DEBENEDICTIS WERE TRANSPORTED TO 5421 W ALEXANDER WHERE ALL THREE POSITIVELY IDENTIFIED THE OFFENDER. BURBANK POLICE TOOK CUSTODY OF THE OFFENDER AND TRANSPORTED HIM TO THE BURBANK P.D. R/O CONTACTED ET METELSKI TO PROCESS THE SCENE. FBI AGENTS WERE CONTACTED AND UPON ARRIVAL OF AGENT HARRIS AND BENIS THE SCENE WAS TURNED OVER TO THEM.

R/O NOTES UPON COUNTING THE CASH DRAWER THE BANK REPORTED THE THEFT AMOUNT TO BE $2790.00 IN USC

| 11. Reporting Officer (Print or Type) GAFFNEY | Star No. 126 | 12. Reporting Officer (Print or Type) | Star No. | 13. Supervisor Approving | Star No. |
|---|---|---|---|---|---|
| Signature | | Signature | | 14. Date Investigation Completed Day 12 Month OCT Year 01 | Time 2130 |

07-094

Chairman                                          December 15, 2006
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland 20815

US PAROLE

DEC 2 0

COMMISSION

RE: FOIA Response of 12/5/06

Dear Sir:

This is an appeal under the Freedom of Information Act.

By response to my FOIA request dated December 5, 2006, the Commission provided

me copies of the records requested. But, certain records were withheld and certain

information was deleted under exemptions (b)(6) and (b)(70(C). I appeal the use of those

exemptions as arbitrary and capricious. The Commission has the burden of proving the

material withheld fits squarely within the parameters of the exemptions claimed. The

Commission has not met that burden.

As far as the documents purportedly available through my case manager, I again

appeal the withholding of them. I requested everything including everything I submitted to

you. Therefore, I want those records from the Commission, not the BOP. I am harassed and

intimidated and retaliated against every time I attempt to receive records from BOP and do not

wish to put my head on the platter again. Therefore, kindly send me everything the BOP has

that fall within the purview of this request.

Please process ALL documents. Then refer these documents to the BOP for

processing and direct response to me.

Sincerely,

RECEIVED
DEC 21 2006

Michael Antonelli
04053-164
USP Big Sandy
1197 Airport Road
Inez, KY 41224

cc: file

Exhibit ___7___

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the Chairman*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5990*
*Facsimile: (301) 492-5307*

January 29, 2007

Michael Antonelli
Reg. No. 04053-164
USP Big Sandy
1197 Airport Road
Inez, KY 41224

Dear Mr. Antonelli:

You are appealing the action taken by the Parole Commission in response to your Freedom of Information Act (FOIA) request of December 5, 2006. You contend that Exemptions (b)(6) and (b)(7)(C) of the FOIA, 5 U.S.C. Section 552, were arbitrarily applied to withhold information. You also contend that Bureau of Prisons (BOP) documents were improperly withheld.

Contrary to your claim, Exemptions (b)(6) and (b)(7)(C) were properly applied to withhold personal information relating to victims/witnesses listed on the police reported dated October 30, 2001. The police report was disclosed to you but limited information was withheld relating to the addresses and birthdates of the victims/witnesses. In applying the exemptions, an individual's right to privacy is balanced against the public interest in the release of the information. See U.S. Dept. Of Justice v. Reporters Committee, 489 U.S. 749, 762 (1989). The victims/witnesses listed in the police report have a right to privacy in regard to their personal information. You have not identified any public interest warranting the release of the information. Thus, the information was properly withheld from disclosure pursuant to Exemptions (b)(6) and (b)(7)(C).

In regard to the BOP documents, there is no basis for your appeal. The documents were not withheld from disclosure. You were advised to notify the FOIA processor if you wished to have those documents copied and referred to the BOP. Since you indicate that you would like to receive the BOP documents, the Commission will process those documents and refer them to the BOP.

Judicial review of my action on this appeal is available to you in the United States District

Exhibit ___8___

Page 1 of 2

01/29/07

Court for the judicial district in which you reside, or in the District of Columbia.

Sincerely,

Edward F. Reilly, Jr.
Chairman
U.S. Parole Commission

EFR/PAR/par

01/29/07



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

February 13, 2007

Bureau of Prisons
320 First Street, N.W.
HOLC Building, Room 738
Washington, D.C. 20534
Attn: Administrator for FOIA

Re:    **FOIA Request Of:**
       **Michael Antonelli**
       **Reg. No. 04053-164**

Dear Sir or Madam:

Enclosed is a copy of document(s) from the parole file of the above-referenced requester. Because it originated with your agency, it is forwarded to your office for disclosure processing and preparation of a direct response to the requester. A copy of the original request is attached. The above-named has been notified of this referral.

Sincerely,

*Anissa N. Hunter*
Anissa N. Hunter
FOIA Specialist

Enclosures - 14 pages

**Exhibit ___9___**



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

February 13, 2007

Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

**Re: Your Disclosure Request**

Dear Mr. Antonelli:

This is in response to your request of December 15, 2006 received on December 21, 2006 for copies of documents from your parole file. The terms of your request cover:

All BOP documents maintained in the U.S. Parole Commission's file since your last disclosure of May 6, 2002

The Commission is disclosing all of the documents you requested which are in your active file as of the date of this response, <u>except</u> those documents or portions of documents listed below.

This material has been provided to the originating agency for a reply:

### DOCUMENT

Discipline Hearing Officer Report dated 12/19/2006 (8 pages)
Progress Report 08/03/2006 (6 pages)

### AGENCY NAME

Bureau of Prisons
Washington, D.C. 20534

**Exhibit ___10___**

If you are dissatisfied with my action on this request, you have thirty (30) days from the receipt of this letter to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

07-143

MAR - 1 2007

US PAROLE COMMISSION

US PAROLE
FEB 2 3 2007
COMMISSION

# FOIA APPEAL

To: _CHAIRMAN, US PAROLE COMMISSION_    DATE ___2/10/2007___

FOIA To: _US PAROLE COMMISSION_

Request No. _NONE ASSIGNED_

Date of Request _12/15/07_

This is an appeal under the Freedom of Information Act.    _US PAROLE COMMISSION_
Please review the action or inaction of the following agency: _____
in conjunction to my request for records. (check appropriate box(es) below:

_____ The agency has not responded and the time limits within which to do so has expired.

_____ The agency has claimed that no records could be found and I want to appeal that "no records"
        response.
_____ The agency has blanket denied release of records.

_____ The agency has released certain records and withheld some by claiming certain exemptions.

_____ The agency has withheld certain records but has not claimed any exemptions or stated any reason
        for the deletions.
_____ The agency has claimed there are no records available or they have been destroyed and I believe
        they have not made a sufficient search.
_____ The agency has stated records were destroyed but has not stated where, how, when and for what
        reason they were destroyed and under what provision of the law.
__X__ I believe the agency action or inaction otherwise unjust for the following reason: _I WANT_

_A COPY OF EVERYTHING YOU HAVE IN CONNECTION TO MY NAME_
_INCLUDING ALL PAROLE HEARING TAPES; EVERYTHING I SUBMITTED; AND EVERYTHING YOU ALREADY HAVE SENT_
        Appellant believes the agency or public body has acted arbitrary and/or capricious and he asks for _ME._
review of the agency action/inaction.
        The burden is on the agency or public body to show the material withheld fits within the parameters of
the exemptions claimed. The appellant asks that the agency itemize and index the withheld material and
including detailed affidavits & explanations to support any justifications for refusal to disclose.

                                            Sincerely,

                                            X _Michael Antonelli_
                                                        (signature)
                                            _Michael Antonelli_ _04053-164_
                                            (name)              (number)
                                            USP Big Sandy; 1197 Airport Road
                                            Box 2068; Inez, KY 41224

cc: file
**(Failure to timely respond to this administrative appeal will result in complaint for judicial review)**

P.S. ALL MY RECORDS WERE LOST BY THE BOP IN TRANSFER
P.S. AGAIN: I HAVE AN URGENT NEED → PAROLE HEARING SET FOR 4/26/0

## Exhibit __11__



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

March 6, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

Dear Mr. Antonelli:

This office acknowledges the receipt of your letter dated February 15, 2007 which was received on March 6, 2007, requesting copies of records from the U.S. Parole Commission.

This office has a backlog of unfilled requests and limited personnel resources with which to process a large volume of FOIA requests. The National Capital Revitalization Act of 1997 has more than doubled the Commission's caseload as of August 5, 2000. However, Congress has continued the Commission's status as an abolished agency, and has not given the Commission the funding it expected to implement the Act in all respects. Moreover, since August 5, 2000, the Commission's FOIA caseload has significantly increased because of the unprecedented use of the FOIA, in District of Columbia Code cases, as a substitute for prehearing discovery at parole and parole revocation hearings, which is not required by the applicable parole laws and rules of the District of Columbia. The Commission has not previously experienced such an unusual volume of FOIA requests in its federal cases.

For the above reasons, the agency is now operating under exceptional circumstances as defined in 5 U.S.C. 552(a)(6)(C), and will exercise due diligence in responding to your request. Disclosure requests are processed in turn as soon as reasonably possible. We may be unable, however, to process your request within the statutory time requirement.

**Exhibit** ___12___

In accordance with applicable fee schedules, you will be required to reimburse the United States if billable search and reproduction costs exceed $14.00. The Commission will inform you if reimbursement is required and will determine any fee waiver request at that time. In the absence of a fee waiver, you must make payment before the copies of the records you requested will be sent to you.

Any material submitted by you or your representative to the Parole Commission will not be reproduced with our response, unless you specifically request the same. Additionally, your file may contain documents that originated with the Bureau of Prisons. We do not interpret your request to include these documents as you may already have obtained them from the Bureau. If you wish to have the Bureau of Prisons documents in your parole file processed, please advise the undersigned. The Commission will then refer these documents to the Bureau of Prisons for processing and a direct response to you.

We regret any delay but assure you that your request will be processed as soon as possible. You may wish to modify the scope of your request to limit your request to only a few documents which may result in priority processing. See 28 C.F.R. 2.56(a)(1).

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

MAR 1 5 2007

# FOIA APPEAL

RECEIVED
MAR 19 2007

To: CHAIRMAN

UNITED STATES PAROLE Commission

5550 FRIENDSHIP BlVD

Check Chase MARYLAND 20815

DATE _3/10/07_

FOIA To: _US PC_

Request No. _NONE ASSIGNED_

Date of Request _2/15/07_

This is an appeal under the Freedom of Information Act.
Please review the action or inaction of the following agency: _US PC_
in conjunction to my request for records. (check appropriate box(es) below:

✔ The agency has not responded and the time limits within which to do so has expired.

_____ The agency has claimed that no records could be found and I want to appeal that "no records response.

_____ The agency has blanket denied release of records.

_____ The agency has released certain records and withheld some by claiming certain exemptions.

_____ The agency has withheld certain records but has not claimed any exemptions or stated any reason for the deletions.

_____ The agency has claimed there are no records available or they have been destroyed and I believe they have not made a sufficient search.

_____ The agency has stated records were destroyed but has not stated where, how, when and for what reason they were destroyed and under what provision of the law.

✔ I believe the agency action or inaction otherwise unjust for the following reason: _I APPEAl The UNREASONAble DELAY IN PROCESSING MY REQUEST. I have AN URGENT NEED FOR The RecorDS. PAROle HEARING SET 4/26/07_

Appellant believes the agency or public body has acted arbitrary and/or capricious and he asks for review of the agency action/inaction.

The burden is on the agency or public body to show the material withheld fits within the parameters of the exemptions claimed. The appellant asks that the agency itemize and index the withheld material and including detailed affidavits & explanations to support any justifications for refusal to disclose.

Sincerely,

X _Michael Antonelli_
(signature)

_Michael Antonelli_  _04053-164_
(name)                (number)
USP Big Sandy; 1197 Airport Road
Box 2068; Inez, KY 41224

cc: file
**(Failure to timely respond to this administrative appeal will result in complaint for judicial review)**

_Final count_ 2703
_AIMS_ $10.30

**Exhibit ___13___**

Anissa N. Hunter                                           March 11, 2007
FOIA Specialist
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815

RE:  Your March 6, 2007 letter

Dear Ms Hunter:

Please know that I request you expedite my FOIA requests.  I have lost all my
FOIA material previously sent me in transit to USP Big Sandy.  I must have everything
the Commission has in its possession including all parole tapes, all records submitted
by me, and anything anyone else sent on my behalf, and especially the May 21, 1997
tape of the hearing and the tape of NANCY ANTONELLI's statement given without my
presence.  I have submitted the release from NANCY ANTONELLI to procure this but
your agency has failed to retrieve that tape from the EOUSA as far as I know.

I need all this at once.  This is urgent.  I face a PAROLE REVOCATION
HEARING on April 26, 2007, and I need these records to defend against revocation.

Kindly expedite this request.

Please give me a copy of EVERYTHING !  I will pay the fees incurred !

THANK YOU.

Michael Antonelli
04053-164
USP Big Sandy
Box 2068
Inez, KY 41224

cc : file

Exhibit ___14___

# CECIL C. MCCALL ASSOCIATES

388 RIVERBEND DRIVE
DAYTON, TENNESSEE 37321
(423) 775-5567

A CRIMINAL JUSTICE
PROFESSIONAL SERVICE

March 13, 2007

PROVIDING PAROLE REPRESENTATION
PRE-SENTENCING &
SENTENCING GUIDELINE CONSULTATION

FOIA Disclosure Specialist
U. S. Parole Commission
5550 Friendship Blvd.
Chevy Chase, MD  20815

RECEIVED

MAR 16 2007

LEGAL
U.S. PAROLE COMMISSION

Re: MICHAEL C. ANTONELLI
Reg. #04053-164
USP Big Sandy

Dear Commission:

I would like to request copies of all records, documents,
data, etc., maintained by your agency pursuant to the Freedom of
Information and Privacy Act in reference to the above captioned
inmate. A properly executed waiver is enclosed.

I therefore respectfully request copies of the following:

1. Most current institutional progress report
2. Preliminary hearing "mini-file" material
3. Initial hearing summary format (handwritten)
4. Parole form H-1 (transcribed hearing summary) or form H-38
5. Parole form H-17 (referral worksheet by the Administrative
   Hearing Examiner to the Regional Commissioner)
6. Parole guideline worksheet, form H-10
7. All Commission Orders - Parole form H-6
8. Parole Commission Notice of Action
9. Any AO 235, DOJ 792 forms, or summary thereof
10. Hearing tapes
11. FBI Rap Sheet
12. BP-5
13. Presentence Report
14. Any related memorandum, letters, telephone messages,
    notes, etc.

While the above list is specifically requested, it should
not be considered exhaustive. Rather, the request is for copies
of all disclosable material in the subject's file. Let me thank
you in advance for a timely response to our request.

Sincerely,

Cecil C. McCall

CMc:jm
Enclosure

ExhIbit ___15___

PRIVACY ACT WAIVER

I, Michael C. Antonelli, Reg. No. 04053-164

hereby authorize and request the UNITED STATES PAROLE COMMISSION
and the UNITED STATES BUREAU OF PRISONS to release any records,
documents, or data compilations of any kind, contained in any system
of records maintained by these agencies, to my parole representa-
tive, Cecil C. McCall, 388 Riverbend Drive, Dayton, Tennessee
37321.

I hereby waive my rights under the Privacy Act of 1974 to
authorize disclosure to said representative.

_____
Signature

_____
Notary or Case Manager
(With Stamp)

AUTHORIZED BY THE ACT OF
JULY 7, 1955, AS AMENDED,
TO ADMINISTER OATHS
18 U.S.C. 4004

_____
Date



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301)492-5821
Facsimile: (301)492-5525

March 21, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. Mccall
Cecil C. McCall Associates
388 Riverbend Drive
Dayton, TN 37321

Dear Mr. Antonelli:

This office acknowledges the receipt of your letter dated March 13, 2007, which was received on March 16, 2007, requesting copies of records from the U.S. Parole Commission.

This office has a backlog of unfilled requests and limited personnel resources with which to process a large volume of FOIA requests. The National Capital Revitalization Act of 1997 has more than doubled the Commission's caseload as of August 5, 2000. However, Congress has continued the Commission's status as an abolished agency, and has not given the Commission the funding it expected to implement the Act in all respects. Moreover, since August 5, 2000, the Commission's FOIA caseload has significantly increased because of the unprecedented use of the FOIA, in District of Columbia Code cases, as a substitute for prehearing discovery at parole and parole revocation hearings, which is not required by the applicable parole laws and rules of the District of Columbia. The Commission has not previously experienced such an unusual volume of FOIA requests in its federal cases.

For the above reasons, the agency is now operating under exceptional circumstances as defined in 5 U.S.C. 552(a)(6)(C), and will exercise due diligence in responding to your request. Disclosure requests are processed in turn as soon as reasonably possible. We may be unable, however, to process your request within the statutory time requirement.

**Exhibit** ___16___

In accordance with applicable fee schedules, you will be required to reimburse the United States if billable search and reproduction costs exceed $14.00. The Commission will inform you if reimbursement is required and will determine any fee waiver request at that time. In the absence of a fee waiver, you must make payment before the copies of the records you requested will be sent to you.

Any material submitted by you or your representative to the Parole Commission will not be reproduced with our response, unless you specifically request the same. Additionally, your file may contain documents that originated with the Bureau of Prisons. We do not interpret your request to include these documents as you may already have obtained them from the Bureau. If you wish to have the Bureau of Prisons documents in your parole file processed, please advise the undersigned. The Commission will then refer these documents to the Bureau of Prisons for processing and a direct response to you.

We regret any delay but assure you that your request will be processed as soon as possible. You may wish to modify the scope of your request to limit your request to only a few documents which may result in priority processing. See 28 C.F.R. 2.56(a)(1).

Sincerely,

Tamisha Jackson
FOIA Technician

TNJ

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

March 27, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. McCall
388 Riverbend Drive
Dayton, TN 37321

**Re:    Your Pending Disclosure Request**

Dear Mr. Antonelli:

This is in regard to your pending Freedom of Information Act (FOIA) request of March 13, 2007.

We have estimated that the processing of your request will involve a fee amounting to more than $25.00. In accordance with 28 C.F.R. §16.11(e), this letter serves as notice that your request will not be processed until you agree to pay the anticipated fee. Please do not submit payment at this time, but only a letter stating your agreement to pay the fee once the exact amount is determined.

In the alternative, you may submit a new request limiting the scope of your request to avoid the incurrence of a fee.

**Please be advised that Mr. Antonelli has also requested all documents and taped parole hearings in his file and has been sent a fee anticipated letter as well.**

You must respond to this letter within 30 days of the date of the letter or your request will be considered withdrawn. Please forward your response to the FOIA Unit at the address listed above.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit ___17___**

*ANH*
*closed   5/18/07*

3/29/07

Anissa N. Hunter, FOIA Specialist
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland 20815

RE: March 27, 2007 Letter
FROM YOU.

Dear Ms Hunter:

Please know that I agree to pay
a fee more than $25.00 for processing
my FOIA Request.

Please Expedite!

Thank you.

Michael Antonelli
Michael Antonelli
04053-164
USP Big Sandy
Box 2068
Inez, KY 41224

cc: file

RECEIVED
APR - 2 2007
U.S. Parole Commission
Legal

**Exhibit** _18_





**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301)492-5821
Facsimile: (301)492-5525

April 23, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

**Re:    Your Pending Disclosure Request**

Dear Mr. Antonelli:

This is in regard to your pending Freedom of Information Act (FOIA) request of February 17, 2007 and agreement to pay on Marc 29, 2007.

We have evaluated your case file and have determined that in order to begin the processing of your request a deposit of $250 will be required. In accordance with 28 C.F.R. §16.11(e), this letter serves as notice that your request will not be processed until we receive the deposit.

In the alternative, you may submit a new request limiting the scope of your request to possibly avoid the incurence of a fee.

**You must respond to this letter within 30 days of the date of the letter or your request will be considered withdrawn.** Please forward your response to the FOIA Unit at the address listed above.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit   19**

MAY 8 2007

Anissa N. Hunter, FOIA Specialist
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland   20815

RECEIVED
April 26, 2007
MAY - 9 2007
U.S. Parole Commission
Legal

April 26, 2007

RE:   Pending Disclosure Request

Dear Ms Hunter:

      Enclosed please find a business check in the amount of $250.00
made out to the <u>Treasury of the United States</u> for the deposit
required to continue processing my request.

      Kindly expedite.   I need these records before I go to the
hearing scheduled the week of May 7, 2007.

      Thank You.

                                        Sincerely,

                                        Michael Antonelli

                                        Michael Antonelli
                                        No. 04053-164
                                        USP BIg Sandy
                                        Box 2068
                                        Inez, KY   41224

cc : file

**Exhibit** _____ 20

CAL SAG AUTO RECYCLING
8103 S. 77TH AVE.
BRIDGEVIEW, IL 60456

70-938
719

PAY
TO THE
ORDER OF _Treasury of The United States_

DATE _4-29-07_

$250.00

_Two Hundred Fifty 00/100_ _____ DOLLARS

**SB STANDARD
BANK AND TRUST CO.**

FOR _____

⑈0150688⑈ ⑈0719093363⑈ 540246700 4⑈



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

May 16, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

**Re:   Your Pending Disclosure Request**

Dear Mr. Antonelli:

This is in regard to your pending Freedom of Information Act (FOIA) request of February 17, 2007 and the payment which was received May 9, 2007.

We will begin processing your request as soon as possible. Currently, this office has limited personnel resources with which to process your large FOIA request. We will begin with the first file maintained by the Commission and disclose pages up to $250.

Your request to "expedite" prior to your hearing has been denied. Expedited processing of requests are granted when there is a compelling need established as defined by the U.S Parole Commissions Rules and Procedure Manual §2.56.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit** ᴥ⁄

05/21/07
16564

Chairman
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland   20815

RE:   FOIA in connection to NOTICE OF ACTION
      Dated 6/12/07 and parole hearing 5/21/07

Dear Sir:

       This is a request under the Freedom of Information Act.

       I request a copy of all records in any way connected to the
Parole Revocation Hearing of 5/21/07 and NOTICE OF ACTION of 6/12/07.

       I want everything in any way connected to the decision to CONTINUE
TO EXPIRATION of my sentence.  This includes every record used to
determine my SALIENT FACTOR SCORE.  Also, all records used to determine
that this is the Fifth Time I have been convicted of a new crime since
my initial release to parole supervision.

       I also want a copy of the parole revocation hearing tape of my
hearing had on 5/21/07 and any records in connection to the revocation
proceedings including all telephonic information whereas anyone may
have called the Commission on my behalf or otherwise.  Please include
copies of all records I may have submitted or somebody may have also
submitted on my behalf.

       I ask that you expedite this request because I need this infor-
mation to adequately prepare an appeal.

FULL NAME:  MICHAEL CARMIE ANTONELLI
DOB:    12/04/1946
POB:    Chicago, Illinois USA
SS#:    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

       I declare under the penalty of perjury that the aforementioned
is my biographical data and the signature below is my signature.
(28 USC Section 1746)

                                    Sincerely,

                                    Michael Antonelli

                                    Michael Antonelli
                                    04053-164
                                    Federal Correctional Institution
                                    Box 4000
                                    Manchester, Kentucky  40962

cc : file

Exhibit ___22___

CECIL C. MCCALL ASSOCIATES
388 RIVERBEND DRIVE
DAYTON, TENNESSEE 37321
(423) 775-5567

**US PAROLE**

JUL 2 3 2007

**COMMISSION**

PROVIDING PAROLE REPRESENTATION
PRE-SENTENCING &
SENTENCING GUIDELINE CONSULTATION

RECEIVED

A CRIMINAL JUSTICE
PROFESSIONAL SERVICE

JUL 2 5 2007

LEGAL
U.S. PAROLE COMMISSION

July 19, 2007

07-483

FOIA/Disclosure Specialist
U. S. Parole Commission
5550 Friendship Blvd.
Chevy Chase, MD  20815

Re: MICHAEL C. ANTONELLI
Reg. #04053-164

Dear Sir/Madam:

This is an up-date request for all disclosable documents,
letters, tapes and other material placed in the file of the above
named inmate since the date of your last disclosure.

A properly executed privacy waiver authorizing this disclosure
is enclosed.

Sincerely,

Cecil C. McCall

CMc:jM
Enclosure

**Exhibit    23**

**WRITTEN AUTHORIZATION FOR THE RELEASE OF RECORDS TO**

I, _Michael C. Antonelli_ after having been duly sworn and under oath, hereby depose and state that on this day I agree that all records in the possession of the following agency or public body:

_UNITED STATES PAROLE Commission AND FEDERAL BUREAU OF PRISONS_
that are in any way connected to, related to, or even remotely in referen to my name, be released to third-party requester as follows:
_ATTORNEY Cecil C. McCall, 388 Riverbend Drive, Dayton, Tennessee 3732,_

I declare under the penalty of perjury that the aforementioned is true and correct.

My Biographical Data is :

FULL NAME _Michael Carmie Antonelli_

DATE OF BIRTH: _December 4, 1946_

PLACE OF BIRTH: _Chicago, Illinois 60604_

SOCIAL SECURITY NUMBER (optional) _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_
_USP Big Sandy - P.O. Box 2068_
CURRENT ADDRESS: _1197 Airport Road, Inez, Kentucky 41224_

I am signing the release of my own free will and desire and swear under the penalty of perjury that the signature below is my true and correct original signature of my person.

Further affiant sayeth naught.

Executed this _6th_ day of _March_ , _2007_ .

By _Michael C. Antonelli_
                        Affiant Herein

(28 USC Section 1746)           _No, 04053-164_



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301) 492-5821*
*Facsimile: (301) 492-5525*

July 19, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Manchester FCI
P.O. Box 3000
Fox Hollow Road
Manchester, KY 40962-3000

*See attached documents send disclosure to Carl McCall*

Dear Mr. Antonelli:

This office acknowledges the receipt of the above-referenced letter which was received on July 19, 2007 requesting copies of records from the U.S. Parole Commission.

This office has a backlog of unfilled requests and limited personnel resources with which to process a large volume of FOIA requests. The National Capital Revitalization and Self-Government Improvement Act of 1997 has more than doubled the Commission's caseload as of August 5, 2000. However, Congress has continued the Commission's status as an abolished agency, and has not given the Commission the funding it expected to implement the Act in all respects. Moreover, since August 5, 2000, the Commission's FOIA caseload has significantly increased because of the unprecedented use of the FOIA, in District of Columbia Code cases, as a substitute for prehearing discovery at parole and parole revocation hearings. The Commission has not previously experienced such an unusual volume of FOIA requests in its federal cases.

For the above reasons, the agency is now operating under exceptional circumstances as defined in 5 U.S.C. §552(a)(6)(C), and will exercise due diligence in responding to your request. Disclosure requests are processed in turn as soon as reasonably possible. We may be unable, however, to process your request within the statutory time requirement.

In accordance with applicable fee schedules, you will be required to reimburse the United States if billable search and reproduction costs exceed $14.00. The Commission will inform you if reimbursement is required and will determine any fee waiver request at that time. In the absence of a fee waiver, you must make payment before the copies of the records you requested will be sent to you.

Any material submitted by you or your representative to the Parole Commission will not be reproduced with our response, unless you specifically request the same. Additionally, your file may contain documents that originated with the Bureau of Prisons. We do not interpret your request to include these documents as you may already have obtained them from the Bureau. If you wish to have the Bureau of Prisons documents in your parole file processed, please advise the undersigned.

**Exhibit ___24___**

The Commission will then refer these documents to the Bureau of Prisons for processing and a direct response to you.

We regret any delay but assure you that your request will be processed as soon as possible. You may wish to modify the scope of your request to limit your request to only a few documents which may result in priority processing. See 28 C.F.R. §2.56(a)(1).

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

July 25, 2007

Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. McCall
Cecil C. McCall Associates
388 Riverbend Drive
Dayton, TN 37321

**Re:    Your Pending Disclosure Request**

Dear Mr. McCall:

This is in regard to your pending Freedom of Information Act (FOIA) request of July 19, 2007.

We have estimated that the processing of your request will involve a fee amounting to more than $25.00. In accordance with 28 C.F.R. §16.11(e), this letter serves as notice that your request will not be processed until you agree to pay the anticipated fee. Please do not submit payment at this time, but only a letter stating your agreement to pay the fee once the exact amount is determined.

In the alternative, you may submit a new request limiting the scope of your request to avoid the incurrence of a fee.

You must respond to this letter within 30 days of the date of the letter or your request will be considered withdrawn. Please forward your response to the FOIA Unit at the address listed above.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit    25**

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

July 25, 2007

RECEIVED
AUG - 6 2007
LEGAL
U.S. PAROLE COMMISSION

Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. McCall
Cecil C. McCall Associates
388 Riverbend Drive
Dayton, TN 37321

Re:    **Your Pending Disclosure Request**

Dear Mr. McCall:

This is in regard to your pending Freedom of Information Act (FOIA) request of July 19, 2007.

We have estimated that the processing of your request will involve a fee amounting to more than $25.00. In accordance with 28 C.F.R. §16.11(e), this letter serves as notice that your request will not be processed until you agree to pay the anticipated fee. Please do not submit payment at this time, but only a letter stating your agreement to pay the fee once the exact amount is determined.

In the alternative, you may submit a new request limiting the scope of your request to avoid the incurrence of a fee.

You must respond to this letter within 30 days of the date of the letter or your request will be considered withdrawn. Please forward your response to the FOIA Unit at the address listed above.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH                July 31, 2007                **Exhibit** ___26___

   Ms. Hunter, this was an up-date request. I need only the
material generated with reference to the last revocation hearing, e.g.
pre-hearing documents, hearing summary, Orders, NOA, etc.

Thank You,

Cecil C. McCall



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301) 492-5821
Facsimile: (301) 492-5525

August 6, 2007

Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. Mccall
Cecil C. McCall Associates
388 Riverbend Drive
Dayton, TN 37321

Dear Mr. McCall:

We are unable to provide you with the information you requested for the following reason:

We have received duplicate requests for disclosure of information in the file from Michael Antonelli as well as your firm. We will be sending this material to Mr. Antonelli unless he sends written notice requesting us to send it to your firm.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit** ___87___

```
┌─────────────────────────────┐
│        RECEIVED             │
│        AUG 2 1 2007         │
│   U.S. Parole Commission    │
│         Legal               │
└─────────────────────────────┘
```

August 16, 2007

Anissa N. Hunter, FOIA Specialist
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland   20815-7201


RE:  My Request you received 7/19/07

Dear Ms Hunter:

    Please know that there are two main requests for information
that have yet to be responded to by the Commission:

    1)    A comprehensive request in which I ask for everything
in your files including parole hearing tapes dating back to 1978
when I was first incarcerated by the federal government.  On April
23, 2007 you asked for a $250 deposit.  By letter of April 26, 2007
I sent the $250 to you.  That request has yet to be answered by
the Commission;  (See attached copies of those letters)

    2)    Another request I filed in the interum after having
found out I was continued to expiration, asking for only the
records in connection to my parole hearing on May 21, 2007 and
the NOTICE OF ACTION dated June 12, 2007, dated July 13, 2007.
You responded by letter dated July 19, 2007. (See copies attached
of both letters).


    I am writing to advise you to please send the response to
the July 13, 2007 request to the Honorable Cecil C. McCall at
388 Riverbend Drive, Dayton, Tennessee 37321, who I have retained
to represent my interests in the pending administrative appeal. (#2)

    I want to thank you in advance for any consideration that
you may be able to give to me herein.

                                   Sincerely,

                                   Michael C. Antonelli 04053-164
                                   Federal Correctional Institution
                                   Box 4000, Manchester, Kentucky 40962


cc : file
     Cecil C. McCall

P.S.   Please continue processing the request mentioned in #1 and
       send those records to me.  Only send the #2 records to Mr.
       Mcall.   THANKS AGAIN !

                                   Exhibit ___28___



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

October 9, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Big Sandy USP
P. O. Box 2067
Inez, KY 41224

Dear Mr. Antonelli:

Your request for copies of records from your file has been processed.

In accordance with departmental regulations, you are required to pay all applicable fees before the requested records are released to you. The remaining fee for processing your request is $10.30. This is based on the charge of $0.10 per page in excess of 100 pages (2,703 pages) provided. Your check for $250 will now be deposited. Once the remaining balance has been received, your records will be mailed to you.

Your check or money order should be made payable to the Treasury of the United States and mailed to the U.S. Parole Commission, Disclosure Fee Desk, 5550 Friendship Boulevard, Chevy Chase, Maryland 20815. To ensure proper crediting of the payment, the check sent to the U.S. Parole Commission must include your full name and register number.

Sincerely,

Anissa N. Hunter
FOIA Specialist

ANH

**Exhibit** _29_

Anissa N. Hunter, FOIA Specialist                    October 30, 2007
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815

                        RE:  Your letter of 10/9/07

Dear Ms Hunter:

    Please know that I have caused the $10.30 to be sent to the
Commission off my books.  It should be there soon.  Secondly, I am
utterly dismayed at the fact that you have sent the October 9, 2007
letter to me at the wrong address. (See enclosed)  You unequivocally
knew of my Manchester address as of at least August 16, 2007. (See
enclosed)  Third, I am also hard-pressed to be believe that you did
not send the 2703 pages to me at once instead of further delaying
my receipt of the records when you darn well also knew that I have
an urgent need for the records requested in order to finish my parole
appeal due November 19, 2007.  I have been waiting now for over a year
for these records and have sent you the $250 you requested long ago.
I needed those records even before my parole revocation hearing that
ultimately occured on May 21, 2007.  The failure to send them has now
contributed to the fact that I still sit, now over six years, not
knowing when I am really getting out.  That was the exact reason that
Congress passed the new law and voted to discontinue the Parole Comm-
ission in the firstplace back in 1984, (passing the new law)  in order
to eliminate this anxiety and give everyone an outdate.  Yet, you did
not send the records for such a petty reason regardless.
    In any event, that comes to my fourth concern; why you have not
also honored my specific request of August 16, 2007, copy enclosed,
to send the records of only my parole hearing to my noble attorney
Cecil C. McCall, before you finished processing the comprehensive
request I initially filed way back in 2006, over a year ago.  I have
recently spoken to Mr. McCall and he has advised me that you still
have not sent him anything.  Why ???????
    Please also know that Mr. McCall needs those records at least
ten days in advance of the November 19, 2007 deadline to file what
he has to file in order to supplement my pending parole appeal.
    I am sorry if this letter has a tone of perturbation in it.  I
have no choice other than to believe, because so many delays, and
so many mistakes such as sending things continuously to the wrong
address, that this is intentional stonewalling of my efforts to
ultimately receive a parole date.
    So, can you please send Mr. McCall the records he wants and
also the ones I want, without further delay.
       THANK YOU!!!!!!!

                          Utterly Dismayed, I Remain:
                          *Michael Antonelli*
                          Michael Antonelli 04053-164
                          No. 04053-164
                          Federal Correctional Institution
                          Box 4000
                          Manchester, Kentucky 40962

cc : file
     Cecil C. McCall                    Exhibit ___30___



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301)492-5821
Facsimile: (301)492-5525

November 5, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
c/o Cecil C. McCall Associates
388 Riverbend Drive
Dayton, TN 37321

**Re: Your Disclosure Request**

Dear Mr. Antonelli:

This is in response to your request of July 13, 2007 received on July 19, 2007 for copies of documents from your parole file. The terms of your request cover:

Copies of all documents contained in the U.S. Parole Commission's file pertaining to your parole hearing dated May 21, 2007.

The Commission is disclosing all of the documents you requested which are in your active file as of the date of this response, except those documents or portions of documents listed below.

Because the Parole Commission is exempt from the access provisions of the Privacy Act, this disclosure is made under the Freedom of Information Act (FOIA).

**Any copies of documents provided in previous FOIA responses are not included in this response.**

**Exhibit    31**

If you are dissatisfied with my action on this request, you have thirty (30) days from the receipt of this letter to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

Anissa N. Hunter
FOIA Specialist

Enclosures – 18 pages

ANH

# Memorandum



| Subject | Date |
|---------|------|
| Michael Antonelli<br>Reg. No. 04053-164 | November 29, 2007 |

| To | From |
|----|------|
| Memo to File | Anissa N. Hunter<br>FOIA Specialist |

On November 28, 2007, a voicemail message was left for Case Manager, Shelly Messer, at Manchester FCI indicating that I needed to speak with her regarding Michael Antonelli.

On November 29, 2007 at 8:00 a.m. E.S.T., a conversation was held and Ms. Messer advised that she would get approval from her supervisor and fax over a copy of the prison accounting records reflecting Mr. Antonelli's transactions.

Per the attached copy of the prison accounting records for Mr. Antonelli, no payment has been sent to the U.S. Parole Commission in reference to a FOIA request for all records dated March 13, 2007 and FOIA manual request dated November 1, 2007.

Attachment -- 2 pages

**Exhibit** _32_

# FAX COVER SHEET

**TO:** _Arissa Hunter_

**FAX #:** _301-463-5503_

**FROM:** _Vargece_

**FCI MANCHESTER**
**ATTN: LAUREL UNIT**
**P.O. BOX 3000**
**MANCHESTER, KY 40962**
**(606) 598-1900 Ext. 4385**
**Fax # (606) 599-4147**

**# OF PAGES (INCLUDING COVER SHEET)** _2_

**\*\*\* INFORMATION IS SENSITIVE L.O.U \*\*\***

_Re: Antonell # 09053-104_

## Withdrawals

| | |
|---|---|
| Inmate Reg #: | 04053164 |
| Inmate Name: | ANTONELLI, MICHAEL |
| Report Date: | 11/29/2007 |
| Report Time: | 8:42:16 AM |

| | |
|---|---|
| Current Institution: | Manchester FCI |
| Housing Unit: | MAN-L-A |
| Living Quarters: | L01-338L |

| Date/Time | Transaction Type | Amount | Ref# | Payment# |
|---|---|---|---|---|
| 11/21/2007 10:07:08 AM | Bills | ($350.00) | | 1084 |
| 11/19/2007 9:04:43 AM | PLRA Payment | ($350.00) | | 986 |
| 11/19/2007 9:03:59 AM | PLRA Payment | ($350.00) | | 985 |
| 11/14/2007 3:48:45 PM | Bills | ($24.00) | 855 | 982 |
| 11/14/2007 3:48:35 PM | Bills | $24.00 | 855-V | |
| 11/14/2007 3:48:13 PM | Bills | ($9.60) | 853 | 981 |
| 11/14/2007 3:48:03 PM | Bills | $9.60 | 853-V | |
| 11/14/2007 3:47:42 PM | Bills | ($48.00) | 852 | 980 |
| 11/14/2007 3:47:26 PM | Bills | $48.00 | 852-V | |
| 11/14/2007 3:46:59 PM | Bills | ($38.40) | 851 | 979 |
| 11/14/2007 3:46:17 PM | Bills | $38.40 | 851-V | |
| 11/14/2007 3:45:10 PM | Bills | ($28.80) | 849 | 978 |
| 11/14/2007 3:44:58 PM | Bills | $28.80 | 849-V | |
| 11/14/2007 7:07:31 AM | Bills | ($24.00) | | 855 |
| 11/14/2007 7:05:50 AM | Bills | ($9.60) | | 853 |
| 11/14/2007 7:04:59 AM | Bills | ($48.00) | | 852 |
| 11/14/2007 7:04:03 AM | Bills | ($38.40) | | 851 |
| 11/14/2007 7:02:55 AM | Bills | ($36.00) | | 850 |
| 11/14/2007 7:01:49 AM | Bills | ($28.80) | | 849 |
| 11/14/2007 7:00:26 AM | Bills | ($9.60) | | 848 |
| 11/14/2007 6:58:33 AM | Bills | ($36.00) | | 846 |
| 11/14/2007 6:57:16 AM | Bills | ($54.00) | | 845 |
| 11/14/2007 6:55:57 AM | Bills | ($24.00) | | 844 |
| 11/11/2007 6:52:49 AM | Phone Withdrawal | ($100.00) | TFN1111 | |
| 11/10/2007 6:37:35 AM | Phone Withdrawal | ($10.00) | TFN1110 | |
| 11/9/2007 4:36:51 PM | Phone Withdrawal | ($9.00) | TFN1109 | |
| 11/9/2007 10:57:58 AM | Phone Withdrawal | ($4.00) | TFN1109 | |
| 11/9/2007 8:22:07 AM | FRP Unicor Pymt | ($55.15) | IS0010 | |
| 11/2/2007 6:00:54 AM | Phone Withdrawal | ($10.00) | TFN1102 | |
| 11/1/2007 7:11:48 AM | Bills | ($350.00) | | 615 |
| 11/1/2007 7:09:25 AM | Bills | ($10.30) | | 613 |
| 10/31/2007 6:47:13 PM | Phone Withdrawal | ($6.00) | TFN1031 | |
| 10/29/2007 6:27:37 AM | Phone Withdrawal | ($6.00) | TFN1029 | |
| 10/17/2007 6:11:11 PM | Phone Withdrawal | ($12.00) | TFN1017 | |
| 10/11/2007 5:20:32 PM | Phone Withdrawal | ($10.00) | TFN1011 | |
| 10/11/2007 7:03:33 AM | Phone Withdrawal | ($5.00) | TFN1011 | |
| 10/9/2007 8:53:20 PM | Phone Withdrawal | ($7.00) | TFN1009 | |
| 10/9/2007 12:57:06 PM | FRP Unicor Pymt | ($47.28) | IS0002 | |
| 10/8/2007 12:44:58 PM | Phone Withdrawal | ($8.00) | TFN1008 | |
| 9/17/2007 2:05:56 PM | Bills | ($350.00) | | 4313 |
| 9/17/2007 6:21:55 AM | Phone Withdrawal | ($7.00) | TFN0917 | |
| 9/11/2007 7:04:58 AM | Phone Withdrawal | ($47.00) | TFN0911 | |
| 9/7/2007 10:05:33 AM | FRP Unicor Pymt | ($38.80) | IS0075 | |
| 9/5/2007 1:17:36 PM | Subscriptions | ($19.30) | | 3978 |
| 8/28/2007 1:39:36 PM | Bills | ($455.00) | | 3931 |
| 8/28/2007 1:37:34 PM | Bills | ($12.00) | | 3929 |
| 8/28/2007 1:36:45 PM | Bills | ($25.00) | | 3928 |
| 8/28/2007 1:27:22 PM | Bills | ($2.00) | | 3912 |
| 8/22/2007 8:37:16 AM | Bills | ($12.00) | | 3870 |
| 8/16/2007 10:10:31 AM | Inmate Co-pay | ($2.00) | GICP0807 | |
| 8/16/2007 9:58:39 AM | Bills | ($455.00) | | 3810 |
| 8/14/2007 1:09:10 PM | Gift | ($25.00) | | 3780 |
| 8/3/2007 6:07:19 AM | Phone Withdrawal | ($90.00) | TFN0803 | |
| 8/2/2007 6:09:50 AM | Phone Withdrawal | ($3.00) | TFN0802 | |
| 8/1/2007 6:24:09 AM | Phone Withdrawal | ($3.00) | TFN0801 | |
| 7/24/2007 7:39:26 AM | Inmate Co-pay | ($2.00) | GICP0707 | |
| 7/23/2007 6:06:01 AM | Phone Withdrawal | ($25.00) | TFN0723 | |
| 7/21/2007 7:20:56 PM | Phone Withdrawal | ($6.00) | TFN0721 | |
| 7/15/2007 7:12:16 PM | Phone Withdrawal | ($11.00) | TFN0715 | |
| 7/9/2007 1:17:42 PM | Legal Fees | ($5.00) | | 3065 |
| 7/3/2007 11:19:07 AM | Bills | ($5.00) | | 3026 |
| 6/29/2007 7:05:44 PM | Phone Withdrawal | ($20.00) | TFN0629 | |



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the General Counsel*                    *5550 Friendship Boulevard*
                                                   *Chevy Chase, Maryland 20815-7201*

                                                   *Telephone: (301) 492-5959*
                                                   *Facsimile: (301) 492-5563*

November 30, 2007

Michael Antonelli
Reg. No. 04053-164
Manchester FCI
P O Box 4000
Manchester, KY 40962

Dear Mr. Antonelli:

As stated in our correspondence dated October 9, 2007, in accordance with departmental regulations, you are required to pay all applicable fees before the requested records are released to you.

Be advised that the U.S. Parole Commission has contacted your institution and has been informed that no monies have been forwarded from your account in reference to your FOIA request fee of $10.30.

Once your check or money order in the amount of $10.30 has been received by the Commission, your requested records will be forwarded.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

**Exhibit** *33*

- 1 -

Anissa N. Hunter, FOIA Specialist          December 5, 2007
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815

                        RE:  Your 11/30/07 letter

Dear Ms Hunter:

     Enclosed please find a copy of the Inmate Statement and Withdrawal
computer generated proof that on November 1, 2007 the $10.30 you say
was never forwarded from my account actually was forwarded on that
day.

     Therefore, your information is wholly erroneous.

     Therefore, you must have the money; somebody is either not
telling you the truth at "my' institution; or you are fabricating
it.

     So, give me the records I have been waiting for at once !

     While you are at it, please also give me the name of the
person at this institution that told you that the $10.30 was not
forwarded; I want their job, their paycheck, and a judgement
against them, and am asking the U.S. Attorney to indict them for
obstruction of justice !


     I grant you will respond with expedience !




                         Utterly Dismayed, I Remain:



                         Michael Antonelli
                         04053-164
                         Federal Bureau of Prisons
                         Box 4000
                         Manchester, Kentucky  40962


cc : file
     BOP INTERNAL AFFAIRS, Washington, D.C.




                                        **Exhibit** ___34___



## Withdrawals

| Inmate Reg #: | 0-053164 | Current Institution: | Manchester FCI |
|---|---|---|---|
| Inmate Name: | ANTONELLI, MICHAEL | Housing Unit: | MAN-L-A |
| Report Date: | 11/18/2007 | Living Quarters: | L01-338L |
| Report Time: | 10:33:04 AM | | |

| Date/Time | Transaction Type | Amount | Ref# | Payment# |
|---|---|---|---|---|
| 11/14/2007 3:48:45 PM | Bills | ($24.00) | 855 | 982 |
| 11/14/2007 3:48:35 PM | Bills | $24.00 | 855-V | |
| 11/14/2007 3:48:13 PM | Bills | ($9.60) | 853 | 981 |
| 11/14/2007 3:48:03 PM | Bills | $9.60 | 853-V | |
| 11/14/2007 3:47:42 PM | Bills | ($48.00) | 852 | 980 |
| 11/14/2007 3:47:26 PM | Bills | $48.00 | 852-V | |
| 11/14/2007 3:46:59 PM | Bills | ($38.40) | 851 | 979 |
| 11/14/2007 3:46:17 PM | Bills | $38.40 | 851-V | |
| 11/14/2007 3:45:10 PM | Bills | ($28.80) | 849 | 978 |
| 11/14/2007 3:44:58 PM | Bills | $28.80 | 849-V | |
| 11/14/2007 7:07:31 AM | Bills | ($24.00) | | 855 |
| 11/14/2007 7:05:50 AM | Bills | ($9.60) | | 853 |
| 11/14/2007 7:04:59 AM | Bills | ($48.00) | | 852 |
| 11/14/2007 7:04:03 AM | Bills | ($38.40) | | 851 |
| 11/14/2007 7:02:55 AM | Bills | ($36.00) | | 850 |
| 11/14/2007 7:01:49 AM | Bills | ($28.80) | | 849 |
| 11/14/2007 7:00:26 AM | Bills | ($9.60) | | 848 |
| 11/14/2007 6:58:33 AM | Bills | ($36.00) | | 846 |
| 11/14/2007 6:57:16 AM | Bills | ($54.00) | | 845 |
| 11/14/2007 6:55:57 AM | Bills | ($24.00) | | 844 |
| 11/11/2007 6:52:49 AM | Phone Withdrawal | ($100.00) | TFN1111 | |
| 11/10/2007 6:37:35 AM | Phone Withdrawal | ($10.00) | TFN1110 | |
| 11/9/2007 4:36:51 PM | Phone Withdrawal | ($9.00) | TFN1109 | |
| 11/9/2007 10:57:58 AM | Phone Withdrawal | ($4.00) | TFN1109 | |
| 11/9/2007 8:22:07 AM | FRP Unicor Pymt | ($55.15) | IS0010 | |
| 11/2/2007 6:00:54 AM | Phone Withdrawal | ($10.00) | TFN1102 | |
| 11/1/2007 7:11:48 AM | Bills | ($350.00) | | 615 |
| 11/1/2007 7:09:25 AM | Bills | ($10.30) | | 613 |
| 10/31/2007 6:47:13 PM | Phone Withdrawal | ($6.00) | TFN1031 | |
| 10/29/2007 6:27:37 AM | Phone Withdrawal | ($6.00) | TFN1029 | |
| 10/17/2007 6:11:11 PM | Phone Withdrawal | ($12.00) | TFN1017 | |
| 10/11/2007 5:20:32 PM | Phone Withdrawal | ($10.00) | TFN1011 | |
| 10/11/2007 7:03:33 AM | Phone Withdrawal | ($5.00) | TFN1011 | |
| 10/9/2007 8:53:20 PM | Phone Withdrawal | ($7.00) | TFN1009 | |
| 10/9/2007 12:57:06 PM | FRP Unicor Pymt | ($47.28) | IS0002 | |
| 10/8/2007 12:44:58 PM | Phone Withdrawal | ($8.00) | TFN1008 | |
| 9/17/2007 2:05:56 PM | Bills | ($350.00) | | 4313 |
| 9/17/2007 6:21:55 AM | Phone Withdrawal | ($7.00) | TFN0917 | |
| 9/11/2007 7:04:58 AM | Phone Withdrawal | ($47.00) | TFN0911 | |
| 9/7/2007 10:05:33 AM | FRP Unicor Pymt | ($38.80) | IS0075 | |
| 9/5/2007 1:17:36 PM | Subscriptions | ($19.30) | | 3978 |
| 8/28/2007 1:39:36 PM | Bills | ($455.00) | | 3931 |
| 8/28/2007 1:37:34 PM | Bills | ($12.00) | | 3929 |
| 8/28/2007 1:36:45 PM | Bills | ($25.00) | | 3928 |
| 8/28/2007 1:27:22 PM | Bills | ($2.00) | | 3912 |
| 8/22/2007 8:37:16 AM | Bills | ($12.00) | | 3870 |
| 8/16/2007 10:10:31 AM | Inmate Co-pay | ($2.00) | GICP0807 | |
| 8/16/2007 9:58:39 AM | Bills | ($455.00) | | 3810 |
| 8/14/2007 1:09:10 PM | Gift | ($25.00) | | 3780 |
| 8/3/2007 6:07:19 AM | Phone Withdrawal | ($90.00) | TFN0803 | |
| 8/2/2007 6:09:50 AM | Phone Withdrawal | ($3.00) | TFN0802 | |
| 8/1/2007 6:24:09 AM | Phone Withdrawal | ($3.00) | TFN0801 | |
| 7/24/2007 7:39:26 AM | Inmate Co-pay | ($2.00) | GICP0707 | |
| 7/23/2007 6:06:01 AM | Phone Withdrawal | ($25.00) | TFN0723 | |
| 7/21/2007 7:20:56 AM | Phone Withdrawal | ($6.00) | TFN0721 | |
| 7/15/2007 7:12:16 PM | Phone Withdrawal | ($11.00) | TFN0715 | |
| 7/9/2007 1:17:42 PM | Legal Fees | ($5.00) | | 3065 |
| 7/3/2007 11:19:07 AM | Bills | ($5.00) | | 3026 |
| 6/29/2007 7:05:44 AM | Phone Withdrawal | ($20.00) | TFN0629 | |
| 6/26/2007 1:23:52 PM | Bills | ($15.75) | | 2957 |
| 6/26/2007 1:23:01 PM | Bills | ($9.45) | | 2956 |
| 6/19/2007 7:34:27 PM | Phone Withdrawal | ($23.00) | TFN0619 | |

# Inmate Statement

| Inmate Reg #: | 04053164 | Current Institution: | Manchester FCI |
|---|---|---|---|
| Inmate Name: | ANTONELLI, MICHAEL | Housing Unit: | MAN-L-A |
| Report Date: | 11/18/2007 | Living Quarters: | L01-338L |
| Report Time: | 10:31:30 AM | | |

| Alpha Code | Date/Time | Reference# | Payment# | Receipt# | Transaction Type | Transaction Amount | Encumbrance Amount | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| MAN | 11/14/2007 8:36:24 PM | 81 | | | Sales | ($201.20) | | $1,423.44 |
| MAN | 11/14/2007 3:48:45 PM | 855 | 982 | | Bills | ($24.00) | | $1,624.64 |
| MAN | 11/14/2007 3:48:35 PM | 855-V | | | Bills | $24.00 | | $1,648.64 |
| MAN | 11/14/2007 3:48:13 PM | 853 | 981 | | Bills | ($9.60) | | $1,624.64 |
| MAN | 11/14/2007 3:48:03 PM | 853-V | | | Bills | $9.60 | | $1,634.24 |
| MAN | 11/14/2007 3:47:42 PM | 852 | 980 | | Bills | ($48.00) | | $1,624.64 |
| MAN | 11/14/2007 3:47:26 PM | 852-V | | | Bills | $48.00 | | $1,672.64 |
| MAN | 11/14/2007 3:46:59 PM | 851 | 979 | | Bills | ($38.40) | | $1,624.64 |
| MAN | 11/14/2007 3:46:17 PM | 851-V | | | Bills | $38.40 | | $1,663.04 |
| MAN | 11/14/2007 3:45:10 PM | 849 | 978 | | Bills | ($28.80) | | $1,624.64 |
| MAN | 11/14/2007 3:44:58 PM | 849-V | | | Bills | $28.80 | | $1,653.44 |
| MAN | 11/14/2007 7:07:31 AM | | 855 | | Bills | ($24.00) | | $1,624.64 |
| MAN | 11/14/2007 7:05:50 AM | | 853 | | Bills | ($9.60) | | $1,648.64 |
| MAN | 11/14/2007 7:04:59 AM | | 852 | | Bills | ($48.00) | | $1,658.24 |
| MAN | 11/14/2007 7:04:03 AM | | 851 | | Bills | ($38.40) | | $1,706.24 |
| MAN | 11/14/2007 7:02:55 AM | | 850 | | Bills | ($36.00) | | $1,744.64 |
| MAN | 11/14/2007 7:01:49 AM | | 849 | | Bills | ($28.80) | | $1,780.64 |
| MAN | 11/14/2007 7:00:26 AM | | 848 | | Bills | ($9.60) | | $1,809.44 |
| MAN | 11/14/2007 6:58:33 AM | | 846 | | Bills | ($36.00) | | $1,819.04 |
| MAN | 11/14/2007 6:57:16 AM | | 845 | | Bills | ($54.00) | | $1,855.04 |
| MAN | 11/14/2007 6:55:57 AM | | 844 | | Bills | ($24.00) | | $1,909.04 |
| MAN | 11/11/2007 6:52:49 AM | TFN1111 | | | Phone Withdrawal | ($100.00) | | $1,933.04 |
| MAN | 11/11/2007 5:27:46 AM | 70195502 | | | Lockbox - CD | $2,000.00 | | $2,033.04 |
| MAN | 11/11/2007 5:27:46 AM | HMAND001 - 216 | | | Debt Encumbrance | | ($327.94) | ------ |
| MAN | 11/10/2007 6:37:35 AM | TFN1110 | | | Phone Withdrawal | ($10.00) | | $33.04 |
| MAN | 11/9/2007 4:36:51 PM | TFN1109 | | | Phone Withdrawal | ($9.00) | | $43.04 |
| MAN | 11/9/2007 10:57:58 AM | TFN1109 | | | Phone Withdrawal | ($4.00) | | $52.04 |
| MAN | 11/9/2007 8:22:07 AM | IS0009 | | | Payroll - UNICOR | $110.31 | | $111.19 |
| MAN | 11/9/2007 8:22:07 AM | HMAND001 - 188 | | | Debt Encumbrance | | ($22.06) | ------ |
| MAN | 11/9/2007 8:22:07 AM | IS0010 | | | FRP Unicor Pymt | ($55.15) | | $56.04 |
| MAN | 11/2/2007 6:00:54 AM | TFN1102 | | | Phone Withdrawal | ($10.00) | | $0.88 |
| MAN | 11/1/2007 7:11:48 AM | | 615 | | Bills | ($350.00) | | $10.88 |
| MAN | 11/1/2007 7:09:25 AM | | 613 | | Bills | ($10.30) | | $360.88 |

# Memorandum



| Subject | Date |
|---|---|
| Michael Antonelli<br>Reg. No. 04053-164 | December 12, 2007 |

| To | From |
|---|---|
| Memo to File | Anissa N. Hunter *ANH*<br>FOIA Specialist |

On December 12, 2007 at 8:45 a.m., I spoke with Case Manager, Shelly Messer at Manchester FCI regarding the letter that was received by the Commission from inmate, Michael Antonelli (04053-164) on December 11, 2007. The letter expressed outrage that the incorrect information was transmitted from the institution regarding his $10.30 fee that was removed from his books for FOIA documents. The letter also indicated that he wanted the name of the person who conveyed the false information. It was determined after another review of the accounting prison record that the amount of $10.30 was removed from the book.

Ms. Messer was asked to speak with the accounting department to determine whether the monies were converted into a check or money order and made out to the U.S. Treasurer. Ms. Messer advised she would do so and return the call.

At 9:25 a.m., Ms. Messer returned the call and advised that the billing department stated that Mr. Antonelli's purpose type of 'bills' is identified per his instructions and that the amount of $10.30 was made out to the U.S. Treasurer and mailed to the U.S. Parole Commission at 5550 Friendship Boulevard, Chevy Chase, MD. An offer to have the payment traced has been made.

Attachment(s) – 2 pages

**Exhibit** ___35___

12/12/2007  10:24    15    994124    FGI MANCHESTER    PAGE  02/02

Date: 12/12/2007
Time: 9:17:41 am

Facility: MAN

Federal Bureau of Prisons
TRUFACS
Inmate Withdrawal Details Report
Sensitive But Unclassified

Payee First Name: TREASURY
Payee Last Name: OR THE U S
Payee Address 1: 5550 FRIENDSHIP BLVD
Payee Address 2: US PAROLE COMM
Payee City: CHEVY CHASE
Payee State: Maryland
Payee Zip: 20815-0000
Payee Country: United States
Bank Routing #:
Account #:
Account Type:

Inmate Reg. Number: 04053164
Inmate Name: ANTONELLI, MICHAEL
Date/Time: 11/01/2007 07:09:25 AM
System Transaction #: 1433139
Withdrawal Type: Bills
Amount: ($10.30)
Reference #:
YREGDOC #:
Payment #: 613
User Id: MAN2003
Monthly Withdrawal: No
Check Memo:
Comments:

Fax to: Anisa Hunter
301-490-5563

Exhibit    36

Page 1 of 1

Workstation ID: MANH9CK821    UserID: MAN2003

**Hunter, Anissa N. (USPC)**

| | |
|---|---|
| **From:** | Carolyn Sizemore [MAN5006@bop.gov] |
| **Sent:** | Wednesday, December 12, 2007 3:09 PM |
| **To:** | BOPMDSGWDO.BOPMDSGWPO.MAN9303 |
| **Subject:** | Re: ANTONELLI, Michael #04053-164 |

Sheila,

That check was issued on November 5, 2007 and has been returned to the Austin Financial Center for cancellation. The money will be returned to his account once that process is complete, generally 3-4 weeks. The PACER system does not indicate a reason for the check return nor the date of the return. If I can help further, let me know. Have a good day.

>>> Sheila Messer 12/12/2007 2:39 PM >>>
Carol,

The U.S. Parole Commission would like to have payment #613 traced on inmate Antonelli #04053-164. He is indicating he paid them $10.30 for copies and Mitch said the check was made out the U.S. Treasury but the Parole Commission is saying they have not received payment. Let me know if you need anything else.

Thanks,
Shelia

Note: "This message is intended for official use and may contain SENSITIVE information. If this message contains SENSITIVE information, it should be properly delivered, labeled, stored, and disposed of according to policy."

**Exhibit** _37_

1



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

December 20, 2007

Mr. Michael C. Antonelli
Reg. No. 04053-164
Manchester FCI
P. O. Box 4000
Manchester KY  40962

**Re:  Your Disclosure Request**

Dear Mr. Antonelli:

This is in response to your request of February 15, 2007 received on March 6, 2007 for copies of documents from your parole file.  The terms of your request cover:

Copies of all documents contained in the U.S. Parole Commission's file.

The Commission is disclosing all of the documents you requested which are in your active file as of the date of this response, <u>except</u> those documents or portions of documents listed below.

Because of safety and security reasons, Bureau of Prisons policy prohibits inmates from obtaining or possessing copies of presentence reports or any document that states reasons for a sentencing decision.  Therefore, this disclosure does not include such documents.  You may obtain access to these documents through your institutional unit staff.

Because the Parole Commission is exempt from the access provisions of the Privacy Act, this disclosure is made under the Freedom of Information Act (FOIA).

Under the FOIA, a document or portion thereof, may be withheld if protected by any of the FOIA exemptions. These exemptions can be found at 5 U.S.C. Section 552(b)(1)-(9).

**The following documents have been withheld on the basis of the FOIA exemptions cited below:**

<u>1. Letter dated March 1, 1979 (2 pages)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others

**Exhibit    38**

**Portions of the following documents have been withheld on the basis of the FOIA exemptions** cited below:

<u>1. Certification of Identity (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>2. Evergreen Park Police Report (3 pages)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>3. U.S.P.C. Fax dated February 3, 1997 (3 pages)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>4. Palos Heights Police Report (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>5. U.S. District Court letter dated December 16, 1996 (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>6. U.S.P.C. letter dated June 17, 1998 (3 pages)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>7. Chicago Police Report (2 pages)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>8. Medical Examiner's Certificate of Death (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>8. Written Authorization Release (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>10. Burbank Police Report (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>11. U.S.P.C. Memo (1 page)</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

<u>12. Revocation Summary (10 pages) dated October 14, 1987</u>
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

Other material has been provided to the originating agency for a reply directly to you:

## AGENCY NAME

Executive Office for U.S. Attorneys (2 pages)
Washington, D.C. 20530

Federal Bureau of Investigation (180 pages)
Washington, D.C. 20535

Bureau of Prisons (529 pages)
Washington, D.C. 20534

U.S. Marshals Service (23 pages)
Arlington, VA 22202-4210

Office of Information and Privacy (2 pages)
Washington, DC 20530

CSOSA (68 pages)
Washington, D.C. 20004

If you are dissatisfied with my action on this request, you have **thirty (30) days from the date of this letter** to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

*Rockne Chickinell*

Rockne J. Chickinell
General Counsel

Enclosures - 2,712 pages

ANH

Office of the Chairman - Suite 420                    December 26, 2007
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland   20815

                            RE:   12/20/07 FOIA release

Dear Sir:

        This is an appeal under the Freedom of Information Act.

        By letter and enclosures dated December 20, 2007 the Parole
Commission released 2712 pages of material to me with excisations
and deletions, some in full and some in part denied under a variety
of claimed exemptions.

        I appeal those withholdings as arbitrary and capricious action
by the Parole Commission.

        The burden is an the agency to show the withheld material
actually fits within the parameters of the exemptions claimed.  The
Parole Commission has not met that burden.

        I ask for itemization and indexing supported by sworn Vaughn
affidavits.

        I also appeal the fact that you have totally ignored the
request to provide me with a copy of each and every parole hearing
tape recording including the last one dated May 21, 2007.

        In essence, you are in gross derrogation of the FOIA.

                                    Sincerely,

RECEIVED
JAN 0 7 2008
U.S. Parole Commission
Legal

                                    Michael Antonelli
                                    04053-164
                                    Federal Correctional Institution
                                    Box 4000
                                    Manchester, Kentucky   40962

cc: file

                            Exhibit  39

BARRY S. PECHTER
Attorney at Law
10135 S. Roberts Road • Suite 205
Palos Hills, Illinois 60465

BEDFORD PARK IL 604
02 JAN 2008 PM 3 L

United States Dept. of Justice
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland
20815-7201

20815+7201

BARRY S. PECHTER
ATTORNEY AT LAW
CLIENTS FUND ACCOUNT
10135 S ROBERTS RD. SUITE 205
PALOS HILLS, IL 60465

1148

70-585
719

PAY TO THE
ORDER OF _U.S. Parole Commission_

_Thirty and 00/100_ DOLLARS

STANDARD BANK AND TRUST CO.

DATE _1-2-08_

$_30.00_

FOR _Michael Anthony #01_

⑆001148⑆ ⑆071904363⑆ 540112500⑆

Exhibit _40_



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the Chairman*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5990*
*Facsimile: (301) 492-5307*

February 8, 2008

Michael Antonelli
Register Number 04053-164
Federal Correctional Institution
Box 4000
Manchester, KY 40962

Re: Your FOIA appeal of December 26, 2007

Dear Mr. Antonelli:

This letter is in response to your appeal of December 26, 2007 regarding the withholding of records you requested under the Freedom of Information Act. The appeal was received by the Commission's FOIA unit on January 7, 2008. By a letter dated February 15, 2007 you requested that the Commission provide you with copies of all records in your parole file. In a response dated December 20, 2007, the Commission's General Counsel provided you with 2,712 pages of documents, withheld from disclosure one document, and portions of 12 other documents. In your appeal, you claim that the withholdings were arbitrary and capricious and that the Commission failed to comply with your request for copies of tape recordings of all your hearings.

After reviewing your appeal, I am providing you with a copy of the letter dated March 1, 1979 that had been withheld in the December 2007 response. The letter is provided to you without any excisions. I am also giving you 2 pages of documents appended to a USPC fax cover sheet dated February 3, 1997. These two pages are provided without any excisions. I am affirming the withholding of telephone and fax numbers on the fax cover sheet. In addition to the exemptions previously identified for the withholding of the numbers (5 U.S.C. §552(b)(6) and (b)(7)(C)), I also find that this information may be withheld pursuant to 5 U.S.C. §552(b)(2) (matters that relate to the internal personnel practices of an agency). I am also giving you information contained in the Burbank, Illinois Police Department report dated October 18, 2001 that was previously withheld from you, namely the available times for reaching the complainant named in that report and the entries regarding the sex/race of the listed witnesses. Otherwise, the withholdings of personal information in that report are affirmed under exemptions (b)(6) and (b)(7)(C).

I am also providing you with 71 pages of documents that were previously referred to the Court Services and Offender Supervision Agency of the District of Columbia for disclosure review. These

**Exhibit** ___41___

02/08/08

documents were returned to the Commission for its action. No information has been exempted from disclosure regarding these documents.

The Commission's FOIA unit is acquiring any available tapes of your hearings for duplication. Some tapes may no longer be retrievable because of the passage of time and the routine destruction of archived records. Copies of retrieved tapes will be given to you in a supplemental response to your appeal, with any appropriate exemptions applied to the recordings.

With respect to the other information withheld in portions of the documents listed in the December 2007 response, I am affirming the withholdings as properly made under exemptions (b)(6) and (b)(7)(C).

Neither your initial request nor your appeal identifies the public interest that would be served by the disclosure of the records you seek. This public interest must be related to the core purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989). Because you have failed to demonstrate that such a public interest outweighs the privacy interests related to the withheld information, your appeal is denied.

You may seek judicial review of this decision by filing a complaint in a U.S. District Court where you reside or have your principal place of business, where the agency records are located, or in the District of Columbia. See 5 U.S.C. §552(a)(4)(B).

Sincerely,

Edward F. Reilly, Jr.
Chairman
U.S. Parole Commission

EFR/rjc

02/08/08

## REFERENCE REQUEST—FEDERAL RECORDS CENTERS

**NOTE: Use a separate form for each request.**

### SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| 438-96-009 | 54 OF 75 | 5 /47-53-4-5 |

DESCRIPTION OF RECORD(S) OR INFORMATION REQUESTED

1 TAPE

*Michael Antondli*

*04053-164*

TAPE 60013 10/30/87

File:
Reg No.:

**REMARKS**  PLEASE FEDEX.  OUR FEDEX ACCOUNT NUMBER IS: 1510-3462-4

Thank you in advance for your prompt response.

For (          )

NATURE OF SERVICE
☐ FURNISH COPY OF RECORD(S) ONLY    ☐ PERMANENT WITHDRAWAL    ☐ TEMPORARY LOAN OF RECORD(S)    ☐ REVIEW    ☐ OTHER (Specify)

### SECTION II—FOR USE BY RECORDS CENTER

REMARKS

☐ RECORDS NOT IN CENTER CUSTODY    ☐ RECORDS DESTROYED

☐ WRONG ACCESSION NUMBER—PLEASE RECHECK

☐ WRONG BOX NUMBER—PLEASE RECHECK

☐ WRONG CENTER LOCATION—PLEASE RECHECK

☐ ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS REQUESTED

☐ RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date):

069074

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | 1-18-08 | | | DC |

### SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

NAME OF REQUESTER   *Quisser Hunter*

TELEPHONE NO. ☐ FTS   DATE
301-492-5831   1/17/08

RECEIPT OF RECORDS

NAME AND ADDRESS OF AGENCY
(Include street address, building, room no. and ZIP Code)

**U.S. PAROLE COMMISSION**
**5550 Friendship Blvd., Suite 420**
**Chevy Chase, MD  20815-7201**

Requester please sign, date and return this form, for the item(s) listed above, ONLY if the block to right has been checked by the Records Center.   ☐

SIGNATURE                          DATE

NSN 7540-00-682-6423
5011-108

PREVIOUS EDITION USABLE

Exhibit  42

OPTIONAL FORM 11 (Rev. 7-8
NATIONAL ARCHIVES AN
RECORDS ADMINISTRATI
36 CFR 1228.1

01/17/08  11:42 FAX 301 49~ 5563   US PAROLE COMMISSION   ☒003

APPROVED

## REFERENCE REQUEST—FEDERAL RECORDS CENTERS

NOTE: Use a separate form for each request.

### SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| 438-91-022 | 52 of 54 | T4183:37-1-1 2|03-50-1-1 |

DESCRIPTION OF RECORD(S) OR INFORMATION REQUESTED

1 TAPE

*Michael Antonelli*
*04053-164*
*TAPE 6-7715  11/17/89*

File:
Reg No.:

REMARKS   PLEASE FEDEX.  OUR FEDEX ACCOUNT NUMBER IS: 1510-3462-4-

Thank you in advance for your prompt response.

For (        )

NATURE OF SERVICE
☐ FURNISH COPY OF RECORD(S) ONLY   [ ] PERMANENT WITHDRAWAL   ☐ TEMPORARY LOAN OF RECORD(S)   ☐ REVIEW   ☐ OTHER (Specify)

### SECTION II—FOR USE BY RECORDS CENTER

REMARKS

☐ RECORDS NOT IN CENTER CUSTODY   ☐ RECORDS DESTROYED

☐ WRONG ACCESSION NUMBER—PLEASE RECHECK

☐ WRONG BOX NUMBER—PLEASE RECHECK

☐ WRONG CENTER LOCATION—PLEASE RECHECK   069077

☐ ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS REQUESTED

☐ MISSING (Neither record(s), information nor charge card found in container(s) specified)

☒ RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date):

*Cage 1-5-95*

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | 1-23 | | | JH |

### SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

| NAME OF REQUESTER  *Drusser Hunter* | TELEPHONE NO. ☐ FTS  301-492-5831 | DATE  1/17/08 | RECEIPT OF RECORDS |
|---|---|---|---|

NAME AND ADDRESS OF AGENCY
(include street address, building, room no. and ZIP Code)

**U.S. PAROLE COMMISSION**
**5550 Friendship Blvd., Suite 420**
**Chevy Chase, MD  20815-7201**

Requester please sign, date and return this form, for the item(s) listed above, ONLY if the block to right has been checked by the Records Center.   ☐

| SIGNATURE | DATE |
|---|---|

NSN 7540-00-682-6423
5011-106

PREVIOUS EDITION USABLE

**Exhibit ___43___**

OPTIONAL FORM 11 (Rev. 7-~
NATIONAL ARCHIVES AN
RECORDS ADMINISTRATI
36 CFR 1228.1

7/17/08  11:42 FAX 301 492   63      US PAROLE COMMISSION                      ☒004

# REFERENCE REQUEST—FEDERAL RECORDS CENTERS

NOTE: Use a separate form for each request.

### SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| ACCESSION NO. 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 | OF 75 | 01 /79:35-3.6 |

IPTION OF RECORD(S) OR INFORMATION REQUESTED

1 TAPE

*Michael Cantonelli*
04053-164
TAPE: 75072
6/10/96

File:
Reg No.:

REMARKS  PLEASE FEDEX.   OUR FEDEX ACCOUNT NUMBER IS: 1510-3462-4.

Thank you in advance for your prompt response.

For (          )

RE OF SERVICE
FURNISH COPY OF            [ ] PERMANENT      [ ] TEMPORARY              [ ] REVIEW          [ ] OTHER
RECORD(S) ONLY                 WITHDRAWAL          LOAN OF RECORD(S)                             (Specify)

### SECTION II—FOR USE BY RECORDS CENTER

REMARKS

RECORDS NOT IN CENTER CUSTODY   [ ] RECORDS DESTROYED

WRONG ACCESSION NUMBER—PLEASE RECHECK

WRONG BOX NUMBER—PLEASE RECHECK

WRONG CENTER LOCATION—PLEASE RECHECK                                    069076

ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS
REQUESTED

MISSING (Neither record(s), information nor charge card found in
container(s) specified)  *Tapes in this Accession start with 759 NOT 750*

RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date)

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | 1-23 | | | JH |

### SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

| | TELEPHONE NO. 301-492-5831 | [ ] FTS | DATE | RECEIPT OF RECORDS |
|---|---|---|---|---|

NAME OF REQUESTER  *Quisse Hunter*

NAME AND      U.S. PAROLE COMMISSION
ADDRESS       5550 Friendship Blvd., Suite 420
OF AGENCY     Chevy Chase, MD  20815-7201

1/17/08

Requester please sign, date and return this form, for
file item(s) listed above, ONLY if the block to right has
been checked by the Records Center.

SIGNATURE                                    DATE

NSN 7540-00-682-8423
5011-106

OPTIONAL FORM 11 (Rev. 7—
NATIONAL ARCHIVES AN
RECORDS ADMINISTRATI
36 CFR 1228.1

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

January 30, 2008

CSOSA
633 Indiana Avenue NW
12th Floor
Washington, DC 20004
Attn: FOI/PA Section

RE:    Michael Antonelli
       Reg. No. 04053-164

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

- 1 -

**Exhibit    45**

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

---

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

January 30, 2008

Office of Information & Privacy
Suite 11050
1425 New York Avenue
Washington, DC 20530

**RE:    Michael Antonelli**
**Reg. No. 04053-164**

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

**Exhibit   46**

-2-



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

---

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

January 30, 2008

Federal Bureau of Investigation
J. Edgar Hoover Building, Room 6296
Washington, DC 20535
Attn: Chief, FOI/PA Section

**RE:**  **Michael Antonelli**
**Reg. No. 04053-164**

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

**Exhibit  47**



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_____

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

January 30, 2008

Executive Office for U.S. Attorneys
Bicentennial Building, Room 7100
Washington, DC 20530
Attn: Attorney-in-Charge

RE:    **Michael Antonelli**
       **Reg. No. 04053-164**

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

Exhibit ___48___



**U.S. DEPARTMENT OF JUSTICE**
United States Parole Commission

---

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

January 30, 2008

U.S. Marshals Services
Office of General Counsel
CS-3, 12th Floor
Washington, DC 20530-1000
Attn: FOI/PA Officer

**RE:**   **Michael Antonelli**
          **Reg. No. 04053-164**

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

**Exhibit   49**

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_Office of the General Counsel_

_5550 Friendship Boulevard_
_Chevy Chase, Maryland 20815-7201_

_Telephone: (301) 492-5959_
_Facsimile: (301) 492-5563_

January 30, 2008

Bureau of Prisons
320 First Street NW
HOLC Building, Room 738
Washington, DC 20534
Attn: Administrator for FOIA

**RE:    Michael Antonelli**
         **Reg. No. 04053-164**

Dear Sir or Madam:

This correspondence concerns the disposition status of the above-referenced Freedom of Information Act (FOIA) request which was referred to your office on December 20, 2007.

The request covered all documents contained in the U.S Parole Commission's file. Because some of the requested records originated with your agency, these records were forwarded to your office for disclosure processing and preparation of a direct response to the requester.

Please provide the Commission with a copy of your response to the requester including any explanation of exemptions. If your agency has yet to respond to the requester, could you provide an estimated date of when you expect to complete your response to the requester? The Commission is presently in litigation with the requester concerning the response to this request.

Should you have any questions, please feel free to contact me at 301/492-5959 x237.

Sincerely,

Anissa N Hunter
FOIA Specialist
U.S. Parole Commission

ANH

Exhibit ___50___

U.S. Department of Justice

Office of Information and Privacy

_____

Telephone: (202) 514-3642

Washington, D.C. 20530

FEB  7 2008

Mr. Michael Antonelli
Register No. 04053-164
FCI Manchester
Federal Correctional Institution
P.O. Box 4000
Manchester, KY 40962

Re:    OIP/08-R0215
        CLM:VRB:NCJ

Dear Mr. Antonelli:

While processing your Freedom of Information Act request dated August 17, 2006, for a copy of all records pertaining to yourself, the United States Parole Commission (USPC) referred two documents, totaling two pages to this Office for processing and direct response to you. For your information, this material was received in this Office on January 11, 2008. This response is made on behalf of the Office of Information and Privacy.

Upon review of the referred material, I have determined that only one document is identifiable to you. Accordingly, we have processed this responsive document and are releasing it without excision. A copy is enclosed.

If you are not satisfied with my action on your request, you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, within sixty days from the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Carmen L. Mallon
Chief of Staff

Enclosure

Exhibit ___51___



# UNITED STATES MARSHALS SERVICE
## Office of General Counsel
### FREEDOM OF INFORMATION/PRIVACY ACT UNIT
Washington DC 20530-1000

## Office: (202) 307-9056 Facsimile: (202) 307-8544

TO:     Anissa N. Hunter

FROM:   Tracy Rogers   (202) 307-9056

DATE:   February 25, 2008

NUMBER OF PAGES: 2 EXCLUDING COVER SHEET

PHONE NUMBER:

**Ref:** Michael Antonelli

Per our telephone conversation, attached is a copy of USMS disclosure letter relevant to the 23 documents referred by your agency. If you have any questions, please feel free to give me a call.

Warning: MANY FACSIMILE MACHINES PRODUCE COPIES ON THERMAL PAPER. THE IMAGE PRODUCES IS HIGHLY UNSTABLE AND WILL DETERIORATE SIGNIFICANTLY IN A FEW YEARS. IT SHOULD BE COPIED ON A PLAIN PAPER COPIER PRIOR TO FILING AS A RECORD.

Exhibit ___52___



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

February 4, 2008

Michael Antonelli
Reg. No. 04053-164
FCI Manchester
P.O. Box 4000
Manchester, KY  40962

### Freedom of Information/Privacy Act Request No.: 2008USMS11358

Dear Mr. Antonelli:

The United States Marshals Service received 23 documents referred from the United States Parole Commission for disclosure processing and direct response to you.  Upon reviewing these documents, we note that two documents originated with the Federal Bureau of Prisons (BOP). Under 28 C.F.R. § 16.42(c), we are referring these documents to the originating agency for review and direct response to you.  The remaining 21 documents are being released to you; however, the names and information concerning government employees, and the names of third party individuals are being withheld under exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C).

Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes, to the extent that the production of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  See also Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989).  A discretionary release of such records would be in violation of the Privacy Act of 1974, 5 U.S.C. § 552a.

If you are dissatisfied with my action on this request, you may appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, Room 11050, NYAV Building, Washington, D.C. 20530, within 60 days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be

available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

Sincerely,

William E. Bordley
Associate General Counsel / FOIPA Officer
Office of General Counsel

Enclosure(s)

# Memorandum



| Subject | Date |
|---|---|
| Michael Antonelli 04053-164<br>Follow-up of FOIA Referrals | February 26, 2008 |

| To | From |
|---|---|
| Rockne J. Chickinell<br>General Counsel<br>U.S. Parole Commission | Anissa N Hunter<br>FOIA Specialist<br>U.S. Parole Commission |

On Monday, February 25, 2008, I contacted the following agencies in reference to FOIA referral documents sent on December 20, 2007 in reference to Michael Antonelli's FOIA request dated February 17, 2007.

**Office of Information and Privacy**
**Contact:** Natasha Jahangiri
**Action:** Fax was sent reflecting OIP's disclosure determination

**Bureau of Prisons**
**Contact:** William Baumgartel
**Action:** Mr. Baumgartel was unsure if the referral was received and would contact me with the status after some researching. A new copy of all 529 documents may need to be re-sent to BOP

**Executive Office of U.S. Attorney**
**Contact:** Manashe Boehm
Action: Will work on the referral by the end of the week and advise determination

**CSOSA**
**Contact:** Renee Barley
**Action:** All referred documents were returned due to not belong to CSOSA. They were disclosed to Mr. Antonelli in appeal

**U.S. Marshals**
**Contact:** Tracy Rogers
**Action:** Fax was sent reflecting USM's disclosure determination

**Exhibit** 53

**Federal** Bureau of Investigation
**Contact**: Debbie Lopez
**Action**: Voicemail message was left requesting status

/anh

02/26/08

**Hunter, Anissa N. (USPC)**

| | |
|---|---|
| **From:** | Ron Hill [rxHill@bop.gov] |
| **Sent:** | Tuesday, February 26, 2008 2:03 PM |
| **To:** | Hunter, Anissa N. (USPC) |
| **Subject:** | Re: FOIA REFERRAL |

Anissa,

The BOP received this referral on December 27, 2007 and assigned it request number 2008-04410. It was assigned to a staff member for processing. We process requests on a first-in, first-out basis. Currently, this staff member has 40 requests in front of this one to process. If you need any additional information, please let me know. Thanks, Ron

Ron Hill
Office of General Counsel
FOIA/PA Administrator
Federal Bureau of Prisons
202-514-8984

SENSITIVE/PRIVILEGED COMMUNICATION
The information contained in this electronic message and any and all accompanying documents constitutes sensitive information. This information is the property of the U.S. Department of Justice. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.

>>> "Hunter, Anissa N. (USPC)" <Anissa.Hunter@usdoj.gov> 02/25/08 10:21
>>> AM >>>

William,

This correspondence is a follow-up on a referral sent to BOP on December 20, 2007. The U.S. Parole Commission is trying to determine whether the BOP responded and/or disclosed any of the referred 529 pages of documents. Could you please advise as soon as possible of what the status is? We are currently in litigation with this offender and we are trying to advise the court what the status is for all referrals. If there is a need for another copy of the referred documents to be sent, please let me know.

I have attached a copy of the referral letter sent to your office as well as the requestor's request.

Thanks for your help.

1

**Exhibit 54**

# REFERENCE REQUEST—FEDERAL RECORDS CENTERS

NOTE: Use a separate form for each request.

## SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| 438- 96 - 0014 | 12 OF 15 | 01 1 79-35-3.6 |

DESCRIPTION OF RECORD(S) OR INFORMATION REQUESTED

1 TAPE

*Michael Antonelli*
*9/29/93*
*PR 88677*

File:
Reg No.:

REMARKS

PLEASE FEDEX.  OUR FEDEX ACCOUNT NUMBER IS: 1510-3462-4.

Thank you in advance for your prompt response.

For (          ).

NATURE OF SERVICE
- [ ] FURNISH COPY OF RECORD(S) ONLY
- [ ] PERMANENT WITHDRAWAL
- [ ] TEMPORARY LOAN OF RECORD(S)
- [ ] REVIEW
- [ ] OTHER (Specify)

## SECTION II—FOR USE BY RECORDS CENTER

REMARKS

- [ ] RECORDS NOT IN CENTER CUSTODY   [ ] RECORDS DESTROYED
- [ ] WRONG ACCESSION NUMBER—PLEASE RECHECK
- [ ] WRONG BOX NUMBER—PLEASE RECHECK
- [ ] WRONG CENTER LOCATION—PLEASE RECHECK
- [ ] ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS REQUESTED
- [ ] MISSING (Neither record(s), information nor charge card found in container(s) specified)
- [ ] RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date):

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | | | | |

## SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

NAME OF REQUESTER AN HUNTER

TELEPHONE NO. [ ] FTS  301-492-5831

DATE 1 / 1

DATE 2/28/08

RECEIPT OF RECORDS

NAME AND ADDRESS OF AGENCY
(include street address, building, room no. and ZIP Code)

U.S. PAROLE COMMISSION
5550 Friendship Blvd., Suite 420
Chevy Chase, MD 20815-7201

Requester please sign, date and return this form, for file item(s) listed above, ONLY if the block to right has been checked by the Records Center.  [ ]

| SIGNATURE | DATE |
|---|---|
| | |

NSN 7540-00-682-6423
5011-108

PREVIOUS EDITION USABLE

Exhibit ___55___

OPTIONAL FORM 11 (Rev. 7-)
NATIONAL ARCHIVES AI
RECORDS ADMINISTRATI(
36 CFR 1228.1



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

March 11, 2008

MR. MICHAEL CARMIE ANTONELLI
**04053-164
P.O. BOX 34550
FCI MEMPHIS
MEMPHIS, TN 38134

                                        Request No.:  1104813- 000
                                        Subject: ANTONELLI, MICHAEL

Dear Mr. Antonelli:

   While processing your Freedom of Information-Privacy Acts (FOIPA) request, the U.S. Parole Commission located FBI information in their records.  This material was referred to the FBI for direct response to you.

   Enclosed are copies of the referred material.  Deletions have been made pursuant to Title 5, United States Code, Section(s)  552/552a as noted below.  See the enclosed form for an explanation of these exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

    180  pages were reviewed and  97  pages are being released.

   You may appeal any denials by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001, within sixty days from the date of this letter.  The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal."  Please cite the FOIPA number assigned to your request so that it may easily be identified.

   In addition, the enclosed documents contain information from an identification record or "rap sheet" in the FBI's Central Records System (CRS) files.  The FBI has released this information as it existed when it was placed in the CRS file; it may or may not reflect current information.  If you want an up to date copy of the "rap sheet", please submit a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarskburg, West Virginia 26306.   Each request must have proof of identity which shall consist of name, date and place of birth and a set of rolled-ink fingerprint impressions placed upon forms commonly used for applicant or law enforcement purposes, plus payment of $18.00 in the form of a certified check or money order, payable to the Treasury of the United States.  Fingerprint impressions are needed for comparison with records in the Criminal Justice Information Services (CJIS) Division to ensure that an individual's identification record is not disseminated to an unauthorized person.

                                        **Exhibit** ____56____

MR. MICHAEL CARMIE ANTONELLI

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosures

## EXPLANATION OF EXEMPTIONS

## SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or            foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the     matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for            withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement            records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person     of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal            privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or     authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled     by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security   intelligence investigation, information furnished by a confidential source, ( E ) would disclose investigative techniques and procedures for law     enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such     disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or     physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for     the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

## SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce     crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign            policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or            privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her            identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual            pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian     employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished            information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government     service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the     person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ



RECEIVED

MAR 2 1 2008

U.S. Parole Commission
Legal

**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

Date:       March 11, 2008

To:         UNITED STATES PAROLE COMMISSION
            5550 FRIENDSHIP BOULEVARD
            CHEVY CHASE, MARYLAND 20815

From:       David M. Hardy, Section Chief
            Record/Information Dissemination Section (RIDS)
            Records Management Division

Subject:    FOI/PA Request of Michael Antonelli, Reg. No. 04053-164
            FBI FOI/PA #1104813- 000 ___ Re: Self ___

          This is in response to your correspondence dated December 20, 2007 and January 30,
2008 requesting the FBI make a disclosure determination and respond directly to the requester concerning
information referred by your agency. We reviewed the material and determined that, although there are FBI
equities, this material originated with your agency. Therefore, we are returning these documents
comprising 76 pages along with our recommendations to withhold FBI information pursuant to subsections'
b2, b6 & b7C of Title 5, United States Code, Section 552/552a. Enclosed for your records is a copy of our
response to the requester.

          The requester may appeal any denials made by the FBI. In your response please advise the
requester the appeal should be directed in writing to the Director, Office of Information and Privacy, U.S.
Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty
days from the receipt of your letter. The envelope and the letter should be clearly marked "Freedom of
Information Appeal" or "Information Appeal" and the FBI's FOIPA number should be cited.

          Please call Vicki Hux of my staff at (540) 868- 4178 if you have any questions.

Enclosures

**Exhibit** ___57___



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301)492-5821
Facsimile: (301)492-5525

March 28, 2008

Mr. Michael C. Antonelli
Reg. No. 04053-164
Memphis FCI
P O Box 34550
Memphis, TN  38134

**Re:  Your Disclosure Request**

Dear Mr. Antonelli:

This letter is in further response to your request dated February 17, 2007 for documents and tapes.

The Commission is disclosing a one-page e-mail message from Case Analyst, Lynne Jenkins dated December 19, 2006.

Under the FOIA, a document or portion thereof, may be withheld if protected by any of the FOIA exemptions. These exemptions can be found at 5 U.S.C. Section 552(b)(1)-(9).

The office telephone numbers have been withheld on the basis of the FOIA exemptions cited below:

1. U.S.P.C. Memorandum dated December 19, 2006 (1 page)
(b)(6)-Clearly unwarranted invasion of personal privacy of others
(b)(7)(C)-unwarranted invasion of personal privacy of others

The Commission is also providing you with copies of hearing tapes for hearings conducted on September 29, 1993 and December 13, 1994.

With regard to the tapes of your other hearings, these tapes are not available for copying and disclosure. In some cases, records of the transfer of the tapes to the Washington Records Center could not be found. In others, the Center reported that the tapes were missing or sent to a Commission office that is now closed.

An examination of the tape of your hearing dated May 21, 2007 showed no recording of the proceeding, with the exception of the hearing examiner's statement of your name. The Commission is still waiting for a response from the Center for the tapes of hearings conducted on December 12, 1991 and May 21, 1997.

**Any copies of documents provided in previous FOIA responses are not included in this response.**

**Exhibit**  58

If you are dissatisfied with my action on this request, you have thirty (30) days from the date of this letter to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

Rockne Chickinell

Rockne J. Chickinell
General Counsel

Enclosures - 1 page

ANH



**U.S. Department of Justice**

Federal Bureau of Prisons

RECEIVED

MAR 2 7 2008

U.S. Parole Commission
Legal

*Washington, DC 20534*

March 3, 2008

Michael Antonelli
Reg. No. 04053-164
FCI Memphis
P.O. Box 34550
Memphis, TN 38134

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street. N.W.
Room 841, HOLC Building
Washington, D.C. 20534
Attn: FOI/Privacy Office

RE:  Request for Information, BOP FOIA Request No. 08-04410

Dear Mr. Antonelli:

While the United States Parole Commission was responding to your Freedom of Information Act (FOIA) request, 529 pages of Bureau of Prisons document were discovered. Those documents were referred to this agency for a release determination.

After a careful review, we have determined 320 pages are releasable in their entirety. The remaining 209 pages are copies of your Pre-Sentence Reports, which you can gain access to at your local institution. To utilize this local access procedure, simply contact a member of your Unit Team.

In accordance with 28 C.F.R. Section 16.11(a), these 320 pages of documents will be released to you, after receipt of a check or money order payable to the Treasury of the United States, in the amount of $22.00 ($.10 a page after the first 100 pages, which are furnished without duplication cost). Please submit you payment within thirty days [April 2, 2008].

I trust this has been responsive to your request.

Sincerely,

Wanda M. Hunt
Chief, FOIA/PA Section

Exhibit ___59___

 

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301) 492-5821
Facsimile: (301) 492-5525

April 3, 2008

Mr. Michael C. Antonelli
Reg. No. 04053-164
Memphis FCI
P O Box 34550
Memphis, TN 38134

**Re: Your Disclosure Request**

Dear Mr. Antonelli:

This is in response to your request dated February 17, 2007 for documents and tapes.

The Commission is disclosing a copy of the audio recording of your hearing held on May 21, 1997.

**Any copies of documents and/or tapes provided in previous FOIA responses are not included in this response.**

If you are dissatisfied with my action on this request, you have thirty (30) days from the date of this letter to appeal this decision to the Chairman of the U.S. Parole Commission. An appeal to the Chairman must be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Suite 420, Chevy Chase, MD 20815.

Sincerely,

Anissa N. Hunter
FOIA Specialist

Enclosures –2 tapes

ANH

**Exhibit** _60_

APR 1 4 2008

Office of the Chairman, Suite 420
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815

April 8, 2008

APR 1 6 2008

Dear Chairman:

This is an appeal under the Freedom of Information Act.

I appeal the release of records to me of March 28, 2008 as arbitrary and capricious.

First of all, I appeal the deletion of the Case Analyst memo of the office phone numbers withheld.  These are public records and Parole Commission employees are public employees.  The phone numbers must be released to the general public.

As for the missing tapes mentioned I appeal the fact that the Commission has not abided by the FOIA in that I want to be notified exactly when they were destroyed, when they were transfered and to who, what procedure was used if they were destroyed and why, and of course who did it.

As for my May 21, 2007 hearing, I want to know the answers to all the above questions also.  In any event, I want the tape that you say mentions nothing but my name.  I also ask that you keep the original tape because I am seeking a court order compelling it to be relinquished so I can have it analyzed.  So, do not destroy the evidence please.  I believe some Commission employee has tampered with or intentionally sabotaged the tape.

As for the December 12, 1991 and May 21, 1997 tapes, I appeal the unreasonable delay in processing them.

Sincerely,

Michael Antonelli
No. 04053-164
Federal Correctional Institution
Box 34550
Memphis, Tennessee
                                    38134

cc : file

**Exhibit** 61

April 18, 2008

Chairman
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland 20815

RE: 4/3/08 release of tapes

RECEIVED
APR 28 2008
LEGAL
U.S. PAROLE COMMISSION

Dear Sir:

This is an appeal under the FOIA.

I appeal your release of tapes to me on the above date as superficial, insufficient and the result of poor search.

I specificly asked for all tapes ever recorded in connection to me.

Most specifically, I need also the tape of May 21, 1997 that contains the testimony of adverse witness NANCY ANTONELLI. She has long ago signed a release. So did James Valona who was mentioned in that tape.

Therefore, your release is the result of arbitrary & capricious action of the Commission.

Kindly send me every tape.

Sincerely,

Michael Antonelli
No. 04053-164
Federal Correctional Institution
Box 34550
Memphis, Tennessee      38134

cc : file

Exhibit __62__



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the Chairman*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5990*
*Facsimile: (301) 492-5307*

June 9, 2008

Michael C. Antonelli
Reg. No. 04053-164
Federal Correctional Institution
P.O. Box 34550
Memphis, TN 38134

Re: Appeals dated April 8 and 18, 2008

Dear Mr. Antonelli,

This letter is in response to appeals dated April 8 and 18, 2008. With regard to the withholding of office phone numbers on Case Analyst Jenkins, the decision to withhold this information is affirmed on the basis of 5 U.S.C. §552(b)(2) (internal practices of an agency), and 5 U.S.C. §552(b)(6) and (7)(C). FOIA exemptions (b)(6) and (7)(C) safeguard personal privacy interests and may be used to protect law enforcement personnel from the potential harassment that may occur if office phone numbers were disclosed.

With regard to the tapes of your hearings, the Commission has conducted a reasonable search for the tapes of your hearings and has disclosed to you copies of those tapes that are available. The actions taken by the Commission in response to your request for the tapes satisfy the requirements of the FOIA.

With this response, I am providing you with a copy of the tape recording dated May 21, 2007. I have been informed that when the Commission's FOIA officer reviewed this tape some weeks ago, the only recording on the tape was the hearing examiner's statement of your name. When the FOIA officer later reviewed the same tape, she discovered that the tape now contains no recording of any voice. It appears that the recording of your name was inadvertently erased in reviews of the tape that took place in preparing the Commission's response to your FOIA complaint in U.S. District Court.

Neither your initial request nor your appeal identifies the public interest that would be served by the disclosure of the available records you seek. This public interest must be related to the core purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989).

**Exhibit** __63__

Because you have failed to demonstrate that such a public interest outweighs the privacy interests related to the withheld information, your appeal is denied.

You may seek judicial review of this decision by filing a complaint in a U.S. District Court where you reside or have your principal place of business, where the agency records are located, or in the District of Columbia. See 5 U.S.C. §552(a)(4)(B).

Sincerely,

Edward F. Reilly, Jr.
Chairman
U.S. Parole Commission

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
MICHAEL C. ANTONELLI,                        )
                                             )
    Plaintiff,                               )
                                             )
        v.                           )    Civil Action No. 07-CV-01932 (CKK)
                                             )
U. S. PAROLE COMMISSION,                     )
                                             )
    Defendant.                               )
_____)

## DECLARATION OF DAVID M. HARDY

    I, David M. Hardy, declare as follows:

    (1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

    (2)    In my current capacity as Section Chief, I supervise approximately 199 employees who staff a total of ten (10) FBIHQ units and field operational service center unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of plaintiff's August 17, 2006 FOIA/Privacy Act request to the United States Parole Commission ("USPC") seeking access to documents about himself. I am also aware of the treatment which has been afforded the 180-pages of material referred on December 20, 2007 from the USPC to the FBI for processing and a direct response to plaintiff. (**See Exhibits A and B.)**

(4)     By memorandum dated March 11, 2008, the FBI returned 76 of the 180 pages to the USPC because that material originated with the USPC although it contained FBI equities. Accordingly, the FBI recommended that the USPC withhold the FBI information pursuant to Exemptions (b)(2), (b)(6), and (b)(7)(C). (**See Exhibit C.)**

(5)     By letter dated March 11, 2008, FBIHQ released 97 of the remaining 104 pages to the plaintiff. Sixty-four pages were released in full; 33 pages were released with partial redaction of information; six pages were withheld in full and one page was not released because it is a

2

duplicate. **(See Exhibit D.)** The undisclosed information was withheld pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(D).

(6)      The purpose of this declaration is to provide the Court and plaintiff with an explanation of the procedures used in the review.and processing of these documents referred from USPC.  In accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides a justification for FBI information which was withheld from disclosure pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), and FOIA Exemptions 6, 7(C), 7(D), and 7(F), 5 U.S.C. §§ 552 (b)(6), (b)(7)C), (b)(7)(D), and (b)(7)(F).[1]

## EXPLANATION OF FORMAT USED FOR THE JUSTIFICATIONS OF DELETED MATERIAL

(7)      All documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA.  Every effort was made to provide plaintiff with all reasonably segregable portions of releasable material.  To further describe the information withheld could identify the material sought to be protected.  Each page of Exhibit D is consecutively numbered "Antonelli 1" through "Antonelli 180" at the bottom right-hand corner of each page.

(8)      Copies of the documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA.  No reasonably segregable, nonexempt portions were withheld from plaintiff.  The coded categories are provided to aid the Court's review of the FBI's explanations of FOIA exemptions used to

---

[1]     The FBI is adding to its prior release Exemption (b)(7)(F) as further grounds for withholding information in the following pages of Exhibit D:  Antonelli 21, 22, 71, 72, 73, 74, 75, 76, 77, 78, 79, and 80.

3

withhold the protected material. Accordingly, a review of this information will reveal that all

material withheld is exempt from disclosure pursuant to one or more FOIA exemptions.

(9)    Each instance of information withheld pursuant to the FOIA on the attached

documents and Deleted Page Information Sheets ("DPIS") is accompanied by a coded

designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1"

appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA

concerning "Unwarranted Invasion of Personal Privacy." The numerical designation, "1"

following the "(b)(7)(C)" narrows the main category to the more specific subcategory, "Names

and/or Identifying Information of FBI Special Agents and Support Personnel." Listed below are

the categories used to explain the FOIA exemptions asserted to withhold this material.

## SUMMARY OF JUSTIFICATION CATEGORIES

| **Category (b)(6)** | **Clearly Unwarranted Invasion of Personal Privacy** |
|---|---|
| (b)(6)-1 | Names and/or Identifying Information of FBI Special Agent and Support Personnel (Cited in conjunction with (b)(7)(C)-1.) |
| (b)(6)-2 | Names and/or Identifying Information of Third Parties who Provided information to FBI. (Cited in conjunction with (b)(7)(C)-2, (b)(7)(D)-1, and (b)(7)(F).) |
| (b)(6)-3 | Names and/or Identifying Information of Third Parties Merely Mentioned  (Cited in conjunction with (b)(7)(C)-3.) |
| (b)(6)-4 | Names and/or Identifying Information of Other Law Enforcement Personnel (Cited in conjunction with (b)(7)(C)-4.) |
| **Category (b)(7)(C)** | **Unwarranted Invasion of Personal Privacy** |
| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agent and Support Personnel (Cited in conjunction with (b)(6)-1.) |
| (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties who |

4

Provided information to FBI (Cited in conjunction with (b)(6)-2, (b)(7)(D)-1, and (b)(7)(F).)

(b)(7)(C)-3    Names and/or Identifying Information of Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-3.)

(b)(7)(C)-4    Names and/or Identifying Information of Other Law Enforcement Personnel (Cited in conjunction with (b)(6)-4.)

**Category (b)(7)(D)**    **Confidential Source Material**

(b)(7)(D)-1    Names, Identifying Data and/or Information Provided by Individuals Under an "Implied" Assurance of Confidentiality (Cited in conjunction with (b)(6)-2 , (b)(7)(C)-2, and (b)(7)(F).)

**Category (b)(7)(F)**    **Endangerment To Life and Physical Safety**

(b)(7)(F)-1    Names and/or Identifying Information Provided by Third Parties Who Provided Information Regarding Criminal Activities (Cited in conjunction with (b)(6)-2, (b)(7)(C)-2, and (b)(7)(D).)

## JUSTIFICATION FOR REDACTIONS

(10)    The paragraphs that follow explain the FBI's rationale for withholding each particular category of information under the specific exemption categories described above.

## PRIVACY ACT EXEMPTION (j)(2)

(11)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component there of which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."

(12)    The investigatory records at issue are part of the FBI's Central Records System ("CRS") and these pages referred to the FBI from USPC were compiled as a result of the FBI's investigation concerning the criminal activities of plaintiff. The 103 pages of the 180 pages

5

referred from USPC are exempt from disclosure under Privacy Act, 5 U.S.C. § 552a (j)(2), in

conjunction with 28 C.F.R. § 16.96.[2]  Although access to the records at issue was denied under

the Privacy Act, the documents referred to the FBI by USPC were processed under the access

provisions of the FOIA for maximum disclosure.

## EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(13)    5 U.S.C. § 552 (b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such information would
constitute a clearly unwarranted invasion of personal privacy.

(14)    When asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appeared on the pages at issue.  When withholding information pursuant

to this exemption, the FBI is required to balance the privacy interests of the individuals

mentioned against any public interest in disclosure.  When making this analysis, the public

interest in disclosure was determined by whether the information in question would inform

plaintiff or the general public about the FBI's performance of its mission to protect and defend

the United States against terrorist and foreign intelligence threats, to uphold and enforce the

criminal laws of the United States, and to provide leadership and criminal justice services to

federal, state, municipal, and international agencies and partners.  In each instance where

information was withheld, it was determined that individual privacy interests outweighed the

public interest in disclosure.

---

[2]    One page is a duplicate.  The remaining 76 pages were returned to USPC.  (**See
Exhibit C.**)

**(b)(6)-1      Names and/or Identifying Information of FBI Special Agents and Support Personnel**

(15)    Exemption (b)(6)-1 has been asserted in conjunction with exemption (b)(7)(C)-1 to protect the names and identifying information of FBI Special Agents ("SAs") and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning plaintiff that were referred to the FBI by the USPC. Disclosure of the names and identifying information could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to the type of investigative information contained in these documents. Accordingly, the FBI determined that the FBI SAs and support personnel referenced in the responsive records maintain substantial privacy interests in not having their identities disclosed. The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and support employees. The FBI could not identify any discernible public interest. The disclosure of the names and identifying information of FBI SAs and support personnel would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorists and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Ultimately, disclosure of the names and identifying information of FBI SAs and support personnel would shed no light on the performance of the FBI's mission. Consequently, the privacy interests of these individuals outweighs no discernible public interest in disclosure and the disclosure of the names and identifying information of these individuals would constitute a clearly unwarranted

7

invasion of their personal privacy. The FBI has properly asserted Exemption (b)(6)-1 in

conjunction with exemption (b)(7)(C)-1 on the following pages of Exhibit D: Antonelli 20, 21,

23, 26, 36, 62, 64,67, 68, 69,71, 73, 75, 77, 79 and 81.

### (b)(6)-2    Names and/or Identifying Information of Third Parties who Provided Information to the FBI

(16)    Exemption (b)(6)-2 has been asserted in conjunction with exemptions (b)(7)(C)-2,

(b)(7)(D)-1, and (b)(7)(F)-1 to protect the names and identifying information of third parties who

provided information to the FBI. Disclosure of the identities of these third parties could have a

detrimental effect on the current and future cooperation of other individuals willing to provide

information to the FBI inasmuch as they would have little or no faith in the FBI's ability to

maintain their information in confidence. The FBI has found that information provided by

individuals during an interview is one of the most productive investigative tools used by law

enforcement agencies. The largest roadblock in successfully obtaining the desired information

through an interview is fear by the interviewee that his/her identity will possibly be exposed and

consequently the interviewee may be harassed, intimidated, or threatened with legal and/or

economic reprisal or possible physical harm. In order to surmount these obstacles, persons

interviewed must be assured that information received from them will be held in the strictest

confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts

bearing upon a particular investigation outweighs any benefit plaintiff might derive from being

provided the identities of those who cooperated with the FBI.

(17)    Disclosure of the identities of third parties who furnished information to the FBI

in connection with the investigation reported in the documents at issue could likewise embarrass

8

those individuals. Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed. After identifying the substantial privacy interests of the third parties interviewed during the course of the investigation, the FBI balanced the privacy interests of these individuals against any public interest in disclosure. The FBI could not identify any discernible public interest, and therefore, the privacy interests of these individuals outweigh no discernible public interest in disclosure. Thus, disclosure of the names and/or identifying information of these individuals would constitute a clearly unwarranted invasion of personal privacy. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-2 on the following pages of Exhibit D: Antonelli 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 and 83.

### (b)(6)-3    Names of and/or Identifying Information Concerning Third Parties Merely Mentioned

(18)    Exemption (b)(6)-3 has been asserted in conjunction with exemption (b)(7)(C)-3 to withhold the names and identifying information of third parties who were merely mentioned in the documents at issue. The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his criminal activities. These individuals were of no investigative interest to the FBI; and, they maintain legitimate privacy interests in not having this identifying information disclosed. If the FBI disclosed their names and identifying information, the disclosure would reveal that these third parties were connected with the FBI's investigation in some way. Disclosure of these third parties' names and identifying information in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation.

9

Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third parties maintain substantial privacy interests in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their privacy interests against the public interest in disclosure. The FBI has determined that there is no public interest. Thus, the privacy interests of these individuals outweigh no discernible public interest in disclosure, and the release of this information would constitute a clearly unwarranted invasion of their personal privacy. Exemption (b)(6)-3 in conjunction with (b)(7)(C)-3 is invoked on the following pages of Exhibit D: Antonelli 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 79, 81, 82 and 83.

### (b)(6)-4    Names and/or Identifying Information of Local Law Enforcement Personnel

(19)    Exemption (b)(6)-4 has been asserted in conjunction with exemption (b)(7)(C)-4 to protect the names and identifying information of local law enforcement employees. These local law enforcement employees are members of the Oak Lawn, Illinois Police Department. These employees were acting in their official capacities. To release the identities of these law enforcement employees could subject them to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting the identities of FBI SAs and support personnel explained above also pertains to withholding the names and identifying information of these local law enforcement employees. In balancing the legitimate privacy interests against any public interest in disclosure, the FBI could discern no public interest in the disclosure of this information because this type of information

10

would not shed light on the operations and activities of the federal government. Accordingly, the FBI determined that disclosure would constitute a clearly unwarranted invasion of personal privacy, and properly withheld this information pursuant to Exemption (b)(6)-4 in conjunction with exemption (b)(7)(C)-4 which is invoked on the following pages of Exhibit D: Antonelli 36, 73 and 75.

## EXEMPTION 7

## EXEMPTION 7 THRESHOLD

(20)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. See 5 U.S.C. § 552 (b)(7). In this case, the harms that could reasonably be expected to result from disclosure concern unwarranted invasion of personal privacy, revealing the identity of confidential sources, and endangering the lives or physical safety of individuals.

(21)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. The documents at issue were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement activities. The FBI's mission includes the investigation of criminal activities, which includes the investigation of plaintiff's involvement with illegal drugs reflected in the documents referred to the FBI by USPC. Thus, there is no doubt that this investigation falls within the law

11

enforcement duties of the FBI. Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether disclosure of the withheld information could reasonably be expected to constitute an unwarranted invasion of personal privacy; disclose the identities of confidential sources; or endanger the life or physical safety of any individual.

### EXEMPTION (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(22)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

(23)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in the documents against any public interest in disclosure. When asserting this exemption, each piece of information was examined to determine the nature and strength of the privacy interest of each individual whose name and/or identifying information appears in the records at issue. The FBI identified the public interest in disclosure of the information to be whether the information in question could inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its internal operations and investigations. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy interests of the individuals mentioned in the records. As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)C).

12

**(b)(7)(C)-1    Names and/or Identifying Information of FBI Special Agents and Support Employees**

(24)    Exemption (b)(7)(C)-1 has been asserted in conjunction with exemption (b)(6)-1

to protect the names and identifying information of FBI Special Agents ("SAs") and support

personnel who were responsible for conducting, supervising, and/or maintaining the investigative

activities reported in the documents concerning plaintiff that were referred to the FBI from the

USPC. Disclosure of the names and identifying information could subject these employees to

unauthorized inquiries by members of the media and the general public who seek access to the

type of investigative information contained in these documents. Accordingly, the FBI

determined that the FBI SAs and support personnel referenced in the responsive records maintain

substantial privacy interests in not having their identities disclosed. The FBI next examined the

records at issue to determine whether there was any public interest that outweighed the

substantial privacy interests of the FBI SAs and support employees. The FBI could not identify

any discernible public interest. The disclosure of the names and identifying information of FBI

SAs and support personnel would not demonstrate how the FBI performs its mission to protect

and defend the United States against terrorists and foreign intelligence threats, to uphold and

enforce the criminal laws of the United States, and to provide leadership and criminal justice

services to federal, state, municipal, and international agencies and partners. Ultimately,

disclosure of the names and identifying information of FBI SAs and support personnel would

shed no light on the performance of the FBI's mission. Consequently, the privacy interests of

these individuals outweighs discernible public interest in disclosure and the disclosure of the

names and identifying information of these individuals could constitute an unwarranted invasion

13

of their personal privacy. The FBI has properly asserted Exemption (b)(7)(C)-1 in conjunction with exemption (b)(6)-1 on the following pages of Exhibit D: Antonelli 20, 21, 23, 26, 36, 62, 64, 67, 68, 69, 71,73, 75, 77, 79 and 81.

### (b)(7)(C)-2    Names and/or Identifying Information of Third Parties Who Provided Information To The FBI

(25)    Exemption (b)(7)(C)-2 has been asserted in conjunction with exemptions (b)(6)-2, (b)(7)(D)-1, and (b)(7)(F)-1 to protect the names and identifying information of third parties who provided information to the FBI. Disclosure of the identities of these third parties could have a detrimental effect on the current and future cooperation of other individuals willing to provide information to the FBI inasmuch as they would have little or no faith in the FBI's ability to maintain their information in confidence. The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will possibly be exposed and consequently the interviewee may be harassed, intimidated, or threatened with legal and/or economic reprisal or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that information received from them will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation outweighs any benefit plaintiff might derive from being provided the identities of those who cooperated with the FBI.

(26)    Disclosure of the identities of third parties who furnished information to the FBI in connection with the documents at issue could likewise embarrass those individuals. Thus, the

14

FBI has determined that the third party interviewees maintain a substantial privacy interest in not

having their identities disclosed. After identifying the substantial privacy interests of the third

parties interviewed during the course of the investigation, the FBI balanced the privacy interests

of these individuals against any public interest in disclosure. The FBI could not identify any

discernible public interest, and therefore, the privacy interests of these individuals outweigh no

discernible public interest in disclosure. Thus, disclosure of the names and/or identifying

information of these individuals could constitute an unwarranted invasion of personal privacy.

Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C)-2

on the following pages of Exhibit D:  Antonelli 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33,

34, 35, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 and 83.

### (b)(7)(C)-3    Names of and/or Identifying Information Concerning Third Parties Merely Mentioned

(27)   Exemption (b)(7)(C)-3 has been asserted in conjunction with exemption (b)(6)-3

to withhold the names and identifying information of third parties who were merely mentioned in

the documents at issue. The FBI obtained information concerning third parties who came into

contact with plaintiff during the course of his activities. These individuals were of no

investigative interest to the FBI; and, they maintain legitimate privacy interests in not having this

identifying information disclosed. If the FBI disclosed their names and identifying information,

the disclosure would reveal that these third parties were connected with the FBI's investigation in

some way. Disclosure of these third parties' names and identifying information in connection

with the FBI's investigation of plaintiff's activities carries an extremely negative connotation.

Disclosure of their identities could subject these individuals to possible harassment or criticism

15

and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that

these third parties maintain substantial privacy interests in not having information about them

disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI

balanced their privacy interests against the public interest in disclosure. The FBI has determined

that there is no public interest. Thus, the privacy interests of these individuals outweigh no

discernible public interest in disclosure, and the release of this information could constitute an

unwarranted invasion of their personal privacy. Exemption (b)(7)(C)-3 in conjunction with

(b)(7)(C)-3 is invoked on the following pages of Exhibit D: Antonelli 22, 23, 24, 25, 26, 27, 28,

29, 30, 31, 32, 33, 34, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 79, 81, 82 and 83.

### (b)(7)(C)-4    Names and/or Identifying Information of Local Law Enforcement Personnel

(28)    Exemption (b)(7)(C)-4 has been asserted in conjunction with exemption (b)(6)-4

to protect the names and identifying information of local law enforcement employees. These

local law enforcement employees are membersof the Oak Lawn, Illinois Police Department.

These employees were acting in their official capacities. To release the identities of these law

enforcement employees could subject them to unauthorized inquiries and harassment which

could constitute an unwarranted invasion of their personal privacy. The rationale for protecting

the identities of FBI SAs and support personnel explained above also pertains to withholding the

names and identifying information of these local law enforcement employees. In balancing the

legitimate privacy interests against any public interest in disclosure, the FBI could discern no

public interest in the disclosure of this information because this type of information would not

shed light on the operations and activities of the federal government. Accordingly, the FBI

16

determined that disclosure could constitute an unwarranted invasion of personal privacy, and

properly withheld this information pursuant to Exemption (b)(7)(C)-4 in conjunction with

exemption (b)(6)-4 which is invoked on the following pages of Exhibit D: Antonelli 36, 73 and

75.

### EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

(29)     5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to disclose
> the identity of a confidential source . . . which furnished
> information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in
> the course of a criminal investigation . . . information furnished by
> a confidential source.

(30)     Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common definition of the term. During the course of an investigation,

individuals are interviewed under circumstances from which an assurance of confidentiality

reasonably can be inferred. These individuals are considered to be confidential sources since

they furnish information only with the understanding that their identities and the information

provided will not be divulged outside the FBI. Information provided by these individuals is

singular in nature and if released, could reveal the informant's identity. The release of a source's

identity could forever remove that source as a future means of obtaining information. In

addition, when the identity is revealed, that revelation has a chilling effect on the activities and

cooperation of other sources. It is only with the understanding of complete confidentiality that

the aid of such sources can be enlisted, and only through this confidence that these source can be

17

persuaded to continue providing valuable assistance in the future. Thus, the information

provided by, as well as the identities of these sources, has been protected pursuant to Exemption

(b)(7)(D).

### (b)(7)(D)-1    Names, Identifying Data and/or Information Provided by Individuals Under an "Implied" Assurance of Confidentiality

(31)    Exemption (b)(7)(D)-1 in conjunction with (b)(6)-2, (b)(7)(C)-2, and (b)(7)(F) has

been asserted to protect the identities of, and information received from, individuals who

provided information to the FBI during the course of the investigation into plaintiff's activities

and indicated to the interviewing agent they were unwilling to testify because of fear of reprisal.

These individuals were interviewed by the FBI under circumstances from which an assurance of

confidentiality may be implied. Interviews conducted under such assurances of confidentiality

warrant the protection of the interviewee's name as well as the information the interviewee

provided. In the processing of the records concerning plaintiff, the objective was to release as

much segregable information as possible without revealing the identities of the individuals

interviewed or the information they provided. Releasing an interviewee's identity or the

information he or she provided would subject him or her to embarrassment, humiliation or

possible physical harm not only for themselves, but also for their families. Thus, the FBI has

properly withheld this information pursuant to Exemption (b)(7)(D). Exemption (b)(7(D)-1 in

conjunction (b)(6)-2, (b)(7)(C)-2, and (b)(7)(F) is invoked on the following pages: Antonelli 21,

22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74,

75, 76, 77, 78, 79, 80, 81, 82 and 83.

### EXEMPTION (b)(7)(F)
### ENDANGERMENT TO LIFE AND PHYSICAL SAFETY

(32)    5 U.S.C. § 552 (b)(7)(F) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual.

### (b)(7)(F)-1    Names and/or Identifying Information Provided by Third Parties Who Provided Information Regarding Criminal Activities

(33)    Exemption (b)(7)(F)-1 has been asserted in conjunction with (b)(6)-2, (b)(7)(C)-2, and (b)(7)(D)-1 to protect the safety of the individuals who provided information about the plaintiff. This investigation has shown that plaintiff has the means and inclination to seek revenge on anyone who has helped law enforcement in this investigation. Plaintiff has been investigated for various criminal activities. Individuals who provided information to the FBI while being interviewed, noted that plaintiff has a reputation for his violent behavior. The individuals who provided information during the investigation of plaintiff, have stated a genuine concern for themselves and their families' safety as a result of their cooperation with the FBI. Exemption (b)(7)(F)-1 in conjunction with (b)(6)-2, (b)(7)(C)-2, and (b)(7)(D) has been  invoked on the following pages of Exhibit D: Antonelli 21, 22, 71, 72, 73, 74, 75, 76, 77, 78, 79 and 80.

### CONCLUSION

(34)    FBIHQ has processed and released to plaintiff all segregable information from documents referred from USPC, and no reasonably segregable portion of the withheld material can be released. Each of the documents was individually reviewed for segregability. As demonstrated above, the only information withheld by the FBI consists of information that is exempt from the Privacy Act and would infringe upon the personal privacy of third parties; disclose the identities of confidential sources who provided information to the FBI under implied

assurance of confidentiality as well as the information they provided; and endanger the lives and

safety of third parties. This information cannot be further segregated without revealing the

protected information itself.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through D attached hereto are true and correct copies.

Executed this _3 1 st_ day of March, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL C. ANTONELLI,       )
                            )
        Plaintiff,          )
                            )
        v.                  )     Civil Action No. 07-CV-01932 (CKK)
                            )
U.S. PAROLE COMMISSION,     )
                            )
        Defendant.          )
                            )

# **<u>Exhibit A</u>**

Chairman                                           August 17, 2006
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815

RE:  All records and tapes

Dear Sir:

This is a request under the Freedom of Information Act.

I request a copy of all records that your agency has or had
in its possession that are in any way connected to my name.  That
means all parole hearing tapes, confidential witness tapes, all
appeals and all National Appeals records, including all records
that you have already given to me beforehand, and any and all
records that I may have submitted or anyone submitted in connection
to my name, including court records and litigation records.  This
means all records that originate all the way back in time to the
initial incarceration of my person on September 15, 1978.

FULL NAME:  MICHAEL CARMIE ANTONELLI
DOB: December 4, 1946
POB: Chicago, Illinois  USA
SS No. 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

I declare under the penalty of perjury that the above is my
biographical data, and that the signature below is my signature.

Executed this  17TH  day of August, 2006.

By  _Michael Antonelli_
      Michael Antonelli, Affiant

(28 USC Section 1746)


                              Sincerely,

                              _Michael Antonelli_

                              Michael Antonelli 04053-164
                              USP Big Sandy; Box 2068
                              INEZ, KY  41224


cc : file


                                          Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL C. ANTONELLI,                      )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )    Civil Action No. 07-CV-01932 (CKK)
                                           )
U.S. PAROLE COMMISSION,                    )
                                           )
        Defendant.                         )
                                           )

# **<u>Exhibit B</u>**



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_5550 Friendship Boulevard_
_Chevy Chase, Maryland 20815-7201_
_Telephone: (301)492-5821_
_Facsimile: (301)492-5525_

December 20, 2007

Federal Bureau of Investigation
J. Edgar Hoover Building, Room 6296
Washington, D.C. 20535
Attn: Chief, FOI/PA Section

**Re:**    **FOIA Request Of:**
         **Michael Antonelli**
         **Reg. No. 04053-164**

Dear Sir or Madam:

Enclosed is a copy of document(s) from the parole file of the above-referenced requester. Because it originated with your agency, it is forwarded to your office for disclosure processing and preparation of a direct response to the requester. A copy of the original request is attached. The above-named has been notified of this referral.

**Please note the requester is now located at the Manchester FCI facility.**

Sincerely,

Anissa N. Hunter
FOIA Specialist

Enclosures - 180 pages

_Exhibit - B_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL C. ANTONELLI,           )
                                )
        Plaintiff,              )
                                )
        v.                      )    Civil Action No. 07-CV-01932 (CKK)
                                )
U.S. PAROLE COMMISSION,         )
                                )
        Defendant.              )
                                )

# **Exhibit C**



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

Date:        March 11, 2008

To:          UNITED STATES PAROLE COMMISSION
             5550 FRIENDSHIP BOULEVARD
             CHEVY CHASE, MARYLAND 20815

From:        David M. Hardy, Section Chief
             Record/Information Dissemination Section (RIDS)
             Records Management Division

Subject:     FOI/PA Request of <u>Michael Antonelli, Req. No. 04053-164</u>
             FBI FOI/PA <u>#1104813- 000</u>     <u>Re: Self</u>

         This is in response to your correspondence dated December 20, 2007 and January 30,
2008 requesting the FBI make a disclosure determination and respond directly to the requester concerning
information referred by your agency. We reviewed the material and determined that, although there are FBI
equities, this material originated with your agency. Therefore, we are returning these documents
comprising 76 pages along with our recommendations to withhold FBI information pursuant to subsections'
<u>b2, b6 & b7C</u> of Title 5, United States Code, Section 552/552a. Enclosed for your records is a copy of our
response to the requester.

         The requester may appeal any denials made by the FBI. In your response please advise the
requester the appeal should be directed in writing to the Director, Office of Information and Privacy, U.S.
Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty
days from the receipt of your letter. The envelope and the letter should be clearly marked "Freedom of
Information Appeal" or "Information Appeal" and the FBI's FOIPA number should be cited.

         Please call Vicki Hux of my staff at (540) 868- 4178 if you have any questions.

Enclosures

*Exhibit -C*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL C. ANTONELLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1932 (CKK) |
| | ) | |
| UNITED STATES | ) | |
| PAROLE COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF RON HILL

I, Ron Hill, do hereby declare and state the following:

1.    I am the Administrator for the Federal Bureau of
Prisons (BOP), Freedom of Information Act/Privacy Act (FOIA/PA)
Section, in the BOP's Central Office.  In this position, I have
access to the records of FOIA requests made to the BOP.  I base
this declaration on my review of those records as they relate to
a FOIA request, wherein BOP records concerning Plaintiff, Michael
Antonelli, Reg. No. 04053-164, that were in the possession of the
United States Parole Commission (USPC), were forwarded to the BOP
for processing.

2.    BOP records indicate the USPC referred 529 pages of
Plaintiff's BOP records on December 20, 2007.  The referral was
received by this office on December 27, 2007 and assigned a BOP
FOIA request number 2008-04410.

3.    After a review of these records, it was determined 320 pages were releasable to Plaintiff in their entirety.   The duplication cost for these 320 pages was $22.00 (.10 per page, after the first 100 pages, which were provided free of charge). By letter dated March 3, 2008, Plaintiff was advised of his need to pay this fee within 30 days, or April 2, 2008, by check or money order, made payable to the Treasury of the United States. Attached hereto as Exhibit 1, is a true and accurate copy of the BOP's March 3, 2008, response letter.

4.    The remaining 209 pages were copies of Presentence Reports concerning the Plaintiff. It was determined Plaintiff could have access to these documents in their entirety by contacting a staff member at his current prison. Due to security concerns, the BOP does not allow an inmate, while incarcerated, to possess a copy of their Presentence Report.   Prior to this prohibition, inmates were pressuring other inmates to obtain a copy of their Presentence Report to prove or disprove government cooperation during their current or past convictions, gang affiliations and/or financial situation.   This resulted in inmate/staff injuries when fights and assaults occurred from either an inmate's refusal to comply with the demands, or by the revelation of something on the Presentence Report.   Many inmates also began asking to be placed in a protective custody housing status when they were pressured or threatened by other inmates to provide their Presentence Report.   This created an administrative burden due to the limited spaces for this type of housing units

in the prisons.  The BOP's solution was to allow inmates access
to their Presentence Report by contacting a staff member in their
housing unit and scheduling a time to sit in a staff office to
view the records and take any notes they desire.  This practice
is outline on pages 15 - 16 of Program Statment 1351.05.
Attached hereto as Exhibit 2, is a true and accurate copy of that
Program Statement.

    5.  On April 16, 2008, the BOP received payment for
Plaintiff's FOIA request.  On April 28, 2008, the BOP mailed the
320 pages of fully releasable documents to Plaintiff.  Attached
hereto as Exhibit 3, is a true and accurate copy of the April 28,
2008 letter releasing the 320 pages to Plaintiff.

    Pursuant to Title 28 U.S.C. Section 1746, I certify under a
penalty of perjury that the foregoing is true and correct.
Executed this day, April 28, 2008

Ron Hill
FOIA/PA Administrator
Federal Bureau of Prisons

**U.S. Department of Justice**

Federal Bureau of Prisons

_Washington, DC 20534_

March 3, 2008

Michael Antonelli
Reg. No. 04053-164
FCI Memphis
P.O. Box 34550
Memphis, TN 38134

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street. N.W.
Room 841, HOLC Building
Washington, D.C. 20534
Attn: FOI/Privacy Office

RE:  Request for Information, BOP FOIA Request No. 08-04410

Dear Mr. Antonelli:

     While the United States Parole Commission was responding to
your Freedom of Information Act (FOIA) request, 529 pages of
Bureau of Prisons document were discovered.  Those documents were
referred to this agency for a release determination.

     After a careful review, we have determined 320 pages are
releasable in their entirety.  The remaining 209 pages are copies
of your Pre-Sentence Reports, which you can gain access to at
your local institution.  To utilize this local access procedure,
simply contact a member of your Unit Team.

     In accordance with 28 C.F.R. Section 16.11(a), these 320
pages of documents will be released to you, after receipt of a
check or money order payable to the Treasury of the United
States, in the amount of $22.00 ($.10 a page after the first 100
pages, which are furnished without duplication cost).  Please
submit you payment within thirty days [April 2, 2008].

     I trust this has been responsive to your request.

                                   Sincerely,

                                   Wanda M. Hunt
                                   Chief, FOIA/PA Section

Ron Hill Exhibit I



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Stateme

|  |  |
|---|---|
| **OPI:** | OGC |
| **NUMBER:** | 1351.05 |
| **DATE:** | 9/19/2002 |
| **SUBJECT:** | Release of Information |

# nt

PART ONE: **[GENERAL PROVISIONS AND PROCEDURES]**

1.  **[PURPOSE AND SCOPE § 513.30.  This subpart establishes procedures for the release of requested records in possession of the Federal Bureau of Prisons ("Bureau").  It is intended to implement provisions of the Freedom of Information Act (FOIA),  5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, and to supplement Department of Justice (DOJ) regulations concerning the production or disclosure of records or information,  28 CFR part 16.]**

The Freedom of Information Act (FOIA) and the Privacy Act (PA) interact with each other in two areas:

 When any person requests access to records about himself or herself, both statutes become potentially applicable;

 When any person requests access to another individual's record through the FOIA, the Privacy Act may prohibit the disclosure of that record unless FOIA requires it.

The determination of what information may be released requires Bureau staff to have a basic understanding of both the FOIA and the Privacy Act, as well as a working knowledge of DOJ and Bureau policy.  Bureau staff also should be aware that the Privacy Act establishes criminal penalties and civil liabilities for unauthorized disclosures.  The appropriate Regional Counsel shall be contacted when staff are uncertain whether requested information may be disclosed.

Staff shall become familiar with the policy governing release of information, with special emphasis upon those areas with direct application to the employee's job.

Information requests submitted by the union pursuant to 5 U.S.C. § 7114 will be addressed in accordance with this

Ron Hill Exhibit II

provision and relevant case law.

**[Bold Type - Rules]**
Regular Type - Implementing Information
 This Program Statement is divided into four major parts:

|   | **Part** | **Page** |
|---|---|---|
|   |   | 1 |
|   |   | 12 |
|   |   | 21 |

    General Provisions and Procedures Inmate
    Requests to Institution for Information
      Privacy Act Requests for Information
    Freedom of Information Act Requests for
    Information                                    25

2.   **SUMMARY OF CHANGES.**   This Program Statement is being revised to prohibit inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case.   The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes.   Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies.   This revision also introduces a new form which inmates can use to facilitate court review of their PSRs or SORs.

If local procedures are changed, notification to the union and training will be handled in accordance with the Master Agreement.

3.   **PROGRAM OBJECTIVES.**   The expected results of this program are:

   a.   Information will be released to a requester in accordance with Federal law and the regulations and policies of the U.S. Department of Justice.

   b.   Inmate Freedom of Information Act requests to the Central Office will be reduced by increasing the use of institution procedures that provide for inmate review of Bureau policy documents and records in Inmate Central Files.

   c.   Future litigation pertaining to FOIA/Privacy Act issues will be reduced.

4.   **DIRECTIVES AFFECTED**

   a.   **Directive Rescinded**

      PS 1351.04      Release of Information (12/5/96)

   b.   **Directives Referenced**

       PS 1330.13 Administrative Remedy Program (12/22/95)
      PS 1480.05      Contacts with News Media (9/21/00)

Ron Hill Exhibit II

        PS 5070.10      Judicial Recommendations and U.S. Attorney
                        Reports, Responses to (6/30/97)
        PS 5270.07      Inmate Discipline and Special Housing Units
                        (12/29/87)
        PS 5310.12      Psychology Services Manual (8/13/93)
        PS 5800.10      Mail Management Manual (11/3/95)
        PS 5800.11      Inmate Central File, Privacy Folder and
                        Parole Mini- Files (9/8/97)
        PS 6000.05      Health Services Manual (9/15/96)

        Public Information Officer's Handbook (1994)

   c.  Bureau rules cited in this Program Statement are contained
in 28 CFR 513.30 through 68.

   d.  Other rules referenced in this Program Statement
are contained in 5 CFR part 297 and 28 CFR parts 16 and
301.

   e.  United States Code sections cited in this Program Statement
are contained in 5 U.S.C. 301, 552 and 552a; 13 U.S.C.;
18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082, 5006, 5024;
28 U.S.C. 509, 510; and 31 U.S.C. 3711(f).

   f.  Privacy Act Issuances, 1991 Comp., Volume II.

    g.  United States Department of Justice et al. v.
        Julian  et al., 108 S.Ct. 1606 (1988).

5.  **STANDARDS REFERENCED**

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4020, 3-4095, and 3-4096

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-1E-04, 1E-05

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-1E-06, 1E-07, and
1E-08

6.  [LIMITATIONS § 513.31

   **a.  Social Security Numbers.  As of September 27, 1975, Social
Security Numbers may not be used in their entirety as a method of
identification for any Bureau record system, unless such use is
authorized by statute or by regulation adopted prior to January
1, 1975.**

   **b.  Employee Records.  Access and amendment of employee
personnel records under the Privacy Act are governed by Office of
Personnel Management regulations published in 5 CFR part 297 and
by Department of Justice regulations published in 28 CFR part
16.]**

Ron Hill Exhibit II

7.  **[GUIDELINES FOR DISCLOSURE § 513.32]**

   a. **[The Bureau provides for the disclosure of agency information pursuant to applicable laws, e.g. the Freedom of Information Act (5 U.S.C. 552), and the Privacy Act (5 U.S.C. 552a).]**

   b.  Pursuant to 28 CFR part 16, the authority to release or deny access to records and information is limited to the Director or his or her designee.

   c.  Bureau staff shall release a Bureau record in response to a request made in accordance with this rule, unless a valid legal exemption to disclosure is asserted.

      Bureau staff may assert any applicable exemption to disclosure which is provided under the FOIA in 5 U.S.C. § 552(b) or under the Privacy Act in          5 U.S.C. § 552a.

      For a listing of general FOIA Exemptions, see the **Exemptions to Disclosure Provided in the Freedom of Information Act (Attachment A).**

      For a listing of Bureau systems of records which the Attorney General has exempted from access and disclosure under the Privacy Act, see 28 CFR 16.97.

Questions regarding the applicability of exemptions may be referred to the appropriate Regional Counsel or to the Office of General Counsel.

   d.  Examples of documents or information which ordinarily may be withheld from disclosure include the examples which follow. These examples are not intended to represent an all-inclusive list of every situation when FOIA exemptions may apply, nor are the FOIA exemptions cited for each example the only ones which may apply to the examples provided.

   (1)  Documents or information which could reasonably be expected to constitute an unwarranted invasion of personal privacy, i.e. information that is not "public information."

      For the applicable FOIA exemptions, see Exemptions 6 and 7 in Attachment A.

      Information concerning an individual inmate is not generally available to FOIA requesters unless the inmate whose records are being sought has given a written consent to the disclosure or unless the

      information has been determined to constitute "public information."  For guidance on what constitutes "public information," see **Public Information (Attachment B).**

      Requests by one inmate for public information concerning other inmates must be reviewed very carefully, as prison

Ron Hill Exhibit II

security concerns may outweigh the right to a FOIA
disclosure.

□ A denial of such public information to an inmate
requester may be done only with the Regional Counsel's
approval, after assessing the risks that disclosure might
pose to the safety of the inmate(s) whose records are
being sought and to other inmates and staff in the
institution.  See Section 7.d.(2), below.  A high risk of
gang-related prison violence is an example of a prison
security concern which might justify the withholding of
public information about one inmate to another inmate
while in custody.

(2)   Documents or information which would reveal sources of
information obtained through a legitimate expectation of
confidentiality or which would otherwise endanger the life or
physical safety of any person.

● For the applicable FOIA exemptions, see Exemptions 6
and 7 in Attachment A.

● An example is a statement of an inmate witness made in
the context of a current or a completed disciplinary,
criminal, or accident investigation.  This statement
shall not be disclosed to another inmate if such
disclosure would endanger the inmate witness.

(3)   Documents or information which could disrupt an
inmate's institutional program due to the diagnostic or
evaluative opinions contained in the document, and which would
likely provoke adjustment difficulties or aggravate existing
adjustment difficulties.

● For the applicable FOIA exemptions, see Exemptions 5
and 6 in Attachment A.

(4)   Documents or information which would interfere with
ongoing law enforcement proceedings, including administrative
investigations.

● For the applicable FOIA exemptions, see Exemptions 5
and 7 in Attachment A.

● While certain investigative information might be
disclosed **after** an administrative investigation is
completed, particular care must be exercised regarding
disclosure during the course of the investigation.  Even
after the investigation is completed, personal safety and
prison security concerns may outweigh the right to a FOIA
disclosure.

● Only the institution staff member the Warden designates
as the institution's Public Information Officer is
authorized to make public statements regarding any

investigation.  For further guidance, see the Program
Statement on Contacts with the News Media and the Public
Information Officer's Handbook.

Questions regarding criminal prosecutions, such as the
status of a case, shall be referred to the appropriate U.S.
Attorney.

(5)  Documents or information which, through disclosure of
law enforcement techniques, information, or procedures, could
reasonably be expected to enable the requester to violate a law,
or to threaten the security of a Bureau institution or the safety
of any person.

   For the applicable FOIA exemptions, see Exemptions 2
   and 7 in Attachment A.

   Some Program Statements and Operations Memoranda, and
   other documents such as post orders, construction diagrams,
   etc., may be exempted because disclosing them would pose a
   threat to institutional security.  This may also apply to
   information contained in investigations and other Bureau
   reports where law enforcement techniques are described.

8.  **[PRODUCTION OF RECORDS IN COURT § 513.33.  Bureau records are
often sought by subpoena, court order, or other court demand, in
connection with court proceedings.  The Attorney General has
directed that these records may not be produced in court without
the approval of the Attorney General or his or her designee.  The
guidelines are set forth in 28 CFR part 16, subpart B.]**

Bureau staff who receive such demands shall consult with their
Regional Counsel or the Office of General Counsel for advice
regarding proper handling of the demand.

9.  **[PROTECTION OF INDIVIDUAL PRIVACY - DISCLOSURE OF RECORDS TO
THIRD PARTIES § 513.34.]**  Bureau employees must carefully
maintain and process all information concerning individuals to
ensure that information is accurate, relevant, and timely, and to
ensure that no inadvertent disclosure of information is made.

   **[a. Information that concerns an individual and is contained in
   a system of records maintained by the Bureau shall not be
   disclosed to any person, or to another agency, except under the
   provisions of the Privacy Act, 5 U.S.C. 552a, or the Freedom of
   Information Act, 5 U.S.C. 552, and Departmental regulations.]**

Staff may disclose information from a Bureau system of records
only if one or more of the following criteria apply:

(1)  With the written consent of the individual to whom the
record pertains.  The Release of Information Consent form
(BP-S192.013) may be used;

Ron Hill Exhibit II

(2)   To employees of the DOJ who have a need for the record
in the performance of their duties;

(3)   If disclosure is permitted under the FOIA,
5 U.S.C. § 552, e.g. "public information", when the public
interest in disclosure of the information outweighs the
privacy interest involved;

  🞏 For guidance on what constitutes "public information,"
  see Attachment B.

(4)   For a **routine use** described in the DOJ "Notice of
Record System" for the system of records which contains the
information, as published in the Federal Register.

  🞏 For a list of the Bureau's systems of records that have
  been published in the Federal Register, see the   **Bureau
  Systems of Records (Attachment C)**, as updated in BOPDOCS.

  🞏 The published notices for these systems describe the
  records contained in each system and the routine uses for
  disclosing these records without obtaining the consent of
  the person to whom the records pertain.  For copies of
  the published systems notices, see BOPDOCS and/or contact
  the FOIA/PA section of the Office of General Counsel.

A **list of routine uses** for records contained in the
Inmate Central File is also contained in the Program Statement
concerning Central File, Privacy Folder, and Parole
Mini-Files.

Routine uses for Bureau systems of records may include
the following:

(a)   To Federal, state, local and foreign law enforcement
officials for law enforcement purposes such as investigations,
possible criminal prosecutions, civil court actions, or
administrative and regulatory proceedings.

  **Law Enforcement requests for telephone monitoring
information**:

    ●   For telephone monitoring information concerning
    inmate telephone calls, ordinarily only
    transactional data (e.g. date, time, duration of the
    call) shall be disclosed without proper process,
    even to other DOJ law enforcement agencies.

    ●   Copies of the recorded telephone conversations, or
    written transcripts, shall only be disclosed to a
    requesting law enforcement agency when:

      (1) requested in an emergency situation;

      (2)   criminal activity is discovered as part of

Ron Hill Exhibit II

the routine monitoring for prison
administration purposes; or

(3)  requested through proper process (e.g. grand
jury subpoena, administrative subpoena).

•    All requests by law enforcement agencies for
access to recordings of inmate telephone
conversations shall be referred to Regional
Counsel.

(b)   To the Bureau of the Census for purposes of planning
or carrying out a census or survey or related activity pursuant
to the provisions of Title 13, United States Code;

(c)   To a recipient who has provided the Bureau with
advance adequate written assurance that the record will be
used solely as a statistical research or reporting record, and
the record is to be transferred in a form that is not
individually identifiable;

(d)   To the National Archives and Records Administration
(NARA) as a record which has sufficient historical or other value
to warrant its continued preservation by the U.S. Government, or
for evaluation by the Administrator of the General Services
Administration or his or her designee to determine whether the
record has such value;

(e)   To either House of the U.S. Congress, or, to the
extent of a matter within its jurisdiction, any Congressional
committee or subcommittee, any joint committee of Congress or
subcommittee of any such joint committee;

**Congressional requests on behalf of constituents for
information about inmates:**
        •

        •

        •

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Page 9

Responses to individual members of Congress requesting in-

formation on behalf of a constituent are limited to public information unless staff have first obtained the inmate's express or implied consent to provide a fuller response.

Written consent from the inmate shall be obtained when practical, using the form BP-S192.013.  When this is not practical, staff should consider whether there is implied consent by the inmate. An example of implied consent is a Congressional inquiry which resulted from a letter the inmate sent to the member of Congress and this letter is included with the request from the member of Congress.

Implied consent may not be inferred when a third party (for example, the inmate's spouse or parents) initiated the Congressional request for information.  In such a situation, only public information (see Attachment B) may be released to the member of Congress without the inmate's written consent.

Ron Hill Exhibit II

Questions regarding appropriate responses to Congressional inquiries shall be directed to the appropriate Regional Counsel or to staff in the FOIA/PA Section of the Office of General Counsel.

(f)  Pursuant to an order of a court of competent jurisdiction;

(g)  To a requester from appropriate state offices (e.g., state department of corrections, parole board, attorney general) seeking access to records concerning state inmates in Bureau custody.

- au institutions, they remain state prisoners.  A state inmate may receive periodic visits from state correctional and parole officials to review and evaluate his or her status, parole eligibility, and release readiness.  To accomplish those purposes, state officials require access to the files of state inmates.

Although state inmates are confined in Bure

◻    Wardens shall ensure that officials of such state offices, who need to review the records, are provided, upon request, access to the complete record of a state inmate in a Bureau institution.

(5)    **Records Concerning Former Youth Corrections Act (YCA) Inmates.**  Information on former YCA inmates, including the fact that the person has been confined, shall not be released without Regional Counsel review to determine whether the conviction has been expunged and whether disclosure is appropriate.

**[b. Lists of Bureau inmates shall not be disclosed.]**

Any request for such lists shall be forwarded to the Office of General Counsel, Central Office.

c.    A list of Bureau employees may be generally releasable. Questions shall be directed to the appropriate Regional Counsel or to the FOIA/PA Section of the Office of General Counsel.

10.    **[ACCOUNTING/NONACCOUNTING OF DISCLOSURES TO THIRD PARTIES § 513.35.  Accounting/nonaccounting of disclosures to third parties shall be made in accordance with Department of Justice regulations contained in 28 CFR 16.52.]**

Except for disclosures of information to other DOJ employees, and all components thereof, and except for disclosures required under the FOIA (e.g., public information, as listed on Attachment B), an accounting of disclosures to third parties of any information concerning an individual contained in a Bureau system of records will be made in accordance with the following guidelines:

a.    **Oral Disclosure**

(1)    Staff may orally release only public information.  When public information is thus disclosed, no accounting is necessary.

●  Only in an emergency shall staff orally release nonpublic information to parties other than DOJ employees.

●  Before such an emergency oral disclosure is made, staff shall contact Regional Counsel or the FOIA/PA Administrator.  If this is not possible, staff shall inform the Regional Counsel, or the FOIA/PA Administrator at the Central Office as soon as practicable after the disclosure.

(2)    Upon oral disclosure of non-public information, a memorandum shall be prepared and retained in the file from which the record is disclosed, or an appropriate notation shall be maintained in the file, attached to the record disclosed.

This memorandum or notation shall include the following information:

PS 1351.05
9/19/2002
Page 12

- the date of the disclosure,
- the name and address of the person to whom the record was disclosed and the name of the agency that person represents, if any,
- the purpose of the request for disclosure; and
- identification of the specific record disclosed.

For a form designed to assist staff receiving an oral request for information, see the Record Of Information Release form (BP-S171.013).

b.  **Written Disclosures.**  Accounting for a written disclosure may be made by:

(1)  Retaining a copy of the correspondence requesting the information and a copy of the response in the file from which the records are disclosed;

(2)  Following the procedure for an accounting of an oral disclosure, as described in Section 10.a., above; or

(3)  Developing another method if the method provides, at a minimum, the following information:

- the date of the disclosure;
- the name and address of the person to whom the record was disclosed and the agency that person represents, if any;
- the purpose of the request for disclosure; and
- a general description of the specific record disclosed.

c.  **Disclosure Record Maintenance.**  It is the responsibility of the staff member making a disclosure of non-public information to provide an accurate accounting of that disclosure.

- Accounting records of the disclosure of non-public information shall be maintained for five years or until the record is destroyed, whichever is longer, and will be placed in the privacy folder.

- When records are transferred to the NARA for storage, the disclosure accounting pertaining to those records, other than correspondence, shall be transferred with the records themselves.

- An exemption under 5 U.S.C. § 552a(j) **does not** relieve the Bureau from the responsibility to account for all disclosures other than those within the DOJ or under the FOIA.

11.  [GOVERNMENT CONTRACTORS § 513.36

   a.  **No Bureau component may contract for the operation of a record system by or on behalf of the Bureau without the express written approval of the Director or the Director's**

Ron Hill Exhibit II

designee.

b.  Any contract which is approved shall contain the standard contract requirements promulgated by the General Services Administration (GSA) to ensure compliance with the requirements imposed by the Privacy Act.  The contracting component shall have the responsibility to ensure that the contractor complies with the contract requirements relating to privacy.

PART TWO:  **[INMATE REQUESTS TO INSTITUTION FOR INFORMATION]**

12.  **[INMATE ACCESS TO INMATE CENTRAL FILE § 513.40.  Inmates are encouraged to use the simple access procedures described in this section to review disclosable records maintained in his or her Inmate Central File, rather than the FOIA procedures described in §§ 513.60 through 513.68 of this subpart.  Disclosable records in the Inmate Central File include, but are not limited to, documents relating to the inmate's sentence, detainer, participation in Bureau programs such as the Inmate Financial Responsibility Program, classification data, parole information, mail, visits, property, conduct, work, release processing, and general correspondence.  This information is available without filing a FOIA request.  If any information]** (in the disclosable section) **[is withheld from the inmate, staff will provide the inmate with a general description of that information and also will notify the inmate that he or she may file a FOIA request.**

**a.  Inmate Review of His or Her Inmate Central File.  An inmate may at any time request to review all disclosable portions of his or her Inmate Central File by submitting a request to a staff member designated by the Warden.  Staff are to acknowledge the request and schedule the inmate, as promptly as is practical, for a review of the file at a time which will not disrupt institution operations.]**

Further guidance is contained in the Program Statement on Central File, Privacy Folder, and Parole Mini-Files.

When an inmate makes a request to institution staff to review his or her Inmate Central File, he or she shall be advised to make arrangements pursuant to local procedures.

●    Because local processing reduces unnecessary FOIA requests, staff shall advise an inmate to make a request for Inmate Central File records to the FOIA/PA Section of the Office of General Counsel **only** when the inmate wishes to review exempt information.

●    Staff shall not discuss with the inmate the types or nature of nondisclosable documents maintained in his or her Privacy Folder.

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Page 14

Before any document in the Inmate Central File is disclosed to the inmate to whom the documents pertain, or to a third party with the prior written consent of the inmate, the following review shall take place:

(1)  **Bureau Documents.**  If the document is a Bureau document (generated by Bureau staff) and is not a court-ordered study, staff are to determine whether the document should be withheld from disclosure under Section 7 of this Program Statement and further guidance set forth below.

● Staff shall place in the inmate's Privacy Folder any document that is to be withheld from disclosure.

● Staff shall place all other documents in the disclosable portion of the Inmate Central File, which is all of the Inmate Central File except for the Privacy Folder.

Guidelines for some specific Bureau documents are provided below:

(a)  **Progress Reports.**  All Progress Reports prepared:

● After October 15, 1974, are subject to release and are to be placed in the disclosable section of the Inmate Central File.

● Between February 15 and October 15, 1974, are subject to release except for the recommendation section, which shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

● Before February 15, 1974, shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

(b)  **Psychiatric Reports**

● A psychiatric report written at the request of the U.S. Parole Commission is subject to release and shall be placed in the disclosable section of the Inmate Central File.  This report should be written in non-technical language so that it can be understood by non-professionals.

● Other psychiatric, psychological, or evaluative reports Bureau staff prepared may also be made available to the U.S. Parole Commission and shall be inserted in the Privacy Folder.  A summary of the document must be placed in the Inmate Central File. The summary may be placed in the Progress Report prepared in connection with the inmate's parole hearing.  The summary shall be sufficiently detailed to permit the inmate to respond, at the Parole Hearing, to

the substance of the withheld information.

(c) **Medical Records.**  See Section 14 of this Program Statement.

(d) **Discipline Records.**  Discipline records, such as Unit Discipline Committee (UDC) and Discipline Hearing Officer (DHO) packets (including the UDC/DHO report, incident report, notice of hearing, list of inmate rights at UDC/DHO hearing, notice of placement in Administrative Detention, and investigative memoranda), shall be maintained together in the Privacy Folder only if a portion of an investigation or other discipline record contains non-disclosable materials.  Copies of all releasable documents shall be placed together in the disclosable section of the Inmate Central File.

(2) **Non-Bureau Documents**

(a) **FBI/National Crime Information Center (NCIC) Information.**  The NCIC prohibits the Bureau from disclosing NCIC identification records to an inmate.

Procedures for an inmate to request a copy of his or her FBI/NCIC identification record directly from the FBI are contained in 28 CFR 513.10 through 513.12.

(b) **Documents from Other Federal Agencies.**  If a document originates in another Federal agency (including other components of the Department of Justice), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from another Federal agency, the document shall be referred to the originating Federal agency for a determination of its releasability (see Attachment D for a suggested format to request disclosure instructions from the originating agency).  For documents originating from Federal courts or probation offices, see subsection (d) below.

(c) **Documents from Non-Federal Agencies.**  If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D).  If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

Ron Hill Exhibit II

    (d)   **Documents from Federal Courts and Probation Offices**

    (1)  **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases.**  **For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).**  Inmates violating this provision are subject to disciplinary action.

    This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case.  The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise.  PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

    This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing.  For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing.  After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

    The Bureau implemented this policy for the following reasons.

        •    Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

        •    The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

        •    Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody.  Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.

    Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013).  The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries.

    Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA to access their own PSRs (see United States Department of Justice v.

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Page 17

<u>Julian, 486 U.S. 1 (1988)) and SORs.  Inmates must be provided</u>
reasonable opportunities to access and review their PSRs, SORs,
or other equivalent non-U.S. Code sentencing documents (e.g.,
D.C., state, foreign, military, etc.).  Inmates are responsible
for requesting an opportunity to access and review these records
with unit staff in accordance with the Program Statement on
Inmate Central File, Privacy Folder, and Parole Mini-Files. **To
facilitate inmate access and review, PSRs and SORs should
ordinarily be maintained in the disclosable portion of the
central file unless significant safety and security concerns
dictate otherwise.**

In addition to the above procedures, other provisions
of the FOIA may require limiting inmate access to PSRs and SORs.
Third party requests for inmate PSRs and SORs should be handled
according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

- A PSR prepared **on or after December 1, 1975,**
is to be placed in the disclosable portion of the
Inmate Central File.

- A PSR prepared **before December 1, 1975,** is to
be returned to the sentencing court with a cover
letter indicating that the PSR is being returned
based on the Supreme Court's <u>decision in Julian
and the fact that the PSR </u>was not prepared with
the expectation of release.  No copy of the
returned PSR is to be maintained at the
institution, although relevant material from the
PSR may be incorporated into other documents.

- Documents which the sentencing court has
sealed or otherwise labeled as not disclosable to
the inmate must be placed in the privacy folder.
Questions regarding such documents should be
referred to the Regional Counsel.

(2) **Documents Other than Federal PSIs.**  Generally,
documents originating in a Federal court or probation office
shall be placed in the Privacy Folder if the documents are
clearly marked to indicate that disclosure to the inmate is
unadvisable.  Other documents, such as a court-ordered study the
Bureau prepared, shall be referred to the requesting court for
that court's instructions as to disclosure.  A copy of the
document shall be maintained in the Privacy Folder until a final
determination is made regarding its disclosure.

When Bureau staff reclassify a document from non-
disclosable to disclosable, subsequent to any information request
encompassing that document, staff shall place the reclassified
document in the disclosable section of the Inmate Central File.

Ron Hill Exhibit II

   **[b.   Procedures for Inmate Review of His or Her Inmate Central File.**

        **(1)   Prior to the inmate's review of the file, staff are to remove the Privacy Folder which contains documents withheld from disclosure pursuant to § 513.32.**

        **(2)   During the file review, the inmate is to be under direct and constant supervision by staff.  The staff member monitoring the review shall enter the date of the inmate's file review on the Inmate Activity Record and initial the entry. Staff shall ask the inmate to initial the entry also, and if the inmate refuses to do so, shall enter a notation to that effect.**

        **(3)   Staff shall advise the inmate if there are documents withheld from disclosure and, if so, shall advise the inmate of the inmate's right under the provisions of § 513.61 to make a FOIA request for the withheld documents.]**

28 CFR 513.32 refers to Section 7 of this Program Statement. 28 CFR 513.61 refers to Section 27 of this Program Statement. The Inmate Activity Record refers to form BP-381.

13.   **[INMATE ACCESS TO INMATE CENTRAL FILE IN CONNECTION WITH PAROLE HEARINGS § 513.41.  A parole-eligible inmate (an inmate who is currently serving a sentence for an offense committed prior to November 1, 1987) may review disclosable portions of the Inmate Central File prior to the inmate's parole hearing, under the general procedures set forth in § 513.40.  In addition, the following guidelines apply:]**

28 CFR 513.40 refers to Section 12 of this Program Statement.

   **[a.   A parole-eligible inmate may request to review his or her Inmate Central File by submitting the appropriate Parole Commission form.  This form ordinarily shall be available to each eligible inmate within five work days after a list of eligible inmates is prepared.**

   **b.   Bureau staff ordinarily shall schedule an eligible inmate for a requested Inmate Central File review within seven work days of the request after the inmate has been scheduled for a parole hearing.  A reasonable extension of time is permitted for documents which have been provided (prior to the inmate's request) to originating agencies for clearance, or which are otherwise not available at the institution.**

   **c.   A report received from another agency which is determined to be nondisclosable (see § 513.40 (b)) will be summarized by that agency, in accordance with Parole Commission regulations. Bureau staff shall place the summary in the appropriate disclosable section of the Inmate Central File.  The original**

report (or portion which is summarized in another document) will be placed in the portion of the Privacy File for Joint Use by the Bureau and the Parole Commission.

d.  Bureau documents which are determined to be nondisclosable to the inmate will be summarized for the inmate's review.  A copy of the summary will be placed in the disclosable section of the Inmate Central File.  The document from which the summary is taken will be placed in the Joint Use Section of the Privacy Folder.  Nondisclosable documents not summarized for the inmate's review are not available to the Parole Commission and are placed in a nondisclosable section of the Inmate Central File.

e.  When no response regarding disclosure has been received from an originating agency in time for inmate review prior to the parole hearing, Bureau staff are to inform the Parole Commission Hearing Examiner.]

14.  [INMATE ACCESS TO MEDICAL RECORDS § 513.42

a.  Except for the limitations of paragraphs (c) and (d) of this section, an inmate may review records from his or her medical file (including dental records) by submitting a request to a staff member designated by the Warden.]

Disclosable Bureau medical records include the following:

- Medical and Related Data Sheets (BP-8), although this form has been discontinued, older files may still contain such records),
- Report of Medical History (SF-93 or BP-360),
- Report of Medical Examination (SF-88),
- Doctor's Orders (SF-508), and
- Medication Sheets (such as Medications and Treatments, PHS Form 2128, Supplement to SF-510).

[b.  Laboratory Reports which contain only scientific testing results and which contain no staff evaluation or opinion (such as Standard Form 514A, Urinalysis) are ordinarily disclosable.  Lab results of HIV testing may be reviewed by the inmate.  However, an inmate may not retain a copy of his or her test results while the inmate is confined in a Bureau facility or a Community Corrections Center.  A copy of an inmate's HIV test results may be forwarded to a third party outside the institution and chosen by the inmate, provided that the inmate gives written authorization for the disclosure.

c.  Medical records containing subjective evaluations and opinions of medical staff relating to the inmate's care and treatment will be provided to the inmate only after the staff review required by paragraph (d) of this section.  These records include, but are not limited to, outpatient notes, consultation

reports, narrative summaries or reports by a specialist, operative reports by the physician, summaries by specialists as the result of laboratory analysis, or in-patient progress reports.

d.   Prior to release to the inmate, records described in paragraph (c) of this section shall be reviewed by staff to determine if the release of this information would present a harm to either the inmate or other individuals.  Any records determined not to present a harm will be released to the inmate at the conclusion of the review by staff.  If any records are determined by staff not to be releasable based upon the presence of harm, the inmate will be so advised in writing and provided the address of the agency component to which the inmate may address a formal request for the withheld records.  An accounting of any medical records will be maintained in the inmate's medical file.]

Release, review, and accounting of disclosures to inmates and former inmates shall be in accordance with the procedures in the Health Services Manual.

15.   [INMATE ACCESS TO CERTAIN BUREAU PROGRAM STATEMENTS §
513.43.   Inmates are encouraged to use the simple local access procedures described in this section to review certain Bureau Program Statements, rather than the FOIA procedures described in Sections 513.60 through 513.68 of this Subpart.

a.   For a current Bureau Program Statement containing rules (regulations published in the Federal Register and codified in 28 CFR), local access is available through the institution law library.

b.   For a current Bureau Program Statement not containing rules (regulations published in the Federal Register and codified in 28 CFR), inmates may request that it be placed in the institution law library.  Placement of a requested Program Statement in the law library is within the discretion of the Warden, based upon local institution conditions.

c.   Inmates are responsible for the costs of making personal copies of any Program Statements maintained in the institution law library.  For copies of Program Statements obtained under the FOIA procedures described in Sections 513.60 through 513.68 of this Subpart, fees will be calculated in accordance with 28 CFR 16.10.]

28 CFR 513.60 through 513.68 refers to Sections 26 through 34 of this Program Statement.

16.   [FEES FOR COPIES OF INMATE CENTRAL FILE AND MEDICAL RECORDS

**§ 513.44.  Within a reasonable time after a request, Bureau staff are to provide an inmate personal copies of requested disclosable documents maintained in the Inmate Central File and Medical Record.  Fees for the copies are to be calculated in accordance with 28 CFR § 16.10.]**

No fee shall be charged for the following:

- the first 100 pages of duplication (or its cost equivalent),
- the first two hours of search time (or its cost equivalent), or
- charges which total $8.00 or less.

The duplication cost is calculated by multiplying the number of pages in excess of 100 by $0.10, the current rate set in 28 CFR 16.10.

The cost for search time is calculated by multiplying the number of quarter hours in excess of two hours by the following rates set in 28 CFR 16.10 for the staff conducting the search:

- $2.25 per quarter hour for clerical staff,
- $4.50 per quarter hour for professional staff, and
- $7.50 per quarter hour for managerial personnel.

Only fees in excess of $8.00 shall be assessed.  This means that the total cost must be greater than $8.00, either for the cost of the search (for time in excess of two hours), for the cost of duplication (for pages in excess of 100 pages), or for both costs combined.

**Examples:**

**Example 1:**     If a request is made for information contained on 181 pages and clerical staff were able to locate the documents in less than two hours, the requester would be charged $8.10 ($0.10 per page x 81).

**Example 2:**

If it takes two hours and 30 minutes for clerical personnel to locate the same 181 pages, the requester would be charged a total of $12.60 (a duplication fee of $8.10 plus a $4.50 search fee for the two quarter hours of time in excess of two hours, at $2.25 per quarter hour).

Fees for searches shall only be assessed with the authorization of the Regional Counsel or the FOIA/PA Administrator in the Office of General Counsel.  Requesters shall pay fees by check or money order payable to the Treasury of the United States.  Fees shall be forwarded to the office assessing the fees.

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Page 22

PART THREE: **[PRIVACY ACT REQUESTS FOR INFORMATION]**

17. **[PRIVACY ACT REQUESTS BY INMATES § 513.50. Because inmate records are exempt from disclosure under the Privacy Act, (see 28 CFR 16.97) inmate requests for records under the Privacy Act will be processed in accordance with the FOIA. See §§ 513.61 through 513.68.]**

28 CFR 513.61 through 513.68 refers to Sections 27 through 34 of this Program Statement.

18. **PRIVACY ACT REQUESTS BY EMPLOYEES OR FORMER EMPLOYEES.** An employee or former employee may make a written request for access to documents in his or her Personnel File and/or other documents concerning the requester which are not contained in the employee's personnel file but which are maintained in a Bureau system of records. Such a request is processed pursuant to the applicable provisions of the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552.

- A written request should be submitted to:

       Director
       Federal Bureau of Prisons
       320 First Street NW
       Washington DC  20534

- The requester shall clearly mark on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and shall clearly describe the record sought, including the approximate date covered by the record.

- An employee making such a request must provide identification data, as listed in 28 CFR 16.41, and may use a Certification of Identity Form (DOJ-361) or self-sworn declaration.

19. **PRIVACY ACT REQUESTS ON BEHALF OF AN EMPLOYEE OR FORMER EMPLOYEE.** A request for records concerning an employee or former employee made by an authorized representative of that employee or former employee may be made by writing to the address above. Such requests shall be processed pursuant to the provisions of the Privacy Act.

- The request must be clearly marked on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and must describe the record sought, including the approximate dates covered by the record.

- Verification of the identity of the individual whose records are sought is required. See methods of verification listed in 28 CFR 16.41.

20. **ACKNOWLEDGMENT OF PRIVACY ACT REQUESTS.** Requests for records under the Privacy Act received by the FOIA/PA

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Page 23

Administrator, Office of General Counsel, shall be reviewed and may be forwarded to the appropriate Regional Office for handling.

- Requests for records located at a Bureau institution other than the Central Office or a Regional Office shall be referred to the appropriate staff at that institution for proper handling.

- The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.

- Every effort shall be made to respond to the requester within the time limit set under the governing disclosure statute.

21. **REVIEW OF DOCUMENTS FOR PRIVACY ACT REQUESTS.**  If a document is deemed to contain information exempt from disclosure, any non-exempt sections of the record shall be provided to the requester after deletion of the exempt portions.

22. **LIMITATIONS ON EMPLOYEE RIGHT TO ACCESS UNDER THE PRIVACY ACT.**  Under Congressional authority granted to the Attorney General by 5 U.S.C. § 552a(j) and (k), certain systems of records listed at 28 CFR 16.97 and on Attachment C are exempt from access under the Privacy Act of 1974.

Bureau records are also subject to the FOIA exemptions from disclosure listed in 5 U.S.C. § 552(b).

23. **DENIAL OF ACCESS AND NOTICE OF APPEAL RIGHTS.**  If a Privacy Act request for records is denied in whole or in part, a denial letter shall be issued and signed by the Director, or his or her designee, and shall state the basis for denial under 28 CFR 513.32.

- A requestor who has been denied such access shall be advised that he or she may appeal that decision to the U.S. Department of Justice, Office of Information and Privacy, (OIP) by filing a written appeal within 30 days of the receipt of the denial.

- The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the:

> Office of Information and
> Privacy U.S. Department of
> Justice Suite 570, Flag Building
> Washington DC  20530

During the appeal, Bureau staff shall assist OIP staff in the review of contested Bureau documents necessary to resolve the appeal and/or litigation.  This review may be coordinated by FOIA/PA staff in the Office of General Counsel or Regional Counsel.

Ron Hill Exhibit II

24.  **CORRECTION OF RECORDS**

a.  **Inmate Requests for Correction**.  An inmate may submit a written request for correction of records through the Bureau's Administrative Remedy Program.

b.  **Non-inmate Requests for Correction**.  A person other than an inmate may request correction of inaccurate, incomplete, or irrelevant information by writing to the Director of the Federal Bureau of Prisons.

● A request for correction must identify the particular record in question, state the correction sought, and set forth the justification for the correction.

● Both the request and the envelope must be clearly marked **"Privacy Act Correction Request."**

c.  **Bureau Responses**

(1)  **Requests to Correct Bureau Records**

(a)  Bureau staff may make or deny requests for correction of Bureau records pursuant to procedures contained in 28 CFR 16.50.  One basis for denial may be that the records are contained in a Bureau system of records that has been published in the Federal Register and exempted from the Privacy Act's provisions requiring amendment and correction.  Refer to 28 CFR 16.97 for further information.

**Inmate Central File Records**.  Unit staff shall take reasonable steps to ensure the accuracy of challenged information in the Inmate Central File, particularly when the challenged information can be verified.

● Reasonable steps include requiring specific action from the inmate, such as providing documents which support the challenge and/or the names of people to contact regarding the challenged information.

● Once Bureau staff make a determination that the challenged information is incorrect, appropriate notations on the record shall be made to ensure that staff do not use the discredited information  to make decisions regarding the inmate.

● Special procedures have been developed when the challenged information involves a PSI Report.  See the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files for further information.

(b)  Any denial of a request for correction should contain a statement of the reason for denial and notice to the requester that the denial may be appealed to the U.S. Department of

Justice, Office of Information and Privacy, by filing a written appeal within 30 days of the receipt of the denial.

The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the OIP address cited in Section 23 above.

(2) **Requests to Correct Records Originated by Other Federal Agencies.** Requests for correction of records prepared by other Federal agencies shall be forwarded to that agency for appropriate action and the requester shall be immediately notified of the referral in writing.

(3) **Requests to Correct Records Originated by Non-Federal Source.** When the request is for correction of non-Federal records, the requester shall be advised to write to that non-Federal entity.

25. **FEES FOR PRIVACY ACT REQUESTS.** Fees for copies of records disclosed under the Privacy Act, including fees for an employee's own records, may be charged in accordance with 28 CFR 16.47.

PART FOUR: **[FREEDOM OF INFORMATION ACT REQUESTS FOR INFORMATION]**

26. **[FREEDOM OF INFORMATION ACT REQUESTS § 513.60. Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C. 20534. The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought. See §§ 513.61 through 513.63 for additional requirements.]**

28 CFR 513.61 through 63 refers to Sections 27 through 29 of this Program Statement.

27. **[FREEDOM OF INFORMATION ACT REQUESTS BY INMATES § 513.61**

**a. Inmates are encouraged to use the simple access procedures described in § 513.40 to review disclosable records maintained in his or her Inmate Central File.]**

28 CFR 513.40 refers to Section 12 of this Program Statement.

Similarly, inmates are encouraged to use the simple access procedures described in Section 15 above to review certain Bureau Program Statements that may be available locally at the institution.

**[b. An inmate may make a request for access to documents in his or her Inmate Central File or Medical File (including**

documents which have been withheld from disclosure during the inmate's review of his or her Inmate Central File pursuant to § 513.40) and/or other documents concerning the inmate which are not contained in the Inmate Central File or Medical File.  Staff shall process such a request pursuant to the applicable provisions of the Freedom of Information Act, 5 U.S.C. 552.   c.  The inmate requester shall clearly mark on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and shall clearly describe the records sought, including the approximate dates covered by the record.  An inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, if the inmate requests documents to be sent to a third party, the inmate must provide with the request an example of his or her signature, which must be verified and dated within three (3) months of the date of the request.]

A request for "my records," "all my records," or similar wording shall be interpreted as a request for a copy of Inmate Central File records **and** Medical File records currently maintained at the inmate's institution of confinement or, in the case of former inmates, in the last institution of confinement.

Inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

28.  [**FREEDOM OF INFORMATION ACT REQUESTS BY FORMER INMATES** § 513.62.  Former federal inmates may request copies of their Bureau records by writing to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C.  20534.  Such requests shall be processed pursuant to the provisions of the Freedom of Information Act.  The request must be clearly marked on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and must describe the record sought, including the approximate dates covered by the record.  A former inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, the requester must provide with the request an example of his or her signature, which must be either notarized or sworn under penalty of perjury, and dated within three (3) months of the date of the request.]

Former inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

29. [**FREEDOM OF INFORMATION ACT REQUESTS ON BEHALF OF AN INMATE OR FORMER INMATE § 513.63.  A request for records concerning an** inmate or former inmate made by an authorized representative of that inmate or former inmate will be treated as in § 513.61, on receipt of the inmate's or former inmate's written authorization.  This authorization

must be dated within three (3) months of the date of the request letter.  Identification data, as listed in 28 CFR 16.41, must be provided.]

Requesters are encouraged to provide Federal register numbers to assist in properly identifying requested records.

30. **[ACKNOWLEDGMENT OF FREEDOM OF INFORMATION ACT REQUESTS** § 513.64

   **a.  All requests for records under the Freedom of Information Act received by the FOIA/PA Administrator, Office of General Counsel, will be reviewed and may be forwarded to the appropriate Regional Office for proper handling.  Requests for records located at a Bureau facility other than the Central Office or Regional Office may be referred to the appropriate staff at that facility for proper handling.**

   **b.  The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.]**

31. **[REVIEW OF DOCUMENTS FOR FREEDOM OF INFORMATION ACT REQUESTS** § 513.65.  If a document is deemed to contain information exempt from disclosure, any reasonably segregable portion of the record shall be provided to the requester after deletion of the exempt portions.  If documents, or portions of documents, in an Inmate Central File have been determined to be nondisclosable by institution staff but are later released by Regional or Central Office staff pursuant to a request under this section, appropriate instructions will be given to the institution to move those documents, or portions, from the Inmate Privacy Folder into the disclosable section of the Inmate Central File.]**

32. **[DENIALS AND APPEALS OF FREEDOM OF INFORMATION ACT REQUESTS** § 513.66.  If a request made pursuant to the Freedom of Information Act is denied in whole or in part, a denial letter must be issued and signed by the Director or his or her designee, and shall state the basis for denial under § 513.32.  The requester who has been denied such access shall be advised that he or she may appeal that decision to the Office of Information and Privacy, U.S. Department of Justice, Suite 570, Flag Building, Washington, D.C.  20530.  Both the envelope and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal."]**

28 CFR 513.32 refers to Section 7 of this Program Statement.

During the appeal and any subsequent litigation, Bureau staff shall assist DOJ staff, including OIP staff, in reviewing contested Bureau documents necessary to resolve the appeal and/or litigation.

Ron Hill Exhibit II

33.  **[FEES FOR FREEDOM OF INFORMATION ACT REQUESTS § 513.67.
Fees for copies of records disclosed under the FOIA, including
fees for a requester's own records, may be charged in accordance
with Department of Justice regulations contained in 28 CFR
16.10.]**

See further description of fees in Section 16 above.

34.  **[TIME LIMITS FOR RESPONSES TO FREEDOM OF INFORMATION ACT
REQUESTS § 513.68.  Consistent with sound administrative practice
and the provisions of 28 CFR 16.1, the Bureau strives to comply
with the time limits set forth in the Freedom of Information
Act.]**

Staff processing requests for release of information under the
FOIA are expected to be familiar with the provisions of 28 CFR
16.1(d), as follows:

● A requester must be notified of the decision on his or her
request within 10 days after its receipt (excluding Saturday,
Sunday, and legal public holidays).  Conditions for extension
of this time are discussed in 28 CFR 16.1(d).

● Generally, all FOIA requests shall be processed in the
approximate order of receipt, unless the requester shows
exceptional circumstances exist to justify an expedited
response.  Examples of exceptional circumstances which might
justify an expedited response include the following:

    ●    a threat to life or safety,

    ●    the loss of substantial due process rights, or

    ●    in cases of widespread and exceptional interest to the
    media, **and** upon approval of DOJ's Office of Public Affairs,
    possible questions about the Government's integrity which
    affect public confidence.

Because a decision to take a FOIA request out of order delays
other requests, simple fairness demands that such a decision
be made only upon careful scrutiny of truly exceptional
circumstances.

    ●    Regional Counsel shall follow DOJ guidelines as to
    whether to expedite a particular request because it fits
    into one of the **first two** exceptions described above.

    ●    Requests which are being considered for expedited
    processing because of the **last exception** described above
    shall first be sent through the FOIA/PA Administrator to the
    General Counsel for obtaining DOJ approval.

35.  **TRANSITION.**  Inmates must remove any copies of PSRs and SORs
as listed in Section 12.a.(2)(d)(1) they currently possess no
later than 45 days after the effective date of this PS.  Each

Ron Hill Exhibit II

inmate must inspect his or her personal property for photocopies
of these documents and then dispose of them.

Inmates possessing these documents when this transition period
expires will be subject to disciplinary action for possession of
contraband.

Inmates may dispose of their PSRs and SORs by any of the
following methods:

- Mailing the documents out of the institution to someone of
  the inmate's choosing;

- Destroying or discarding the PSRs or SORs themselves; or

- Delivering them to a staff member for destruction.


                                    /s/
                          Kathleen Hawk Sawyer
                          Director

PS 1351.05
9/19/2002
Attachment A, Page 1

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## EXEMPTIONS TO DISCLOSURE PROVIDED
## IN THE FREEDOM OF INFORMATION ACT

1.  The Freedom of Information Act (5 U.S.C. § 552) provides generally for the disclosure of agency records.  Section 552(b) exempts from mandatory disclosure matters that are

"(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2)  related solely to the internal personnel rules and practices of an agency;

(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

(A) could reasonably be expected to interfere with enforcement proceedings,

(B) would deprive a person of a right to a fair trial or an impartial adjudication,

(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

(D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which

Ron Hill Exhibit II

furnished information of a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

(F) could reasonably be expected to endanger the life or physical safety of any individual;

(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9)  geological and geophysical information and data, including maps, concerning wells.

2.  Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

3.  Under 5 U.S.C. § 551, Federal "agency records" are defined **not** to include records of

(1)  the Congress;

(2)  the courts of the United States;

(3)  the governments of the territories or possessions of the United States; or

(4)  the government of the District of Columbia.

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Attachment B, Page 1

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## PUBLIC INFORMATION

**STAFF:**

      Name
      Position Title (past and present)
  Grade (past and present)      Salary (past
and present)      Duty Station (past and
present)      Duty Station Address (past and
present)

**INMATES:**

See list provided in the Program Statement on News Media Contacts
and the Public Information Officer's Handbook  (PIO Handbook).

Ron Hill Exhibit II

## PUBLISHED SYSTEMS OF RECORDS

```
#:        NAME:                                PUBLICATION DATE:
-------------------------------------------------------------
0 0       0                 1          0      09/28/7
1         011                                 8
0 0       Custodial/Security Record System    06/07/8
2         FOIA Record                         4
0 0       System                              09/17/7
3           Industrial Inmate Employment Record   7
                        System
00          Inmate Administrative Remedy Record   09/28/7
4                       System                     8

            Inmate Central Records System
00            Inmate Commissary Accounts Record   09/28/7
5                       System                     8
00          Inmate Physical/Mental Health Record   09/28/7
6                       System                      8
            Inmate Safety/Accident Compensation   10/04/9
00                  Record System                  5 04/21/95
7         Federal Tort Claims Act Record System
          Access Control Entry/Exit System
00        Telephone Activity Record System
8
          09/28/78
0 0       09/17/77
9
          09/28/78


01        Office of Internal Affairs Investigative
2                             Record System08/29/95
          NIC Technical Assistance Resource Persons
10        Directory                       04/18/83
1
102  NIC Field Readers List              04/18/83
```

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Attachment D, Page 1

(Date)

Re: _____

Our Req. No: _____

Docket No: _____

Dear _____,

Please advise us as to whether the attached document(s) prepared by your agency may be (1) disclosed to the above inmate and (2) used with respect to the inmate's parole hearing(s).

Disclosure of information contained in an inmate's prison files is governed by a variety of Federal laws, principally the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a). Guidelines for the implementation of these laws are given below.

### GUIDELINES FOR DISCLOSURE TO A FEDERAL PRISON INMATE

Upon an inmate's request, materials in that inmate's files will be disclosed to that inmate unless there is a legal exemption to such disclosure. Typical examples of documents which may be withheld are those which, if disclosed, might

      a. constitute a clearly unwarranted invasion of personal privacy;

      b. reveal sources of information obtained upon a legitimate expectation of confidentiality or otherwise endanger the life or physical safety of any person;

      c. lead to a serious disruption of the subject inmate's institutional program, due to the diagnostic or evaluative opinions contained in the document, and which could likely affect the inmate's clearly documented adjustment difficulties;

      d. interfere with ongoing law enforcement proceedings, including administrative investigations; or

      e. enable the requestor to violate any law or threaten the security of a Federal Bureau of Prisons institution through disclosure of law enforcement techniques or procedures.

### GUIDELINES FOR DISCLOSURE FOR USE AT THE INMATE'S PAROLE HEARING

A Federal prison inmate must be provided reasonable access to reports or documents to be used by the Parole Commission in making its parole release determination. The Commission, of course, wants to use all the information in the documents you prepare. If you determine that some information may not be disclosed, in accordance with the guidelines listed above, you must prepare a summary of excluded information if it is to be used by the Parole Commission. This summary, as well as the

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Attachment D, Page 2

disclosable portions of the document, will then be available to the inmate, **and the Commission thereby be permitted to review the entire document.**  The summary need only be phrased in general terms to enable the inmate to respond to the essential allegations made in excluded material.  It should not reveal specific information which might compromise a legitimate need for confidentiality.

### OPTIONS FOR DISCLOSURE OF INFORMATION

There are three options which exist under Federal law with respect to disclosure to the inmate and to the U.S. Parole Commission of the information prepared by your agency.

**Option 1** - You may authorize complete disclosure of the document.  The document is available for inmate review and copying.  Court disclosure instructions, if any, will be followed.

**Option 2** - You may recommend exclusion of a portion or all of the document from disclosure.  Please identify the part(s) of the document you consider exempt form disclosure and prepare an adequate summary of the excluded material.  The Federal Bureau of Prisons will review the reasons given in accordance with the guidelines listed in this letter.  If at least one of the guidelines is met, both the summary and the disclosable portion of the document, if any, will be available to the inmate.  If the Federal Bureau of Prisons determines the document to be entirely disclosable, the document will be returned to you, and no copy will be retained by the Federal Bureau of Prisons or for release to the U.S. Parole Commission or to the inmate.

**Option 3** - You may refuse to authorize disclosure of the document, or a summary in any form to the inmate.  If this option is selected, please provide a memorandum detailing reasons for non-disclosure.  The Federal Bureau of Prisons will review the reasons given in accordance with Bureau policy and the guidelines listed in this letter.  If at least one of the guidelines is met, the document will be placed in the Inmate Privacy Folder and will not be available for release either to the inmate or to the U.S. Parole Commission.  If the Federal Bureau of Prisons considers the document disclosable, the document will be returned to you, and no copy will be retained for use by the Federal Bureau of Prisons.  Please consider carefully before choosing this option. We appreciate your review of the attached documents with respect to their disclosure.  We have enclosed a form for your response. Thank you for you cooperation.

                              Sincerely,


Ron Hill Exhibit II

Warden


Attachments

PS 1351.05
9/19/2002
Attachment D, Page 4

(Date)

To:   Warden: _____

         Institution: _____

FROM: (Authorized Agency Representative)
              (Agency)

SUBJECT: Disclosure of Information to Federal Inmate and to
       U.S. Parole Commission

This replies to your (date) letter in which you forward to us,
and ask that we review, certain document(s) prepared by our
agency to determine whether the document(s) may be disclosed
to the Federal inmate involved and the U.S. Parole Commission.

**Document(s):**

The following action may be taken with respect to these
documents:

   1. Complete disclosure of the document(s) is (are)
authorized.

       The document may be made available for inmate review and
    copying.

   2. The following portion(s) of the document(s) is (are) to be
          excluded on the basis that if disclosed, it might

             constitute a clearly unwarranted invasion of
             personal privacy;

             reveal sources of information obtained under a
          legitimate expectation of confidentiality or
          otherwise endanger the life or physical safety of
          any person;

       _____ lead to a serious disruption of the subject
             inmate's institutional program, due to the
             diagnostic or evaluative opinions contained in the
             document, and which it could likely affect the
             inmate's clearly documented adjustment
             difficulties;

       _____ interfere with ongoing law
             enforcement proceedings, including
             administrative investigations; or

       _____ enable the requester to violate any law or
             threaten the security of a Federal Bureau of
             Prisons institution through disclosure of law
             enforcement techniques or procedures.

       _____ Other: (specify)
             A summary of the excluded material is attached.

Ron Hill Exhibit II

PS 1351.05
9/19/2002
Attachment D, Page 5

3. Neither the document nor a summary of the document is to
be disclosed in any form to the inmate.

Ron Hill Exhibit II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL C. ANTONELLI,      )
                            )
      Plaintiff,           )
                            )     Civil Action No. 07-01932 (CKK)
      v.               )
                            )
UNITED STATES PAROLE     )
COMMISSION,              )
                            )
      Defendant.         )
                            )

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States

Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial

Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records within

OIP and the senior leadership offices of the Department of Justice, including the Offices of the

Attorney General, Deputy Attorney General, and Associate Attorney General, in response to

requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended

by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 and the Privacy Act of

1974, 5 U.S.C. § 552a (2006). The IR Staff determines whether records responsive to access

requests exist and, if so, whether they can be released in accordance with the FOIA and Privacy

Act. In processing such requests, the IR Staff consults with personnel in the senior leadership

offices and, when appropriate, with other components within the Department of Justice as well as

with other Executive Branch agencies.

-2-

2) I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3) By memorandum dated December 20, 2007, the United States Parole Commission (USPC) referred two documents, totaling two pages, to OIP for processing and direct response to the requester. This memorandum was received in OIP on January 11, 2008.

4) In its January 11, 2008 referral memorandum, USPC attached a copy of plaintiff's initial FOIA/Privacy Act request. Pursuant to this request, dated August 17, 2006, plaintiff sought all records concerning himself. Plaintiff also provided verification of his identity. Such verification was in accordance with Department of Justice regulations. See 28 C.F.R. § 16.41(d). In addition to providing his full name, date and place of birth, and social security number, plaintiff provided his Federal Bureau of Prisons register number (04053-164) under penalty of perjury. (A copy of plaintiff's August 17, 2006 request letter is attached hereto as Exhibit A.)

5) The referred material by USPC consists of two letters from OIP to "Michael C. Antonelli" dated November 1, 1983 and January 29, 1988. Both letters reference the addressees' Federal Bureau of Prisons register numbers. Upon review of the referred material, the November 1, 1983 document was found to be identifiable to plaintiff, in that the addressee's register number on the document matched that provided in plaintiff's request. Because the January 29, 1988 document was addressed to an inmate with a different register number than that provided by plaintiff in his request, we could not definitively identify that the addressee on that document was plaintiff.

6) In an effort to determine whether the January 29, 1988 document was identifiable to plaintiff, the FOIA Specialist assigned to plaintiff's request conducted a search of the Federal

-3-

Bureau of Prisons "inmate locator," which provides users with federal inmates' register numbers and location, among other information. Although an entry for plaintiff was located, along with the register number he provided in his request, no record of the register number from the January 29, 1988 document was found in the "inmate locator." Accordingly, the FOIA Specialist was unable to link the January 29, 1988 document to plaintiff. As such, we determined that, because the document could not be identified to plaintiff, it was not responsive to plaintiff's request for records concerning himself.

7) By letter dated February 7, 2008, OIP provided a final response to plaintiff, advising plaintiff that only one document was identifiable to plaintiff. That responsive document was released without excision. (A copy of OIP's February 7, 2008 letter is attached hereto as Exhibit B.)

I declare under penalty of perjury that the foregoing is true and correct.

*Melanie Ann Pustay*

Melanie Ann Pustay

Executed this __30__ day of April 2008.

# EXHIBIT A

Chairman                                      August 17, 2006
United States Parole Commission
5550 Friendship Blvd
Chevy Chase, Maryland  20815

RE:  All records and tapes

Dear Sir:

This is a request under the Freedom of Information Act.

I request a copy of all records that your agency has or had
in its possession that are in any way connected to my name.  That
means all parole hearing tapes, confidential witness tapes, all
appeals and all National Appeals records, including all records
that you have already given to me beforehand, and any and all
records that I may have submitted or anyone submitted in connection
to my name, including court records and litigation records.  This
means all records that originate all the way back in time to the
initial incarceration of my person on September 15, 1978.

FULL NAME:  MICHAEL CARMIE ANTONELLI
DOB: December 4, 1946
POB: Chicago, Illinois  USA
SS No. 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

I declare under the penalty of perjury that the above is my
biographical data, and that the signature below is my signature.

Executed this _17TH_ day of August, 2006.

By _____
           Michael Antonelli, Affiant

(28 USC Section 1746)


Sincerely,


Michael Antonelli 04053-164
USP Big Sandy; Box 2068
INEZ, KY  41224


cc : file


BB

# EXHIBIT B

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*          *Washington, D.C. 20530*

**FILE COPY**

FEB    7 2008

Mr. Michael Antonelli
Register No. 04053-164
FCI Manchester
Federal Correctional Institution
P.O. Box 4000                    Re:    OIP/08-R0215
Manchester, KY 40962                    CLM:VRB:NCJ

Dear Mr. Antonelli:

    While processing your Freedom of Information Act request dated August 17, 2006, for a copy of all records pertaining to yourself, the United States Parole Commission (USPC) referred two documents, totaling two pages to this Office for processing and direct response to you.  For your information, this material was received in this Office on January 11, 2008.  This response is made on behalf of the Office of Information and Privacy.

    Upon review of the referred material, I have determined that only one document is identifiable to you.  Accordingly, we have processed this responsive document and are releasing it without excision.  A copy is enclosed.

    If you are not satisfied with my action on your request, you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, within sixty days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Carmen L. Mallon
Chief of Staff

Enclosure